72.    Plaintiff, who is Moorish American, a Moor and former New York City Correction Officer, Shield # 6103, is similarly situated as those Moorish American former Correction Officers in the Oba Hassan Wat Bey Case, who as the record and evidence showed in the Oba Hassan Wat Bey case, were singled to be discharged from employment because of being a Moor or Moorish American and/or in retaliation for having filed civil lawsuits against them.

73.    At all time relevant hereto, Defendants Giuliani, Kerik, Caruso and Fraser had and/or has an invidious discriminatory animus against Plaintiff because of being Moorish American or of the Moorish American faith or in association with the Moorish American faith.

74.    At all time relevant hereto, Plaintiff, as a proximate result, suffered injury to his property interest in employment and deprived of his rights as a Citizen of the United States of America.

75.    At all time relevant hereto, according to Mr. Skinner's testimony, present at the meeting beside himself was Defendant Kerik, Fraser and John Piciano (non-party).

76.    During all times relevant herein, defendant Caruso was responsible for investigating charges of misconduct by DOC employees.

77.    Rule 3.20.03 of the Departmental Rules and Regulations provide that DOC employees who make false official statements and who are convicted in a court of criminal jurisdiction have engaged in conduct of comparable seriousness.

78.    Rule 3.20.03 applies to all DOC employees.

79.    The rule prohibiting submission of false tax documents to the DOC applies to all DOC employees.

80.    All DOC employees are subject to the same standards of conduct and evaluation.

81.    For discipline purposes, it is irrelevant if DOC employees who submitted false tax documents to the Department filed all tax returns and paid all taxes.

82.     All DOC employees were investigated under the same "99 exemption" tax investigation.

83.     Defendant Caruso is responsible for maintaining standards of conduct for all DOC employees.

84.     On or about Mid-1995, Plaintiff adopted the Moorish American faith.

85.     Plaintiff chose to manifest his religious observance and national identity through the name he used to present himself before the public and GOD (NEB ER TCHER - YHWH - ALLAH).

86.     Plaintiff adopted the Moorish Title El and Bey.

87.     Plaintiff changed his entire name from James Dennis Mercer to Yashua Amen Shekhem El Bey.

88.     Plaintiff exercised his fundamental human rights when he presented his name change by proclaiming his nationality as Moorish American pursuant to Article 15 of the Universal Declaration of Human Rights.

89.     Plaintiff notified defendants that he adopted the Moorish American faith and informed defendants, in good faith, of the rights he honestly believed he possessed as Moorish American.

90.     Plaintiff submitted some or all of the following forms to DOC relating to Moorish American faith and nationality name claim: Moorish Zodiac Constitution, Letter of Credence-Notification of Rights and Immunities, Legal Notice-Declaration of Status and Name Claim.

91.     On or about 1993, Plaintiff, who at the time was under the name James D. Mercer, submitted tax forms to the DOC claiming tax exempt status.

92.     The tax forms submitted by Plaintiff in 1993 consisted of a Certificate of Exemption from withholding in lieu of a W-4 form, Laws Pertaining to Form W-4 and Employer Options.

93.     Plaintiff's submission of these documents in 1993 to the DOC did not generate disruption in the work place

94.     Plaintiff's submission of these documents did not impede the general operation of the DOC.

95.     Plaintiff's submission of these documents did not adversely affect the working relationships between Plaintiff's superiors necessary to the proper functioning of the DOC.

96.     DOC employees who did not claim to be Moors submitted the same or substantially similar tax documents to those submitted by Plaintiff in 1993 when Plaintiff had not yet claimed to be Moorish American.

97.     On or about April 10, 1996, the New York City DOI, under the direction of Defendant Caruso, began an investigation called "99 exemptions" to investigate all employees of DOC who had claimed between 40 or more exemptions on their federal and state tax forms submitted to the DOC.

98.     Defendant Caruso determined that these documents constituted "false tax documents"

99.     On or about June 18, 1996, Defendant Caruso received a printout from the Office of Personnel Administration for the DOC listing all DOC employees who had filed 40 or more exemptions. Eliminating all duplicates, this list contained the names of 780 DOC employees who had filed 40 or more exemptions. During the investigation , Defendant Caruso learned that an additional 748 employees had submitted false tax documents with DOC.

100.    Defendant Caruso submitted this list to the Manhattan District Attorney's Office and the New York State Attorney General's (A.G.'s) Office.

101.    The Manhattan District Attorney's Office and the New York State Attorney Generals office told Defendant Caruso which DOC employees should be arrested.

102.    During the investigation, DOI officials nor DOC officials advised Plaintiff that he is under investigation.

103.    Plaintiff was not arrested.

104.    Defendant Caruso learned that Defendant Kerik's lover, Jeanette Pinero and Kerik's "right hand man", John Picciano submitted false tax documents to the DOC.

105.    On or about July 12, 1996, Defendant Caruso received and read a memorandum from the New York City Police Department (NYPD) claiming, among other things, that an individual involved in a "car stop" was a member of a group known as "The Great Seal Association of Moorish Affairs" and that members of that group had been previously arrested and were suspected of armed robberies and trafficking in high-powered automatic weapons.

106.    Plaintiff was not identified in the NYPD memorandum as having engaged in the conduct addressed.

107.    Plaintiff was never accused of being suspected of "armed robberies" and "trafficking in high-powered automatic weapons".

108.    The NYPD memorandum did not identify the individual involved in the "car stop" as a DOC Corrections Officer.

109.    Plaintiff's only connection to the NYPD memorandum was his status as a member of the "Moorish Nation" and his association with the Great Seal of Moorish American Affairs.

110.    During the "99 exemptions" investigation, Defendant Caruso and/or employees under his supervision, compiled a list of DOC employees who he/they identified as Moorish Americans.

111.    During the tax investigation, approximately 29 DOC employees were wiretapped.

112.    At all time relevant hereto, upon information and belief, one of those wiretapped was Plaintiff herein.

113.    During the tax investigation, informants were used in undercover surveillance operations to attend meetings of the Moorish faith to obtain information.

114.    The DOI's investigation lasted 18 months.

115.    After the conclusion of the 18 month investigation, Defendant Caruso made recommendation to the DOC for the initiation of disciplinary charges against certain DOC employees who filed false tax documents.

116.    Of those employees who were not arrested and criminally charged, on or about December 3, 1997 and on June14, 1999 Defendant Caruso recommended that 21 DOC employees and Plaintiff, respectively, identified as Moorish American, be summarily suspended. Each person was merely informed that they were being summarily suspended because they supplied the DOC with tax forms which contained false information.

117.    Defendant Caruso targeted Moorish Americans, including Plaintiff, for adverse treatment because Moors were a "security concern" because (1) they were affiliated with the "Moorish National " group, and (2) because of documents they submitted to the DOC announcing their religious philosophy and nationality as Moorish American.

118.    On June 14, 1999, Plaintiff was summarily suspended without pay for submission of false tax documents that was submitted back in on or about December of 1993.

119.    Before ordering Plaintiff's summary suspension, Defendant Caruso did not interview Plaintiff nor any other manner give Plaintiff notice that the NYPD memorandum was the basis for their adverse treatment nor were Plaintiff given an opportunity to be heard on this reason for the summary suspension.

120.    Following Plaintiff's return from an almost 2 year unpaid involuntary medical leave from DOC, within hours of reporting to DOC on June 14, 1999, Plaintiff, rather than being reinstated

to full duty, was instead placed on summary suspension without pay for over 30 days and subsequently placed on modified duty in an asbestos contaminated facility.

121.    On or about early December 1997, Giuliani referred to Plaintiff's religious beliefs as a "scheme" and referred to the "Moorish National" group as a "cult".

122.    At all time relevant hereto, on or about 1997 Defendant Giuliani publicly announced, prior to the holding of administrative hearings, that all employees charged with failing to file state and city income tax returns and who had been suspended "would almost certainly lose their jobs after disciplinary proceedings against theme were completed". This speech did not mentioned Moors.

123.    On or about December 8, 1997, Edward Kuriansky (herein after Kuriansky-non-party herein), Commissioner of the New York City Department of Investigation, publicly announced that Plaintiff's Moorish American religious philosophy "is extremely offensive and serious conduct" and further stated that "for a sworn law enforcement officer, who carries a gun, who have taken an oath to the United States and the state constitution, and for all other purposes claims the benefits of citizenship, who has the gall not to pay his fair share - I mean it's really outrageous".

124.    Kuriansky made these statements with full knowledge that other DOC employees, law enforcement officers, who did not claim to be Moors, submitted false tax documents to the Department claiming either "99" exemptions or to be tax exempt and who also submitted documents to the Department claiming that they were not subject to the jurisdiction of the United States and/or the State of New York.

125.    In early February 1998, the World Service Authority contacted Defendant Caruso and advised Caruso that use of the name "Bey" was an effort to assert the right to change nationality and to manifest religious observance, and that this right was being violated by DOC.

126.    On or about 1998, Defendant Caruso issued a Memorandum of Complaint to the DOC recommending that Plaintiffs who are Moorish American as referenced in the Oba Hassan Wat Bey case be terminated because they submitted false tax instruments to the DOC and engaged in conduct unbecoming an officer or member of the Department.

127.    On or about 1999, Defendant Caruso issued a Memorandum of Complaint to the DOC recommending that Plaintiff who is Moorish American be terminated because he submitted false tax instruments to the DOC and engaged in conduct unbecoming an officer or member of the Department.

128.    On July 22, 1999, Plaintiff was placed on modified duty assignment under horrific and filthy working conditions in an asbestos contaminated facility in Brooklyn, isolated from inmates and co-workers.

129.    While on modified duty assignment, Plaintiff was not permitted to possess, carry or purchase a personal firearm, be assigned to any duties requiring the possession, handling, maintenance or security of departmental firearms, chemical agents or funds, and Plaintiff had no responsibility and supervision of cure, custody and control of incarcerated inmates, among other things.

130.    Before being placed on modified duty, Defendant Caruso, nor any other official from the DOI informed Plaintiff that he had been targeted for modified duty because he was deemed to raise "security concerns" because of his association or affiliation  with the Moorish National group.

131.    Before issuing the memorandum of complaint, Defendant Caruso did not interview Plaintiff nor in any other manner given notice that the NYPD memorandum was the basis for his adverse treatment nor were Plaintiff given an opportunity to be heard on this reason for his proposed termination.

132.    On or about August 25, 1998, the DOC Trials Division drafted and served Plaintiff via the United States Postal service Charges and Specifications charging Plaintiff with submitting false instruments concerning taxes to the Department and with violating his oath of office.

133.    Defendant Caruso did not summarily suspend DOC  employees who did not claim to be Moors but who also submitted false tax documents to the Department.

134.     On or about November 3, 1999, at the pre-trail hearing Plaintiff was offered the choice of resignation without the possibility of obtaining any other city job or termination. Plaintiff accepted neither.

135.    At all time relevant hereto, Defendant Caruso requested Plaintiff's summary suspension following his return from an unpaid involuntary medical leave.

136.    On or about March 14, 2000, the ALJ Tompkins (herein after ALJ - non-party) issued a Report and Recommendation in connection with the charges and specifications.

137.    At no time did the ALJ mentioned in the Report and Recommendation Plaintiff's objections and pending federal cases against the City and Giuliani.

138.    The ALJ made a determination of federal tax law regarding the submission of an in lieu of W-4 form and factual finding that Plaintiff violated tax law and committed a crime under New York State penal law.

139.    On or about April 27, 2000, Defendant Kerik adopted the ALJ's report and recommendation, which excluded Plaintiff's objections and noticing of pending federal civil

actions. That day, Defendant Kerik imposed the sanction of discharge for submitting false tax documents to the DOC.

140.    Defendant Kerik was not required to adopt the ALJ's recommendation for Plaintiff discharge and had considerable authority and discretion to impose a different sanction.

141.    For many years prior to Plaintiff's summary suspension, modified duty placement from a suspension and ultimate discharge, Defendants tolerated the practice of employees claiming excessive exemptions or claiming tax exempt status without objection and without advising or providing fair warning to employees that their conduct could lead to disciplinary or criminal action.

142.    DOC employees who submitted false tax documents to the Department but who did not claim to be Moorish American were not subject to the same adverse treatment as the Moorish Americans.

143.    White DOC employees who submitted false tax documents to the Department were not subject to the same adverse treatment as the Moorish Americans.

144.    Plaintiff's unpaid summary suspension in excess of 30 days, which began on June 14, 1999, then into modified duty in an asbestos contaminated facility until Plaintiff's discharged from DOC, was intentional, deliberate, malicious and in conspiracy by Defendants to discharge Plaintiff from employment on April 27, 2000 because of being Moorish American.

145     On May 27, 1999, Oba Hassan Wat Bey (Robert Watson) and five other discharged Moorish American employees filed a civil action in the Southern District of New York, 99 Civ. 3873, protesting their discharge as unconstitutional.

146.    On or about May of 2000, Plaintiff filed a civil action in the Southern District of New York, 00 Civ 9260 (JES), protesting his discharge as unconstitutional.

147.   On February 4, 2000, the DOC legal Division contacted its investigation and trials unit to determine whether similar changes of misconduct, i.e. filing false tax documents, had been brought against DOC employees who did not claim to be Moors.

148.   On March 16, 2000, Josephine Pradegan, Caruso's immediate subordinate, gave the Legal Division a list of 10 DOC employees who did not claim to be Moors against whom similar charges of filing false tax documents had been filed.

149.   Virtually all employees on that list had been selected for arrest by state and federal authorities and were not in the same category with Plaintiff and other Moors similarly situated.

150.   Beginning on or about January 30, 2001, Defendant Caruso submitted a memorandum and complaint to the DOC for about 117 DOC employees who submitted the same or substantially similar documents to the DOC as those submitted by Moorish Americans.

151.   Defendant Caruso recommended that disciplinary action against most of these individuals be deferred.

152.   These employees, the DOC employees who submitted false tax documents to the DOC, but who did not claim to be Moors, were never discipline and evidence was produced on the record of the Oha Hassan Wat Bey case.

153.   On or about August 17, 2005, Plaintiff filed civil action, Shekhem El Bey, vs. City of New York, et. al. 05 Civ. 7270, based on what was then new information learned for the first time that Defendant Caruso selected Plaintiff for summary suspension, modified duty placement and recommended discharge because Defendant Caruso determined that Plaintiff because of being a Moor is a potential security concern due to Defendant Caruso's receipt of the NYPD memorandum and Plaintiff's affiliation with the "Moorish National" group. Defendants concealed the true nature of the charges against Plaintiff.

154. Between 1996 and April 27, 2000, Defendant Caruso did not order the summary suspension and modified duty assignment for any white DOC employees who submitted the same or substantially similar documents as those submitted by the Moorish Americans, including, but not limited to: John Sheridan, Carlo Pannizzo, John Russo, D. Ryan, D. Sabatano, James Salvio, George Sheehy, Nicholas Varounis, Jr., P. Venechanos, Joseph Vicenzo, Richard Weiss, and evidence was produced on the record of the Oha Hassan Wat Bey case.

155. During the tax investigation, Defendant Caruso kept various lists of identified Moors who were DOC employees. Plaintiff is one of those Moors listed and evidence was produced on the record of the Oha Hassan Wat Bey case.

156. Defendant Caruso did not recommend summary suspension, modified duty or discharge for Defendant Kerik's lover, Jeannette Pinero or his "right hand man", John Picciano despite his knowledge that they submitted false tax documents to DOC, and to that effect evidence was produced on the record of the Oha Hassan Wat Bey case.

157. Defendants claim that they were justified in summarily suspending, ordering modified duty and terminating Plaintiff's employment, and the employment of all other Moorish Americans DOC employees, only because Plaintiff and they are a security concern due to his and their affiliation with the Moorish National Group, and evidence to that effect was produced on the record of the Oha Hassan Wat Bey case.

158. Defendants did not identify and target for adverse employment treatment members of other religious groups for engaging in the same or substantially similar conduct as Plaintiff.

159. Defendant Kerik and Caruso in furtherance of their conspiracy in corroborating their collective efforts and in support by their subordinates, by implementing a systemic policy, custom and/or practice aimed at targeting Moorish Americans for adverse employment treatment and actions because of Plaintiff's speech on matters of public concern, Plaintiff's association or

affiliation with the "Moorish group" and/or the Great Seal of Moorish American Affairs, by selectively enforcing DOC rules and regulations against employees identified as Moorish Americans because of race, religion or national origin Defendant Caruso and Defendant Kerik violated Plaintiff's fundamental human rights and constitutional rights to freedom of speech, freedom of association, equal protection of the law and due process of law.

160.    Defendant Giuliani abused his office when it was communicated through Defendant Kerik at the closed door meeting in 1998 that "**these people were going to be fired for the actions that they had taken",** referring to the Moors, in effect nullified the independence and integrity of OATH, denying Plaintiff due process of law, wherein the conduct of OATH is at the direction of the Mayor per Mayor's Executive Order 32, which is codified in the City's Charter under Chapter 45-A.

161.    By failing to remedy Defendant Caruso's inhuman and unconstitutional wrongs against Plaintiff, by allowing and/or permitting Defendant Caruso's systemic policy, customs or practice aimed at targeting Moorish Americans for adverse employment actions to continue, by failing or refusing to order the DOC's Investigation and Trails Unit to conduct an independent investigation of the basis of the charges and specifications against Plaintiff and by being negligent in managing Defendant Caruso and DOC subordinates who caused and/or substantially contributed the unconstitutional deprivations and human rights abuse visited upon Plaintiff.

162.    At all time relevant hereto, pursuant to Article 62 of the Civil Service Law of the State of New York, Defendant Giuliani, Kerik, Caruso and Fraser sworn or affirmed an oath to uphold the Constitution of the United States and the Constitution of the State of New York.

163.    At all time relevant hereto, Defendant Giuliani, Kerik, Caruso and Fraser, new or should have reasonably known that their conduct in targeting Plaintiff for adverse employment action and discharge because of being a Moor or Moorish American violates their Oath of office in their respective position of influence and authority.

164.   Defendant Kerik violated Plaintiff's fundamental human rights and constitutional rights to freedom of speech, freedom of association, equal protection of the law and due process of law.

165.   Defendant Caruso violated Plaintiff's fundamental human rights and constitutional rights Freedom of Association, freedom of speech, freedom of association, equal protection of the law and due process of law.

166.   On December 18, 2013, the reading of the Jury verdict was announced, which was unanimous, and that it was found by a preponderance of the evidence that the motivating factor for the adverse employment action against those Plaintiffs, to whom Plaintiff herein is similarly situated, is because of being Moorish American or Moor, among other things, to include Religion, Association and 42 U.S.C. § 1983 claims, as set forth in the Jury verdict.

167.   At all time relevant hereto, the conduct of the OATH proceedings was compromised  by Giuliani in which Plaintiff, and those similarly situated was denied due process of law.

168.   At all times relevant, Defendant Giuliani acted under color state law in using his political power and position to influence the conduct of OATH in carrying out his intentions to discharge Moors from employment, as Plaintiff herein and the Plaintiffs in the Oba Hassan Wat Bey case.

169.   At all time relevant hereto, OATH's impartiality was and/or is compromised by the City's financial and/or pecuniary interest in which it becomes enriched in the imposition of economic penalties, i.e. termination or discharge from city employment and lost of pension following the recommendation of the ALJ for city officials as was Defendant Kerik when he discharged Plaintiff employment with DOC, as he did with the Plaintiff's in the Oba Hassan Wat Bey case.

170.   At all time relevant hereto, OATH was merely used as a "rubber stamp" by Defendant Giuliani and Kerik to discharge or terminate Plaintiff's employment, as was the Plaintiffs in the Oba Hassan Wat Bey case (cite omitted) because of being a Moor or Moorish American.

171.   At all times relevant hereto, the OATH proceedings deprived Plaintiff as did the Plaintiff's in the Oba Hasan Wat Bey case (cite omitted) of due process of law because OATH

was subjected to the undue influence of Defendant Giuliani in which it was indicated by Defendant Kerik at a closed door meeting in 1998 " **these people were going to be fired for the actions that they had taken"** and **"They were referred to as the Moors"**.

172.    By promulgating, executing and/or implementing in a conspiracy, a policy, custom, practice, statement, ordinance, or regulation or by adopting and ratifying a decision promulgated by DOI policy-making officials to target all DOC employees of the Moorish American faith for adverse employment actions in violation of Plaintiffs and similarly situated DOC employees fundamental human rights and constitutional rights to freedom of speech, freedom of association, equal protection of the law and due process of law, where DOI officials regularly attended and participated in "leadership" meetings with then-Mayor Giuliani to keep the Mayor informed of all investigations and where Giuliani approved of the investigation leading to Plaintiffs discharge and those of the Oba Hassan Wat Bey case, and where Giuliani made announcements in the media approving of the investigation and the discharge of Moorish Americans-although DOC employees who did not claim to be Moors engaged in the same or substantially similar misconduct, Defendant City violated Plaintiffs fundamental human rights and Constitutional Rights.

173.    As a legal and proximate result of Defendant Giuliani, Kerik's, Caruso, and other co-conspirators not yet named or should be named herein, violates 42 U.S.C. 1985(3).

174.    Plaintiff have suffered and continues to suffer substantial losses, including the loss of past and future earnings, promotional opportunities, bonuses, deferred compensation, overtime, night differential and other fringe benefits;

175.    Plaintiff has suffered and continue to suffer impairment and damage to his good name and reputation; Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

176.    The conduct of Defendants shocks the conscience and were outrageous and malicious, was intended and for the purpose to, and in fact, injured Plaintiff and was done with reckless and depraved indifference to Plaintiff's fundamental human, constitutional and civil rights, entitling Plaintiff to an award of equitable and ancillary relief, compensatory and punitive damages against the individual Defendants.

## COUNT I
### (42 U.S.C. § 1985 (3) - Conspiracy)

177.    Plaintiff repeat and reallege paragraph 1 through 176 above with the same force and effect as if set forth herein.

178.    By engaging in a policy, custom and/or practice of targeting Moorish Americans for adverse treatment, Defendant Kerik, Caruso, Fraser, with the "meeting of the minds" conspired behind closed doors and selectively targeted Moorish Americans to which Plaintiff has been identified for adverse employment actions, including but not limited to, an almost 2 year unpaid involuntary medical leave, summary suspensions, modified duty in an asbestos contaminated facility and discharge from employment, for the intent and purpose of denying Plaintiff the equal protection under the law, and utilizing OATH as a "rubber stamp" as part of their conspiracy and as a mechanism and tool with which to facilitate Plaintiff's discharge from City employment, as OATH was subjected to the inappropriate influences of Defendant Giuliani, whereby Plaintiff is injured in his property interest and denied the right to the equal protection under the law, to which Plaintiff is entitled to equitable and ancillary relief as a matter of law.

## COUNT II
### (42 U.S.C. § 1986 - Neglect to Prevent Conspiracy)

179.    Plaintiff repeat and reallege paragraph 1 through 178 above with the same force and effect as if set forth herein.

180.    Defendants, individually and collectively, knew or should have reasonably known of their wrongs conspired to be done to Plaintiff and those similarly situated because of being a Moor or Moorish American, and having power to prevent or aid in preventing the commission of same, neglected or refused so to do when Defendants and each of them by reasonable diligence could have prevented, thus causing Plaintiff a damage to which Plaintiff is entitled to equitable and anciliary relief as a matter of law.

## COUNT III
### (42 U.S.C. § 1981 - Discrimination)

181.    Plaintiff repeat and reallege paragraph 1 through 180 above with the same force and effect as if set forth herein.

182.    Plaintiff is a Moor who is male.

183.    By engaging in a pattern, policy, custom and practice of targeting Moorish Americans for adverse treatment due solely to Plaintiff association with Moorish American faith and religion, Defendants violated Plaintiff's rights to be free from race and religious discrimination to which Plaintiff is entitled to equitable and ancillary relief as a matter of law.

184    DOC employees who did not claim to be Moorish American, some of whom were white, but who also submitted the same or substantially similar documents to the Department were not similarly suspended, placed on modified duty, recommended for, and in fact discharged.

185.    Plaintiff's race and religion was at least a motivating factor in his discharge.

186.    Defendants conduct and actions has caused Plaintiff to suffer damages, and to which Plaintiff is entitled to the same or similar relief as set forth in the Oba Hassan Wat Bey case.

## COUNT IV
### (42 U.S.C. § 1983 - Due Process)

187.    Plaintiff repeat and reallege paragraph 1 through 186 above with the same force and effect as if set forth herein.

188.    By intentionally and willfully concealing the true nature of the charges against Plaintiff, and in conspiracy thereof wherein lies the fraud, targeting Moorish Americans for termination of employment and utilizing OATH as a "rubber stamp" and subjecting it to inappropriate influences, acted "under color of statute, ordinance, regulation, custom, or usage, of the State or Territory of New York, and acted under color of state law" Defendant engaged in a policy, custom and/or practice to deprive Plaintiff of due process of law, i.e., the right to adequate notice and an opportunity to be heard before an impartial fact finder on the actual charges against Plaintiff before a deprivation of a property interest in his employment, in violation of the 14th Amendment to the United States Constitution. to which Plaintiff is entitled to equitable and ancillary relief as a matter of law

189.    By engaging in a, policy, custom and practice of targeting Moorish Americans for adverse treatment and termination or discharge from employment, Defendant Giuliani, Kerik, Caruso and Fraser, and each of them and collectively and through their subordinates violated Plaintiff's rights to due process of law pursuant to the 14th Amendment to the U.S. Constitution.

## COUNT V
### (42 U.S.C. § 1983 - Equal Protection- Selective Enforcement & Prosecution)

190.    Plaintiff repeat and reallege paragraph 1 through 189 above with the same force and effect as if set forth herein.

191.    By Selectively subjecting Plaintiff, Moorish Americans, and other Moorish Americans, for adverse employment actions compared with other similarly situated, where the selective treatment was based on race, religion, the intent to inhibit the exercise of constitutional rights and a malicious or bad faith intent to injure Plaintiff, as those Plaintiff in the Oba Hassan Wat Bey case, Defendants engaged in a policy, custom and/or practice to violate Plaintiff's rights to equal protection of the law, to which Plaintiff is entitled to equitable and ancillary relief as a matter of law.

## COUNT VI
### (42 USC § 1983 - Freedom of Association)

192.    Plaintiff repeat and reallege paragraph 1 through 191 above with the same force and effect as if set forth herein.

193.    By imposing an almost 2 year involuntary unpaid medical leave, summarily suspending Plaintiff, ordering Plaintiff's modified duty placement and recommending Plaintiff for termination, and in fact discharging Plaintiff, and treating Plaintiff as a "security concern" for no reason other than the fact that Plaintiff is affiliated with the "Moorish National group" identified in an NYPD memorandum and because Plaintiff submitted documents to the DOC announcing his religious philosophy, the Defendants engaged in a policy, custom and/or practice to violated Plaintiff's First Amendment right to freedom of association as purview through the 14th Amendment to the United States Constitution, in which Plaintiff suffered damages to which Plaintiff is entitled to equitable and ancillary relief as a matter of law.

## COUNT VII
### (42 USC § 1983 - Freedom of Speech)

194.    Plaintiff repeat and reallege paragraph 1 through 193 above with the same force and effect as if set forth herein.

195.    By basing their decision to summarily suspend, place on modified duty in a asbestos contaminated facility and terminate Plaintiff on the content of his speech, documents submitted to the DOC, on a matter of public concern, professing adoption of the Moorish American faith and Plaintiff's rights and immunity(ies) as a member of that religious faith, pursuant to the DOC's policy prohibiting discrimination on the basis of religion, Defendant engaged in a policy, custom and/or practice to violated Plaintiff right to freedom of speech, causing Plaintiff a damage to which Plaintiff is entitled to equitable and ancillary relief as a matter of law.

## COUNT VIII
### (NYS - Selective Prosecution)

196.    Plaintiff repeat and reallege paragraph 1 through 195 above with the same force and effect as if set forth herein.

197.    By Selectively subjecting Plaintiff, Moorish Americans, and other Moorish Americans, for adverse employment actions compared with other similarly situated, where the selective treatment was based on race, religion, the intent to inhibit the exercise of constitutional rights and a malicious or bad faith intent to injure Plaintiff, as those Plaintiff in the Oba Hassan Wat Bey case, Defendants engaged in a policy, custom and/or practice to violate Plaintiff's rights to equal protection of the law, to which Plaintiff is entitled to equitable and ancillary relief as a matter of law.

## COUNT IX
### (NYS-Malicious Prosecution)

198.    Plaintiff repeat and reallege paragraph 1 through 197 above with the same force and effect as if set forth herein.

199.    By engaging in a pattern, policy, custom and practice of targeting Moorish Americans for adverse treatment, retaliation and having been found by preponderance of the evidence in the Oba Hassan Wat Bey case in violation of "equal protection", "discrimination" and denial of due process" show Malicious Prosecution.

## COUNT X
### (NYS-Intentional Infliction of Emotional Distress)

200.    Plaintiff repeat and reallege paragraph 1 through 199 above with the same force and effect as if set forth herein.

201.    By engaging in a pattern, policy, custom and practice of targeting Moorish Americans for adverse treatment. By engaging in a policy, custom and practice of targeting Moorish Americans

for adverse treatment, Defendant Giuliani knew or should have known that his conduct, as expressed through Defendant Kerik and his subordinates Defendant Rubin, to include the subordinates of Defendant Giuliani, vis-a-vis the conduct of OATH through Defendant Rubin, with reckless and depraved indifference caused Plaintiff harm that was planned behind a closed door DOC meeting held by Defendant Kerik.

## COUNT XI
### (NYS-Negligent Infliction of Emotional Distress)

202.    Plaintiff repeat and reallege paragraph 1 through 201 above with the same force and effect as if set forth herein.

203.    By engaging in a pattern, policy, custom and practice of targeting Moorish Americans for adverse treatment Defendant Giuliani knew or should have known that his conduct, as expressed through Defendant Kerik and his subordinates, to include the subordinates of Defendant Giuliani, vis-a-vis the conduct of OATH through Defendant Rubin, with reckless and depraved indifference intentionally cause the harm that was expressed in the closed door DOC meeting held by Defendant Kerik.

## COUNT XII
### (NYS Constitution - Due Process)

204.    Plaintiff repeat and reallege paragraph 1 through 203 above with the same force and effect as if set forth herein.

205.    By engaging in a pattern, policy, custom and practice of targeting Moorish Americans for adverse treatment in which Plaintiff was discharge from employment suffering the lost of a property interest in his employment, violates the New York State Constitution, Bill of Rights, Article 1, Section 6, 2nd paragraph.

## COUNT XIII
### (NYS Constitution - Equal Protection)

206.     Plaintiff repeat and reallege paragraph 1 through 205 above with the same force and effect as if set forth herein.

207.     By engaging in a pattern, policy, custom and practice of targeting Moorish Americans for adverse treatment, Defendants, and each of them and in corroboration with their subordinates violated Plaintiff rights as a New York State Citizen under Article 1, Section 11 of the New York State Constitution.

## COUNT XIV
### (Employment Discrimination - New York State Human Rights Law)

208.     Plaintiff repeat and reallege paragraph 1 through 207 above with the same force and effect as if set forth herein.

209     Plaintiff is a Moor or Moorish American.

210.     By engaging in a pattern and practice of targeting Moorish Americans for adverse treatment due solely to Plaintiff's association with the Moorish American faith, Defendants violated Plaintiff's right to be free from race and religious discrimination.

211.     DOC employees who did not claim to be Moorish American, some of whom were white, but who also submitted the same or substantially similar documents to the Department were not similarly suspended, placed on modified duty, recommended for, and in fact discharged.

212.     Plaintiff's race and religion was at least a motivating factor in his discharge.

213.     Defendants conduct has caused Plaintiff to suffer damages as more fully stated above.

## COUNT XV
### (Employment Discrimination - New York City Human Rights Law)

214.     Plaintiff repeat and reallege paragraph 1 through 213 above with the same force and effect as if set forth herein.

215.    Plaintiff is a Moor or Moorish American

216.    By engaging in a pattern and practice of targeting Moorish Americans, and in conspiracy thereof, for adverse treatment due solely to Plaintiff's association with the Moorish American faith, Defendants violated Plaintiff's right to be free from race and religious discrimination.

217.    DOC employees who did not claim to be Moorish American, some of whom were white, but who also submitted the same or substantially similar documents to the Department were not similarly suspended, placed on modified duty, recommended for, and in fact discharged.

218.    Plaintiff's race and religion were at least a motivating factor in his discharge

219.    Defendants conduct has caused Plaintiff to suffer damages as more fully stated above.

## JURY DEMAND

220.    Plaintiff demands a trail by jury on all issues of facts to be decided by the Jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Pray that this Court grant judgment containing the following relief:

a.      To set aside the Stipulation of Dismissal in case Jawan Akil Bey, et. al. vs. The City of New York, et. al. 98 Civ. 1353 (LAK)(HBP) on the grounds of fraud.

b.      To set aside the judgment order in Shekhem El Bey v. City of New York, et. al. 00 Civ. 9260 (JES) on grounds of newly discovered information and evidence giving rise to fraud and conspiracy.

a.      An award of Thirteen Million Dollars as sum certain ($13,000,000.00) for combined punitive and compensatory damages, encompassing but not limited to: loss of wages, overtime, benefits and promotional opportunities, including an award of front pay, loss of future salary and

## VERIFICATION

STATE OF NEW YORK    )
                     ) as:
COUNTY OF NEW YORK)

BEFORE ME personally appeared: YASHUA AMEN SHEKHEM EL BEY

who, being by me first duly affirmed and identified in accordance with New York State Law,

deposes and says:

My name is Yashua Amen Shekhem El Bey, the Plaintiff herein.

I have read and understand the attached foregoing verified civil complaint, and each fact alleged

therein is true and correct of my own personal first hand knowledge.

FURTHER THE AFFIANT SAYETH NAUGHT.

CYNTHIA V WHARTON
Notary Public - State of New York
NO. 01WH6184583
Qualified in New York County
My Commission Expires Jun 27, 2016

Yashua Amen Shekhem El Bey, Affiant

Affirmed To and subscribed before me this 17 day of December 2013.

Cynthia V. Wharton
Notary Public

My Commission Expires: 06-27-2016

benefits, out of pocket expenses, and for mental anguish, pain and suffering, humiliation, embarrassment, and emotional injury;

b.      Full Reinstatement to employment with the New York City Department of Correction as a Correction Officer and then to be retired as a Captain shortly thereafter, including expunging of adverse comments in Plaintiff's personnel file, restoration of seniority, and full pension and benefits.

c.      To Declare this actions as a Class Action by extension to protect Moorish Americans seeking present or future employment with the City of New York in general.

d.      To Declare the actions of Defendants a violation of Plaintiff's fundamental human rights with respect to Article 15 of the Universal Declaration of Human Rights.

e.      Leave to amend the complaint pursuant to Rule 15 (a) and (b) of the FRCP in the event further and new information or evidence requires new parties to be joined in as Defendants, and as to such other corrections needed to perfect the pleadings.

e.      An award of all Court Cost, fees and incurred expenses of this action.

f.      Such other and further relief as the Court may deem reasonable or appropriate and just under the circumstances.

I, Yashua Amen Shekhem El Bey declare under penalty of perjury that the foregoing is true and correct:

DATED: 12/17/2013

Signature: _Yosh Am El El Bey_

CYNTHIA V WHARTON
Notary Public - State of New York
NO. 01WH6184583
Qualified in New York County
My Commission Expires Jun 27, 2016

Name: _Yashua Amen Shekhem El Bey_
C/O 244 Fifth Avenue, Suite 200
New York, New York 10001