UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------

| | |
|---|---|
| Yashua Amen Shekhem El Bey,<br><br>                              Plaintiff,<br><br>v.<br><br>The City of New York; Rudolph Giuliani, individually and as former Mayor and Chief Executive Officer of the City of New York; Bernard Kerik, individually and as former Commissioner of the Department of Correction of the City of New York (DOC); William Fraser, individually and as former Chief of the Department of the Department of New York Department of Correction (DOC); Michael Caruso, individually and as former Inspector General of the City of New York Department of Investigation (DOI);<br><br>                              Defendants, | **13 CV 8927 (AJN)(RLE)**<br><br>**THIRD AMENDED VERIFIED CIVIL COMPLAINT**<br>USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC#_____<br>DATE FILED: 5/12/2014<br><br>**CIVIL COMPLAINT BASED ON NEW INFORATION AND EVIDENCE & THE DECEMBER 18, 2012 JURY VERDICT OF THE OBA HASSAN WAT BEY CASE**<br><br>**JURY TRIAL DEMANDED HEREIN** |

------------------------------------------------------------------

1.    COMES NOW Plaintiff, Yashua Amen Shekhem El Bey for this third amended verified civil complaint as permitted by Order of this Court, dated March 17, 2014, and upon the exhibits attached thereto, proceeding Pro Se in this action, lays claim, complains of municipal Defendants and alleges as follows:

## STATEMENT OF THE CASE

2.    This civil action is for equitable, ancillary and declaratory relief based on the unanimous jury verdict on December 18, 2012 of the Oba Hassan Wat Bey, et. al. v. THE CITY OF NEW YORK, et. al. 99 Civ. 3873 (AJN) (RLE) & 01 Civ. 9406 (AJN) (RLE) case ("Oba Hassan Wat Bey case") and Plaintiff's discovery of new information and evidence following the course of its jury trial proceeding in December of 2012 which revealed that Moorish American former Correction Officers or those referred to as the "Moors" including Plaintiff herein, were in fact targeted for adverse employment actions as a custom or policy under color of state law, vis-a-vis, "summary suspension without pay, placement on modified duty, code blue status and termination from employment, all stemming from a closed door meeting held by defendant Bernard Kerik, now an x-felon, with William Fraser and others between August and December of 1998, that revealed, among other things, discrimination, denial of due process, equal protection and association, which has been proven by preponderance of evidence in the Oba Hassan

Wat Bey case; except with respect to fraud, conspiracy and retaliation which is being asserted by Plaintiff in addition to what has already been proven in the Oba Hassan Wat Bey case and as more fully set forth below.

3.      Additionally, the Jury found, as the Oba Hassan Wat Bey Plaintiffs has proven by a preponderance of evidence that Defendants discriminated against the Oba Hassan Wat Bey Plaintiffs based on association and religious affiliation as a Moorish American or "Moor", denied equal protection, due process and freedom of association resulting in their adverse employment actions, as in their summary suspension without pay, placement on modified duty, code blue status and ultimately termination from employment within the Department of Correction as to those Plaintiff's in the Oba Hassan Wat Bey case to whom Plaintiff in this action is similarly situated in all respects as the underlining factual circumstances are the same, as to commonality of issues, time frame and essentially the same defendants with respect to Plaintiff's prior civil action upon which "fraud on the court" exist, as more fully set forth herein as supported by exhibited documentary evidence annexed hereto, and seeks similar relief as the Oba Hassan Wat Bey Plaintiffs, but not limited thereto.

## JURISDICTIONAL ALLEGATIONS

4.      This Court has jurisdiction of this action just as the "Oba Hassan Wat Bey case" had and pursuant to Article 3 and 6 of the U.S. Constitution and 28 U.S.C. §§ 1331, 1343; 42 U.S.C. § 1983; 42 U.S.C. § 1981; 42 U.S.C. § 1985 (3) and 42 U.S.C. § 1986; the 1st Amendment "freedom of association" and 5th Amendment "due process" as purview through the "due process" clause of the 14th Amendment U.S. Constitution as applied to the States, including the "Equal Protection" clause therein.

5.      Jurisdiction is proper pursuant to the Declaratory Judgment Act. 28 U.S.C. § 2201 and for further relief per 28 U.S.C. § 2202 based on a declaratory judgment, to include Rule 57 FRCP.

6.      This Court has jurisdiction pursuant to Rule 60 (d)(1) FRCP "to entertain an independent action to relieve a party from judgment, order or proceeding, and/or Rule 60 (d)(3) FRCP "to set aside a judgment for fraud on the Court", as these rules apply to this action with respect to prior civil cases filed by Plaintiff involving the same Defendants with respect to "Officers and/or agents of the Court" engaging in fraud on

the Court as in false filing of documents and case fixing to which Plaintiff was denied access to the Court, denied full and fair adjudication of claims and on the merits, and prevented from having his day in Court, as was enjoyed by the Oba Hassan Wat Bey Plaintiffs.

7.      Jurisdiction is also proper under 28 U.S.C §§ 453, 454 and 455.

8.      Jurisdiction is also proper under Article 6 of the U.S. Constitution in conjunction with the United Nations General Assembly, December 10, 1948 - Signed and Adopted by the United States of America under President Harry S. Truman, the United Nations Universal Declaration of Human Rights, Article 3, 6, 7, 8, 10, **15**, 17 (2), 18, 19, 20 (1), 21 (2), and 28; all applicable to Plaintiff's fundamental Human Rights.

9.      The All Writs Act, 28 U.S.C. § 1651 in aid of this Courts Jurisdiction.

10.     This Court has supplemental pendant state jurisdiction over Plaintiff's state law claims arising out of Plaintiff's timely filed Notice of Claim to the City of New York pursuant to 28 U.S.C. § 1367 and with respect to newly discovered information and evidence on the record of the aforesaid Oba Hassan Wat Bey case, and with respect to proper service of former employees under NY GMU § 50-k(e) and § 50-k(e)(3).

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES
## PLAINTIFF

12.     Plaintiff, Yashua Amen Shekhem El Bey, (p/k/a James D. Mercer)(herein after referred to as Plaintiff) is a Moor or Moorish American.

13.     Plaintiff is a Citizen of the United States of America and Citizen of New York State.

14.     Plaintiff is a former employee of the New York City Department of Correction.

15.     Plaintiff was hired by defendant City of New York as a Corrections Officer on June 13, 1983.

16.     Following Plaintiff's probation as a Correction Officer, Plaintiff was granted a 3 year leave of absence by the Department of Correction to serve in the United States Army and served from on or about February 20, 1985 to on or about February 20, 1988 and was honorably discharged.

17.     Upon Plaintiff's return from the U.S. Army, Plaintiff was reinstated back to full duty as a Correction Officer to resume work with the Department of Correction on or about February of 1988.

18.     Plaintiff is domiciled in New York State within New York City, whose mailing address is 244 Fifth Avenue, Suite 200, New York, New York 10001.

19.     Plaintiff was, and at all time relevant to this matter a tenured, permanent, competitive class civil service employee with a property interest in his employment.

20.     During Plaintiff's employment tenure, his job performance has been at least satisfactory.

## DEFENDANTS

21.     Defendant City of New York (herein after City) is a municipal corporation, local governmental unit and is chartered under the laws and constitution of the State of New York and is a recipient of federal funds.

22.     Defendant City is, and at all time relevant hereto, was and/or is an "employee" within the meaning of the New York City Human Rights Laws.

23.     Defendant City is, and at all time relevant hereto, was and/or is an "employee" within the meaning of the New York State Human Rights Laws.

24.     The Defendant City is at all time relevant hereto, a "person" within the meaning of 42 U.S.C. § 1983.

25.     The Defendant City's address is City Hall, New York, New York 10038 and receives its service together with former employees governed under NY GMU § 50-k(e) and/or § 50-k(e)(3) at the Corporation Counsel of the City of New York, Law Department located at 100 Church Street, New York, New York 10007.

26.     Defendant Rudolph Giuliani (herein after Giuliani) was, and at all times relevant to this matter, the former Mayor of the City of New York and the Chief Executive Officer.

27.     Defendant Giuliani is or was a "person" within the meaning of 42 U.S.C. § 1983

28.     Defendant Giuliani as former Mayor is being sued in his official and/or individual capacity.

29.    Defendant Giuliani's last known principle place of business is or was City Hall, New York, New York 10038 and for purpose of service of process as former employee, elected or appointed official of the City is governed under New York General Municipal Law § 50-k(e) and/or § 50-k(e)(3).

30.    Defendant Bernard B. Kerik (herein after Kerik) was, and at all times relevant to this matter, the former Commissioner of the City Department of Correction ("DOC").

31.    Defendant Kerik was, and at all time relevant to this matter, a "person" within the meaning of 42 U.S.C. § 1983.

32.    Defendant Kerik is an x-felon for having lied on his taxes to the IRS and United States Government and sentenced to served 4 years in federal prison, but served up to 3 years and was released.

33.    Defendant Kerik as former commissioner is being sued in his official and/or individual capacity.

34.    Defendant Kerik's last known principle place of business is or was 60 Hudson Street, New York, New York 10013 and for purpose of service of process as former employee, elected or appointed official of the City is governed under New York General Municipal Law § 50-k(e) and/or § 50-k(e)(3).

35.    Defendant William Fraser (hereinafter Fraser) was, and at all times relevant to this matter, the former Chief of the Department of the City Department of Correction ("DOC").

36.    Defendant Fraser was, and at all time relevant to this matter, a "person within the meaning of 42 U.S.C. § 1983.

37.    Defendant Fraser as former Chief of the Department is being sued in his official and/or individual capacity.

38.    Defendant Fraser last known principle place of business is or was 60 Hudson Street, New York, New York 10013 and for purpose of service of process as former employee, elected or appointed official of the City is governed under New York General Municipal Law § 50-k(e) and/or § 50-k(e)(3).

39.    Defendant Michael Caruso (herein after Caruso) was, at all times relevant hereto, the former Inspector General of the New York City Department of Investigation ("DOI") with responsibility for the City Department of Corrections ("DOC").

40.    Defendant Caruso was, at all times relevant hereto, a "person" within the meaning of 42 U.S.C. § 1983.

41.    Defendant Caruso as former Inspector General of DOI is being sued in his official and/or individual capacity.

42.    Defendant Caruso's last known principle place of business is or was 60 Hudson Street, New York, New York 10013 and for purpose of service of process as former employee, elected or appointed official of the City is governed under New York General Municipal Law § 50-k(e) and/or § 50-k(e)(3).

43.    Plaintiff sues the Defendants who are natural persons in both their individual and official capacities and for purpose of sufficiency of service of process as former employee, elected or appointed official of the City as governed under New York General Municipal Law § 50-k(e) and/or § 50-k(e)(3) are deemed served when the initial service of this action was executed on December 17, 2013.

44.    In doing the acts alleged in this complaint, Defendants acted as agents for and on behalf of all other Defendants named in this complaint.

## CONDITIONS PRECEDENT

45.    On February 28, 2013 Plaintiff submitted a Notice of Claim within the 90 day statutory time frame of discovering the new information and evidence via United States Postal Mail to the Office of the Comptroller of the City, and subsequently received a letter of acknowledgment with claim number 2013P1006910. See attached, a true copy of Notice of Claim, dated February 28, 2013 at **Exhibit A**; and a true copy of the City Comptroller's letter of acknowledgement, dated March 11, 2013 at **Exhibit B**.

46.    The Testimony of Terence Skinner (non-party witness) in the Oba Hassan Wat Bey Case indicated that Moors were targeted for adverse employment action. See attached, a true copy of the Transcript of Terrence Skinner's testimony, dated December 10, 2012 at **Exhibit C**.

47.    The Honorable Alison J. Nathan, U.S. District Court Judge was the presiding Judge in the Oba Hassan Wat Bey case and her final amended judgment, which is on appeal, was issued on November 5, 2013. See attached, a true copy of Hon. Judge Alison J. Nathan's Amended Judgment, dated November 5, 2013 at **Exhibit D**.

## GENERAL FACTUAL ALLEGATIONS

48.    On December 18, 2012 a unanimous jury verdict was reached in the Oba Hassan Wat Bey case of this Court in favor of the Moorish American Plaintiffs who are or were Moorish American former Corrections Officers against the Defendant City, Caruso, Fraser and Kerik. See attached, a true copy of the Court's Jury Instructions, dated December 12, 2012 at **Exhibit E**, and a true copy of the Jury Verdict Form, dated December 18, 2012 at **Exhibit F**.

49.    The jury found based on the preponderance of evidence and finding of fact that Defendants engaged in discriminatory conduct against the Oba Hassan Wat Bey Plaintiffs in that Defendant Kerik and Fraser discriminated and denied equal protection and due process because of Plaintiffs being a Moor or Moorish American and for their Moorish American faith. See attached, a true copy of the Jury Verdict Form, dated December 18, 2012 at **Exhibit F**.

50.    The jury found as the Oba Hassan Wat Bey Plaintiffs has proven by preponderance of evidence that their Moorish religion was a motivating factor in the adverse employment action, which is their summary suspension without pay, placement on modified duty, code blue status and ultimately their termination from employment by Defendant Kerik and Fraser.

51.    The jury found as it was proven by preponderance of evidence that it was the religion of the Moorish American to whom they was associated with was a motivating factor in the adverse employment action which is their summary suspension without pay, placement on modified duty, code blue status and termination from employment by Kerik.

52.    The Jury found as it was proven by a preponderance of evidence by the Oba Hassan Wat Bey Plaintiffs, that Kerik and Fraser aided and abetted the violation of their rights.

53.    The Jury found as it was proven by a preponderance of evidence by the Oha Hassan Wat Bey Plaintiffs the elements of their section 1983 claim under freedom of association was violated by the said adverse employment action which is their summary suspension without pay, placement on modified duty, code blue status and termination from employment.

54.    The Jury has found as the Oba Hassan Wat Bey Plaintiffs has proven by a preponderance of evidence, the elements of their section 1983 claim under the equal protection clause were violated by the adverse employment action taken against them which is their summary suspension without pay, placement on modified duty, code blue status and termination from employment.

55.    The Jury has found as the Oba Hassan Wat Bey Plaintiffs has proven by a preponderance of evidence, that Kerik and Fraser participated in the violation of their rights under 42 U.S.C. § 1983.

56.    The Jury has found as the Oba Hassan Wat Bey Plaintiffs has proven by a preponderance of evidence, that the violation of their rights under section 1983 was the result of a policy or custom of the City, and that Kerik and Caruso were the Policy makers who took acts causing the deprivation of the Oba Hassan Wat Bey Plaintiffs with deliberate indifference to those rights.

57.    The Jury found as the Oba Hassan Wat Bey Plaintiffs has proven by preponderance of evidence that they are entitled to back-pay and liability for punitive damages.

58.    At all time relevant, the amount at issue with respect to damage claims for monetary relief and other reliefs sought is currently on appeal and Defendant City seeking a new trial.

59.    At all time relevant hereto, Plaintiff herein is similarly situated in all respects with the Oba Hassan Wat Bey Plaintiffs as to commonality of issues, relatively the same time frame and damages involving the same defendants with respect to this action and Plaintiff's prior civil actions that were filed in this court regarding Defendant Kerik, Fraser and other named Defendants.

60.    At all time relevant, Plaintiff was subjected to the same adverse employment actions as the Oba Hassan Wat Bey Plaintiffs upon returning from an involuntary unpaid medical leave of absence. See attached, a true copy of letter of return to full duty (SS# redacted), dated June 11, 1999, from Alan Vengersky, at **Exhibit G**.

61.    At all time relevant, Plaintiff was subjected to the same adverse employment actions as the Oba Hassan Wat Bey Plaintiffs by Defendant Kerik.

62.    At all time relevant, Plaintiff was not aware nor could have been aware of the new information and evidence revealed in the Oba Hassan Wat Bey case following the course of its jury trail proceedings regarding a closed door meeting where it was communicated that Moors in Corrections will be fired.

63.    At all time relevant, Plaintiff's prior case filed in this court are inextricably intertwined with the Oba Hassan Wat Bey case, as the underlining factual circumstances are the same with essentially the same Defendants, except that Plaintiff was not aware of the new information and evidence revealed in this action.

64.    The Plaintiff's prior civil actions related to the Oba Hassan Wat Bey case (cite omitted) are Jawan Akil Bey, et. al. v. City of New York, et. al. 98 Civ. 1353 (LAK)(HBP) regarding a sham OATH proceeding in which Plaintiff alleged denial of due process under 42 U.S.C. § 1983. However, Plaintiff and the City entered into a "Stipulation of Dismissal" agreement, in which it was agreed that the stipulation would not have no collateral or preclusive effect in 97 Civ. 4177 (JES)(S.D.N.Y.)(regarding sick-leave, not at issue in this case), 98 Civ. 2745(JES)(S.D.N.Y.)(regarding involuntary medical leave - not at issue in this case), or 99 Civ. 12490(JES) (S.D.N.Y.)(regarding summary suspension, placement on modified duty in an asbestos contaminated facility). See attached, Plaintiff's true copy of Stipulation of Dismissal (98 Civ. 1353 (NRB)(HPB)) agreement signed by Plaintiff and David M. Steiner, Assistant Corporation Counsel, at **Exhibit H**.

65.    At all times relevant, the filed version of the Stipulation and Order of Dismissal filed September 7, 2000 and entered September 8, 2000 is missing from the court records as stated by the Court staff on April 29, 2014 at room 370 - Closed Records.

66.    In Shekhem El Bey vs The City of New York, et. al. 99 Civ 12490 (JES)(MHD)(defaulted/dismissed), it was regarding Plaintiff's summary suspension and modified duty status and was dismissed by Judge Sprizzo without a full and fair adjudication on the merits.

67.    In Shekhem El Bey vs. City of New York, et. al. 00 Civ. 9260 (JES) (dismissed) was commenced regarding Plaintiff termination and was dismissed by Judge Sprizzo without a full and fair adjudicated on the merits.

68.    In Shekhem El Bey, vs. City of New York, et. al. 05 Civ. 7072 (TPG) was based on what was then new information and evidence regarding the NYPD Security Memo used by Defendant Caruso as the vehicle to pursue adverse employment actions against Moorish Americans in the Department of Corrections. Said Security Memo issue was not known nor could have been known in Plaintiff's civil case filed in 2000 under Shekhem El Bey vs. City of New York, et. al. 00 Civ. 9260 (JES).

69.    By leave of the Court, the Honorable Thomas P. Griesa granted Plaintiff's request for withdrawal without prejudice to permit Plaintiff to re-file his Civil action in Shekhem El Bey, vs. City of New York, et. al. 05 Civ. 7072 (TPG) at a latter date. See attached, a true copy of Hon. Thomas P. Griesa's Order dated April 19, 2006, at **Exhibit I**; See also attached, a true copy of Civil Docket Sheet for Shekhem El Bey v. City of New York, et. al. 05 Civ. 7072 (TPG) reference docket # 5, at **Exhibit J;** and see also attached, a true copy of the amended complaint dated and received August 31, 2005, Shekhem El Bey, vs. City, et. al. 05 Civ. 7270 (TPG), at **Exhibit K**.

70.    At all time relevant hereto, Plaintiff's re-filed civil action with its statement of relatedness letter, filed under informa pauparis on November 13, 2006 subsequently went missing following several visits to the Pro Se's Office to check on the status of the civil filing of the complaint to obtain a civil docket number. See attached, a true copy of Plaintiff's "Pro Se Office received stamped dated" "Pro Se Office Letter of acknowledgment and receipt", "Statement of Relatedness Letter", and "Verified Civil Complaint, all dated November 13, 2006, at **Exhibit L**.

71.    The Pro Se's Office did not provide Plaintiff with any new civil docket number for his November 13, 2006 filed complaint with statement of relatedness letter and never receive a full or fair adjudication of claims regarding what was then the new information and evidence from Defendant Caruso's NYPD Security Memo about the Moors possessing illegal high powered weapons, explosives and criminal activities.

72.    On April 18, 2007, Plaintiff visited the Pro Se's office to further investigate what could have happen to his civil complaint with its statement of relatedness and discovered from an informant within the Pro Se's office that the complaint was intercepted by Judge John Emilio Sprizzo.

73.    At all time relevant hereto, based upon the information from the informant, Plaintiff's investigation further revealed that Plaintiff's November 13, 2006 re-filed civil complaint with its statement of relatedness letter was found under document #44 under the case - Shekhem El Bey. vs. City of New York, et. al. 00 Civ. 9260 (JES), that was previously dismissed. See annexed herein a copy of the Civil Docket Sheet for Shekhem El Bey vs. City of New York, et. al. 00 Civ. 9260 (JES), reference to page 10 of 11, document # 44 at **Exhibit M**. See also annexed hereto, a true copy of the filed version of Plaintiff's November 13, 2006 Complaint with docket 00 Civ. 9260 written on it and a yellow note attached stating "Docketing, (212)252-2641 - Please docket this as a 60(b) motion in 00 Civ. 9260 (JES). This is at the direction of Judge Sprizzo. Thank you, Pro Se Office "unknown signature", and statement of relatedness filed under document #44. at **Exhibit N**.

74.    At all time relevant hereto, document #44 was and/or is not viewable online or on the intranet or internet system of the U.S. District Court for the Southern District of New York, but can only be physically viewed in Person at the Court upon request at Room 370 Closed Records.

75.    Plaintiff then submitted a letter of protest to Judge Sprizzo in which there was no reply or any effort by Sprizzo to correct what he has been done. See attached, a true copy of Letter of Protest to Judge Sprizzo, dated April 23, 2007 and filed April 23, 2007 at the Pro Se's Office, at **Exhibit O**.

76.    Plaintiff's re-filed civil complaint with statement of relatedness that was converted to a 60(b) motion was done without notice to Plaintiff and without Plaintiff's knowledge or consent and that the Pros Se office did not notify Plaintiff whether his informa pauparis application was accepted or denied.

77.    On or about August 2008, by United States postal mail, Plaintiff received from the City a Memorandum of law in opposition to plaintiff's alleged 60 (b) motion. This opposition motion was signed by Carolyn Walker-Diallo. See attached, a true copy of the City's Memorandum of Law in opposition to Plaintiff's 60(b) motion with certificate of service, dated August 1, 2008, at **Exhibit P**.

78.    At all time relevant hereto, Plaintiff did not prepare, filed or submit a 60 (b) motion to the Court or mailed any such copies to the City.

79.    At all time relevant, Judge Sprizzo or someone other than himself engaged in fraud on the court in intercepting Plaintiff's legitimately filed civil complaint with statement of relatedness to the Pro Se Office on November 13, 2006 and redirecting it as a 60 (b) motion as indicated under civil docket #44 "Shekhem El Bey vs. City of New York, et. al. 00 Civ. 9260 (JES) without notice to Plaintiff and without Plaintiff's knowledge or consent.

80.    At all time relevant, the City through its agents or its Attorneys committed mail fraud and aided and abetted Judge Sprizzo or someone acting on his behalf in committing fraud on the Court when it mailed to the Plaintiff its opposition motion to Plaintiff's alleged 60 (b) motion when Plaintiff had not submitted a 60 (b) motion to be opposed in which case the opposition motion filed by the City by its Attorney, Carolyn Walker-Diallo, Assistant Corporation Counsel, was filed under fraud and is public record. See attached, a true copy of the City's Memorandum of Law in opposition to Plaintiff's (supposed) 60(b) motion with certificate of service, dated August 1, 2008, at **Exhibit P**.

81.    On or about the 30th of October 2008, Plaintiff by mail received Judge Sprizzo's Summary Order, dated September 30, 2008, which dismissed the 60 (b) motion that Plaintiff has not filed. See attached, a true copy of Judge Sprizzo's Summary Order dated, September 30, 2008, entered October 2, 2008, at **Exhibit Q**.

82.    At all time relevant, the civil docket cases has been changed to reflect entries that weren't present in Shekhem El Bey, vs. City of New York, et. al. 05 Civ. 7072 (TPG), but has been co-opted and altered to conceal the true nature of the changes made. See annexed herein the Civil Docket Sheet for 05 Civ. 7270 (TPG), referencing summary order at document # **6** (summary order document also appears under 00 Civ. 9260 (JES) as document # **54**), 7 and 8, at **Exhibit J**.

83.    At all time relevant, Plaintiff was never afforded a full and fair adjudication on the merits of his claims with respect to the Security Memo issue used by Defendant Caruso in targeting Moorish Americans for adverse employment actions because of the fraud that was perpetrated upon Plaintiff.

84.    At all time relevant, Attorney, Ms. Irene Donna Thomas, Esq., (herein after Ms. Thomas), who represented the Oba Hassan Wat Bey Plaintiffs with co-counsel, Attorney Mr. David M. Schlachter

(herein after Mr. Schlachter), deposed on direct examination a former high ranking DOC official, Terence J. Skinner (herein after Skinner) (non-party witness), who provided un-refuted and uncontested testimony on December 10, 2012 revealing that Defendant Kerik and Caruso had plan to have the Moors in the Department of Correction discharged from employment. See attached, a true copy of Skinner's Transcript at **Exhibit C**.

85.     At the deposition, Skinner, testified that he was in charge of the Gang Intelligence Unit for DOC.

86.     At the deposition, in response to Ms. Thomas question "...was the Gang Intelligence Unit ever used for a purpose other than its original intent?" In reply, Skinner testified that "One time, at some point in 1998 between August and December of 1998".

87.     At the deposition, in response to Ms. Thomas question "and what happen at that time?" In reply, Skinner, testified "We were instructed by the Inspector General, Mike Caruso, to have the gang intelligence unit conduct video surveillance of a protest at 60 Hudson Street".

88.     At the deposition, in response to Ms. Thomas question "And was there a meeting held to plan the surveillance?" In reply, Skinner, testified "Initially there was a meeting between myself, Chief Fraser, Commissioner Kerik, and his chief of staff, John Piciano. And at that meeting we were instructed that Mike Caruso would contact us and that we should do what he needed us to do regarding our surveillance of the demonstration that was going to take place".

89.     At the deposition, in response to Ms. Thomas question "And what was the concern that was raised at that meeting concerning the surveillance activity?" In reply, Skinner, testified **"The Commissioner indicated that the mayor had held a press conference and indicated that these people were going to be fired for the actions that they had taken** and that this was an important issue, so **we should do what was necessary to assist the Inspector General's Office in trying to gather information against this group"**.

90.     At the deposition, in response to Ms. Thomas question "And what group were you referring to, Sir?" In reply, Skinner, testified **"They were referred to as the Moors"**.

91.    Skinner, testified that "the Gang Intelligence Unit did do video surveillance of the demonstration...".

92.    Plaintiff herein was not present on the day that Skinner gave testimony and only learned of his testimony through Ntchwaidumela Bey who attended most or all of the trail hearing and deliberations of the Oba Hassan Wat Bey trail proceedings.

93.    The transcripts of the proceedings was made available and became record on the court 2 to 3 months later, on or about March or April 2013.

94.    At all time relevant hereto, the testimony of Skinner revealed that between August and December of 1998 Defendant Kerik held a DOC meeting in which Kerik communicated that " **these people were going to be fired for the actions that they had taken**..." "...**referred to as the Moors**".

95.    At all time relevant hereto, according to Skinner's testimony, Defendant Kerik was referring to Moors within the Department of Correction and that there was a press conference held by Defendant Giuliani regarding Moors to which evidence was produced at trial proving this fact by Ms. Thomas, Attorney for the Plaintiffs in the Oba Hassan Wat Bey case.

96.    According to Skinner's testimony, Defendant Kerik also communicated that Defendant Caruso will contact everyone who was at the DOC meeting to coordinate surveillance efforts on the Moors in regards to a planned demonstration at 60 Hudson Street.

97.    Plaintiff was not privy to such information or evidence made available to Plaintiff during Plaintiff's prior civil actions that commenced as far back as 1998.

98.    Plaintiff was not aware of any covert operations targeting Moorish American Correction Officers for discharge or termination of employment that was carried out by Defendant Kerik and Caruso.

99.    At all time relevant hereto, the covert surveillance operation for the plan demonstration was carried out in secret.

100.    At all time relevant hereto, Defendant Giuliani, Kerik, Caruso and Rose Luttan Rubin (non-party in this action), were named Defendants in Plaintiff's prior lawsuit in Jawan Akil Bey, et. al. v. City of New York, et. al. 98 Civ. 1353 (LAK)(HBP) that was filed February 24, 1998 approximately 6 or 10

months before the closed door meeting that was had with Defendant Kerik and Defendant Fraser, along with Picciano (non-party) and Skinner (non-party witness).

101.    At all time relevant hereto, Defendant Giuliani and Caruso were named Defendants in another prior action in which Plaintiff was not a party, however, the actions were by Moorish American Correction officers in Jawan Akil Bey, et. al. v. State of New York, et. al. 97 Civ. 9057 (LAK) that was filed December 9, 1997, approximately 9 or 14 months before the closed door meeting that was had with Defendant Kerik and Defendant Fraser, along with Picciano (non-party) and Skinner (non-party witness).

102.    At all time relevant hereto, Defendant Kerik, Fraser and Caruso actions and conduct, acting under color of law, relative to the DOC meeting held behind closed doors on or about August and December of 1998 in connection with the Giuliani Press Conference regarding the "Moors" and with the "meeting of the minds", was in part or in whole, an elaborate scheme and/or conspiracy for carrying out the adverse employment action against the Moors or Moorish American Corrections Officers as in summary suspension without pay, placement on modified duty, code blue status and discharge from employment.

103.    At all time relevant hereto, the elaborate scheme or conspiracy was for the purpose of depriving Plaintiff of the equal protection of the laws because of being a Moor or Moorish American and/or Moorish faith.

104.    At all time relevant hereto, the scheme or conspiracy was for the purpose of depriving Plaintiff of the equal protection of the laws because of having filed a civil action against Defendant Giuliani, Kerik and Caruso.

105.    At all time relevant hereto, Defendant Kerik did in fact discharged Plaintiff, as did the Plaintiffs in the Oba Hassan Wat Bey case for the same reasons.

106.    At all time relevant hereto, Defendant Kerik carried out what he had indicated at the closed door meeting that **"these people were going to be fired for the actions that they had taken..."** .

107.    At all time relevant hereto, Defendants in furtherance of their elaborate scheme or conspiracy subjected Plaintiff to the adverse employment actions of summary suspension without pay in excess of 30 days following an almost 2 year involuntary unpaid medical leave of absence, placement on modified

duty in an asbestos contaminated facility, code blue status, and termination from employment facilitated through an administrative tribunal that was subjected to inappropriate influence from Defendant Giuliani and Caruso, as were done to the Plaintiffs in the Oba Hassan Wat Bey case.

108.    At all time relevant hereto, all evidence provided in the Oba Hasan Wat Bey case has relevance to Plaintiff's claim in this action.

109.    Plaintiff is similarly situated as those Moorish American former Correction Officers in the Oba Hassan Wat Bey Case, who as the record and evidence showed in the Oba Hassan Wat Bey case, were singled out to be discharged from employment because of being a Moor and/or Moorish American and/or Moorish faith.

110.    Plaintiff was also singled out to be discharged from employment in retaliation for having filed civil lawsuits against Defendants therein.

111.    Plaintiff was also singled out to be discharged from employment because of submitting documents proclaiming Nationality as a Moorish American and/or Moor.

112.    Plaintiff was also singled out to be discharged from employment because of submitting documents proclaiming his Moorish American faith.

113.    At all time relevant hereto, Defendants Giuliani, Kerik, Caruso and Fraser had and/or has an invidious discriminatory animus against Plaintiff because of being a Moor and/or Moorish American as were the Plaintiffs in the Oba Hassan Wat Bey case.

114.    At all time relevant hereto, Defendants Giuliani, Kerik, Caruso and Fraser had and/or has an invidious discriminatory animus against Plaintiff because of being of the Moorish American faith or in association with the Moorish faith, as were the Plaintiffs in the Oba Hassan Wat Bey case.

115.    At all time relevant hereto, Plaintiff, as a proximate and/or direct result, suffered injury and/or damages to his property interest in employment and deprived of his rights as a Citizen of the United States of America.

116.    At all time relevant hereto, as a proximate and/or direct result, Plaintiff suffered damages and experienced emotional distress, loss of employment and benefits with DOC, loss of enjoyment and

quality of life, anxiety, depression, loss of reputation, embarrassment, humiliation and carrying the stigma of being a "black separatist" terrorist criminal when identified as Moor or Moorish American, loss of pension, loss of opportunity to obtain any government employment, and is undergoing ongoing medical counseling and treatment at the Veterans Administration Hospital at the James J. Peters Medical Center in the Bronx.

117.    At all time relevant hereto, according to Mr. Skinner's testimony, present at the meeting beside himself was Defendant Kerik, Fraser and John Piciano (non-party).

118.    At all times relevant herein, defendant Caruso was responsible for investigating charges of misconduct by DOC employees, as was established on the record of the Oba Hassan Wat Bey case.

119.    Rule 3.20.03 of the Departmental Rules and Regulations provide that DOC employees who make false official statements and who are convicted in a court of criminal jurisdiction have engaged in conduct of comparable seriousness.

120.    Rule 3.20.03 applies to all DOC employees, but was not equally applied as proven in the Oba Hassan Wat Bey case by preponderance of evidence.

121.    The rule prohibiting submission of false tax documents to the DOC applies to all DOC employees, but it was not equally applied as proven in the Oba Hassan Wat Bey case.

122.    Not All DOC employees were subject to the same standards of conduct and evaluation.

123.    For discipline purposes, it is irrelevant if DOC employees who submitted false tax documents to the Department filed all tax returns and paid all taxes.

124.    All DOC employees were investigated under the same "99 exemption" tax investigation, as was established on the record of the Oba Hassan Wat Bey case.

125.    Defendant Caruso is responsible for maintaining standards of conduct for all DOC employees, but did not equally apply these standards, as was established on the record of the Oba Hassan Wat Bey case.

126.    On or about Mid-1995, Plaintiff adopted the Moorish American faith.

127.    Plaintiff chose to manifest his religious observance and national identity through the name he used to present himself before the public and GOD (NEB ER TCHER - YHWH - ALLAH).

128.    Plaintiff adopted the Moorish Title El and Bey, just as the Oba Hassan Wat Bey Plaintiffs.

129.    Plaintiff changed his entire name from James Dennis Mercer to Yashua Amen Shekhem El Bey.

130.    Plaintiff exercised his fundamental human rights when he presented his name change by proclaiming his nationality as Moorish American pursuant to Article 15 of the Universal Declaration of Human Rights.

131.    Plaintiff notified defendants that he adopted the Moorish American faith and informed defendants, in good faith, of the rights he honestly believed he possessed as Moorish American, just as the Oba Hassan Wat Bey Plaintiffs did.

132.    Plaintiff submitted some or all of the following forms to DOC relating to Moorish American faith and nationality name claim: Moorish Zodiac Constitution, Letter of Credence-Notification of Rights and Immunities, Legal Notice-Declaration of Status and Name Claim, as it was done by the Oha Hassan Wat Bey Plaintiffs.

133.    On or about 1993, Plaintiff, who at the time was under the name James D. Mercer, submitted tax forms to the DOC claiming tax exempt status.

134.    The tax forms submitted by Plaintiff in 1993 consisted of a Certificate of Exemption from withholding in lieu of a W-4 form, Laws Pertaining to Form W-4 and Employer Options.

135.    Plaintiff's submission of these documents in 1993 to the DOC did not generate disruption in the work place and no fair warnings were made that said documents could subject Plaintiff to disciplinary charges.

136.    Plaintiff's submission of these documents did not impede the general operation of the DOC.

137.    Plaintiff's submission of these documents did not adversely affect the working relationships between Plaintiff's superiors necessary to the proper functioning of the DOC.

138.    DOC employees who did not claim to be Moors submitted the same or substantially similar tax documents to those submitted by Plaintiff in 1993 when Plaintiff had not yet claimed to be Moorish American.

139.    On or about April 10, 1996, the New York City DOI, under the direction of Defendant Caruso, began an investigation called "99 exemptions" to investigate all employees of DOC who had claimed between 40 or more exemptions on their federal and state tax forms submitted to the DOC, the facts of which is established and proven by the preponderance of evidence on the record of the Oba Hassan Wat Be case.

140.    Defendant Caruso determined that these documents constituted "false tax documents"

141.    On or about June 18, 1996, Defendant Caruso received a printout from the Office of Personnel Administration for the DOC listing all DOC employees who had filed 40 or more exemptions. Eliminating all duplicates, this list contained the names of 780 DOC employees who had filed 40 or more exemptions. During the investigation , Defendant Caruso learned that an additional 748 employees had submitted false tax documents with DOC.

142.    Defendant Caruso submitted this list to the Manhattan District Attorney's Office and the New York State Attorney General's (A.G.'s) Office.

143.    The Manhattan District Attorney's Office and the New York State Attorney Generals office told Defendant Caruso which DOC employees should be arrested.

144.    During the investigation, DOI officials nor DOC officials advised Plaintiff that he is under investigation just as the Oba Hassan Wat Bey Plaintiffs.

145.    Plaintiff was not arrested.

146.    Defendant Caruso learned that Defendant Kerik's lover, Jeanette Pinero and Kerik's "right hand man", John Picciano who are White submitted false tax documents to the DOC and did not lose their employment, as did the Oba Hassan Wat Bey Plaintiffs and Plaintiff who are non-white herein.

147.    On or about August of 2005, Plaintiff learned through Ntchwaidumela Bey of the Albert Kelly case "Kelly, et. al. v. City of New York, et. al., 04 Civ. 1572 (TPG), which provided that on or about July 12, 1996, Defendant Caruso received and read a memorandum from the New York City Police Department (NYPD) claiming, among other things, that an individual involved in a "car stop" was a member of a group known as "The Great Seal Association of Moorish Affairs" and that members of that

group had been previously arrested and were suspected of armed robberies and trafficking in high-powered automatic weapons. This fact was presented by Plaintiff in what was then a new civil action based new information and exculpatory evidence in case Shekhem El Bey, vs. City of New York, et. al. 05 Civ. 7072 (TPG).

148.    Ms. Thomas, Attorney for the Oba Hassan Wat Bey Plaintiffs has proven by preponderance of the evidence that Defendants failed to identify any of the Oba Hassan Wat Bey Plaintiffs in the NYPD memo as having engaged in the conduct addressed.

149.    Plaintiff herein was not accused of being suspected of "armed robberies" and "trafficking in high-powered automatic weapons".

150.    The NYPD memorandum did not identify the individual involved in the "car stop" as a DOC Corrections Officer.

151.    Plaintiff's only connection to the NYPD memorandum was the status as a member of the "Moorish Nation" and association with the Great Seal of Moorish American Affairs.

152.    During the "99 exemptions" investigation, Defendant Caruso and/or employees under his supervision, compiled a list of DOC employees who he/they identified as Moors and/or Moorish Americans.

153.    During the tax investigation, approximately 29 DOC employees were wiretapped.

154.    At all time relevant hereto, upon information and belief, one of those wiretapped was Plaintiff herein.

155.    During the tax investigation, informants were used in covert undercover surveillance operations to attend meetings of the Moorish faith to obtain information.

156.    The DOI's investigation lasted 18 months.

157.    After the conclusion of the 18 month investigation, Defendant Caruso made recommendation to the DOC for the initiation of disciplinary charges against certain DOC employees who filed false tax documents.

158.    Of those employees who were not arrested and criminally charged, on or about December 3, 1997 and on June14, 1999 Defendant Caruso recommended that 21 DOC employees and Plaintiff, respectively, identified as Moorish American or Moor, be summarily suspended. See attached, a true copy of Plaintiff's Notice of Summary Suspension from Duty, dated June 14, 1999, at **Exhibit R**.

159.    Plaintiff herein, as were the Plaintiff in the Oba Hassan Wat Bey Case, was merely informed that they were being summarily suspended because they supplied the DOC with tax forms which contained false information.

160.    Defendant Caruso targeted Moorish Americans, including Plaintiff, for adverse employment action and treatment because Moors were a "security concern" because (1) they were affiliated with the "Moorish National " group, (2) because of documents they submitted to the DOC announcing their religious philosophy and nationality as Moorish American, and (3) because of having filed Federal lawsuits against Defendant Giuliani, Kerik, Caruso, and others.

161.    On June 14, 1999, Plaintiff was summarily suspended without pay for submission of false tax documents that was submitted back in on or about December  of 1993. See attached, a true copy of Plaintiff's Notice of Summary Suspension from Duty, dated June 14, 1999, at **Exhibit R**.

162.    Before ordering Plaintiff's summary suspension, Defendant Caruso did not interview Plaintiff nor any other manner give Plaintiff notice that the NYPD memorandum was the basis for his adverse employment action and treatment nor were Plaintiff given an opportunity to be heard on this reason for the summary suspension.

163.    Following Plaintiff's return from an almost 2 year unpaid involuntary medical leave from DOC, and within 20 minutes of reporting to DOC at 2 Washington Street on June 14, 1999, Plaintiff, rather than being reinstated to full duty as was communicated by letter from DOC, was instead placed on summary suspension without pay for over 30 days and subsequently placed on modified duty in an asbestos contaminated facility at the Brooklyn Correctional facility (BCF), which gave rise to the civil case in Shekhem El Bey vs The City of New York, et. al. 99 Civ 12490 (JES)(MHD)(defaulted/dismissed). See

attached, a true copy of Letter of Reinstatement to full duty(SS# Redacted), dated June 11, 1999, signed by Alan Vengersky at **Exhibit G**.

164.    On or about early December 1997, Giuliani referred to Plaintiff's religious beliefs as a "scheme" and referred to the "Moorish National" group as a "cult", the facts of which was proven on the record of the Oba Hassan Wat Bey case.

165.    At all time relevant hereto, on or about 1997 Defendant Giuliani publicly announced, prior to the holding of administrative hearings, that all employees charged with failing to file state and city income tax returns and who had been suspended "would almost certainly lose their jobs after disciplinary proceedings against theme were completed". This speech did not mentioned Moors as it was a separate event.

166.    On or about December 8, 1997, Edward Kuriansky (herein after Kuriansky-non-party herein), Commissioner of the New York City Department of Investigation, publicly announced that Plaintiff's Moorish American religious philosophy "is extremely offensive and serious conduct" and further stated that "for a sworn law enforcement officer, who carries a gun, who have taken an oath to the United States and the state constitution, and for all other purposes claims the benefits of citizenship, who has the gall not to pay his fair share - I mean it's really outrageous".

167.    Kuriansky made these statements with full knowledge that DOC employees, law enforcement officers, who did not claim to be Moors, submitted false tax documents to the Department claiming either "99" exemptions or to be tax exempt and who also submitted documents to the Department claiming that they were not subject to the jurisdiction of the United States and/or the State of New York. This fact was proven by a preponderance of evidence in the Oba Hassan Wat Bey case.

168.    Upon information and belief, in early February 1998, the World Service Authority contacted Defendant Caruso and advised Caruso that use of the name "Bey" was an effort to assert the right to change nationality and to manifest religious observance, and that this right was being violated by DOC.

169.    On or about 1998, Defendant Caruso issued a Memorandum of Complaint to the DOC recommending that individuals who are Moorish American as referenced in the Oba Hassan Wat Bey

case be terminated because they submitted false tax instruments to the DOC and engaged in conduct unbecoming an officer or member of the Department.

170.    On or about 1999, Defendant Caruso issued a Memorandum of Complaint to the DOC recommending that Plaintiff who is Moorish American be terminated because he submitted false tax instruments to the DOC and engaged in conduct unbecoming an officer or member of the Department.

171.    On July 22, 1999, Plaintiff was placed on modified duty assignment under horrific and filthy working conditions in an asbestos contaminated facility in Brooklyn at the Brooklyn Correctional Facility, isolated from inmates and co-workers.

172.    While on modified duty assignment, Plaintiff was not permitted to possess, carry or purchase a personal firearm, be assigned to any duties requiring the possession, handling, maintenance or security of departmental firearms, chemical agents or funds, and Plaintiff had no responsibility and supervision of care, custody and control of incarcerated inmates, among other things, just like the Oba Hassan Wat Bey Plaintiffs.

173.    Before being placed on modified duty, Defendant Caruso, nor any other officials from the DOI informed Plaintiff that he had been targeted for modified duty because he was deemed to raise "security concerns" because of his association or affiliation with the Moorish National group.

174.    Before issuing the memorandum of complaint, Defendant Caruso did not interview Plaintiff nor in any other manner given notice that the NYPD memorandum was the basis for his adverse employment action and treatment nor were Plaintiff given an opportunity to be heard on this reason for his proposed termination.

175.    On or about August 25, 1998, while Plaintiff was on involuntary unpaid medical leave, the DOC Trials Division drafted and served Plaintiff via the United States Postal service Charges and Specifications charging Plaintiff with submitting false instruments concerning taxes to the Department and with violating his oath of office. See attached, a true copy of DOC tax charges (specifications), dated June 12, 1998, signed by Carl DiCarlo - Assistant Commissioner of Trials and Litigation and copy of envelope, at **Exhibit S**.

176.    Defendant Caruso did not summarily suspend DOC employees who did not claim to be Moors but who also submitted false tax documents to the Department, as was proven by a preponderance of evidence in the Oba Hassan Wat Bey case.

177.    On or about November 3, 1999, at the pre-trail hearing Plaintiff was offered the choice of resignation without the possibility of obtaining any other city government job or termination. Plaintiff accepted neither.

178.    At all time relevant hereto, Defendant Caruso requested Plaintiff's summary suspension following his return from an unpaid involuntary medical leave.

179.    On or about March 14, 2000, the ALJ Tompkins (herein after ALJ - non-party) issued a Report and Recommendation in connection with the charges and specifications.

180.    At no time did the ALJ mentioned in the Report and Recommendation Plaintiff's objections and pending federal cases against the City and Giuliani.

181.    The ALJ made a determination of federal tax law regarding the submission of an in lieu of W-4 form and factual finding that Plaintiff violated federal tax law 26 U.S.C. § 7205 and asserted Plaintiff committed a crime under New York State penal law, as was done against the Plaintiff in the Oba Hassan Wat Bey Case by another ALJ.

182.    On or about April 27, 2000, Defendant Kerik adopted the ALJ's report and recommendation, as was done against the Oba Hassan Wat Bey Plaintiffs.

183.    That day, Defendant Kerik imposed the sanction of discharge for submitting false tax documents to the DOC, as he had done against the Plaintiffs in the Oba Hassan Wat Bey case. The additional charges outside of the DOC tax charges was merely a "red herring". See attached, a true copy of Plaintiff's discharge from employment documents signed by Bernard Kerik, dated April 27, 2000, at **Exhibit T**.

184.    Defendant Kerik was not required to adopt the ALJ's recommendation for Plaintiff discharge and had considerable authority and discretion to impose a different sanction.

185.    For many years prior to Plaintiff's summary suspension, modified duty placement from a suspension and ultimate discharge, Defendants tolerated the practice of employees claiming excessive

exemptions or claiming tax exempt status without objection and without advising or providing fair warning to employees that their conduct could lead to disciplinary or criminal action.

186.    DOC employees who submitted false tax documents to the Department but who did not claim to be Moorish Americans were not subject to the same adverse employment action and treatment as the Moorish Americans, which was proven by preponderance of evidence in the Oba Hassan Wat Bey case.

187.    White DOC employees who submitted false tax documents to the Department were not subject to the same adverse employment actions and treatment as the Moorish Americans, which was proven by preponderance of evidence in the Oba Hassan Wat Bey case.

188.    Plaintiff's almost 2 year unpaid involuntary medical leave followed by an unpaid summary suspension in excess of 30 days, which began on June 14, 1999, placement on modified duty in an asbestos contaminated facility at the Brooklyn Correctional Facility until Plaintiff's discharged from DOC, was intentional, deliberate and malicious by Defendants to discharge Plaintiff from employment on April 27, 2000 because of being Moorish American and/or of the Moorish faith.

189.    On May 27, 1999, Oba Hassan Wat Bey (Robert Watson) and five other discharged Moorish American employees filed a civil action in the Southern District of New York, 99 Civ. 3873, protesting their discharge as unconstitutional.

190.    On or about May of 2000, Plaintiff filed a civil action in the Southern District of New York, 00 Civ 9260 (JES), protesting his discharge as unconstitutional.

191.    On February 4, 2000, the DOC legal Division contacted its investigation and trials unit to determine whether similar charges of misconduct, i.e. filing false tax documents, had been brought against DOC employees who did not claim to be Moors.

192.    On March 16, 2000, Josephine Pradegan, Caruso's immediate subordinate, gave the Legal Division a list of 10 DOC employees who did not claim to be Moors against whom similar charges of filing false tax documents had been filed.

193.    Virtually all employees on that list had been selected for arrest by state and federal authorities and were not in the same category with Plaintiff and other Moors similarly situated.

194.    Beginning on or about January 30, 2001, Defendant Caruso submitted a memorandum and complaint to the DOC for about 117 DOC employees who submitted the same or substantially similar documents to the DOC as those submitted by Moorish Americans.

195.    Defendant Caruso recommended that disciplinary action against most of these individuals be deferred.

196.    These employees, the DOC employees who submitted false tax documents to the DOC, but who did not claim to be Moors, were never discipline and this fact was proven by preponderance of evidence on the record of the Oba Hassan Wat Bey case.

197.    On or about August 17, 2005, Plaintiff filed a civil action, Shekhem El Bey, vs. City of New York, et. al. 05 Civ. 7270 (TPG), based on what was then new information learned for the first time that Defendant Caruso selected Plaintiff for summary suspension without pay, placement on modified duty and recommended discharge because Defendant Caruso determined that Plaintiff, as were the Oba Hassan Wat Bey Plaintiffs, because of being a Moor is a potential security concern due to Defendant Caruso's receipt of the NYPD memorandum and Plaintiff's affiliation with the "Moorish National" group.

198.    Defendants Caruso, and each of the other Defendants concealed the true nature of the charges against Plaintiff, as were the Plaintiffs in the Oba Hassan Wat Bey case.

199.    Between 1996 and April 27, 2000, Defendant Caruso did not order the summary suspension and modified duty assignment for any white DOC employees who submitted the same or substantially similar documents as those submitted by Plaintiff and the Moorish Americans CO's as the Oha Hassan Wat Bey Plaintiffs, including, but not limited to: John Sheridan, Carlo Pannizzo, John Russo, D. Ryan, D. Sabatano, James Salvio, George Sheehy, Nicholas Varounis, Jr., P. Venechanos, Joseph Vicenzo, Richard Weiss, which was proven by preponderance of evidence in the Oba Hassan Wat Bey case.

200.    During the tax investigation, Defendant Caruso kept various lists of identified Moors who were DOC employees.

201.    Plaintiff is one of those Moors listed and evidence was produced on the record of the Oha Hassan Wat Bey case.

202.    Defendant Caruso did not recommend summary suspension, modified duty or discharge for Defendant Kerik's lover, Jeannette Pinero or his "right hand man", John Picciano who are white despite his knowledge that they to submitted false tax documents to DOC, and this fact was proven by preponderance of evidence on the record of the Oba Hassan Wat Bey case.

203.    Defendants claim that they were justified in summarily suspending without pay, ordering modified duty and terminating Plaintiff's employment, and the employment of all other Moorish Americans DOC employees, only because Plaintiff and they are a security concern due to his and their affiliation with the Moorish National Group.

204.    Defendants did not identify and target for adverse employment actions and treatment members of other religious groups for engaging in the same or substantially similar conduct as Plaintiff herein and the Plaintiffs in the Oba Hassan Wat Bey case.

205.    Defendant Kerik and Caruso in furtherance of their scheme or conspiracy in corroborating their efforts, individually and collectively, and in support by their subordinates, by implementing a systemic policy or custom or practice aimed at targeting Moorish Americans for adverse employment actions and treatment because of Plaintiff's religious beliefs, speech on matters of public concern, and in retaliation for filing federal lawsuits and/or submission of Moorish American documents.

206.    Defendant Kerik and Caruso in furtherance of their scheme or conspiracy, by selectively enforcing DOC rules and regulations against employees identified as Moorish Americans or Moor because of race, religion or national origin, Plaintiff's association or affiliation with the "Moorish group" and/or the Great Seal of Moorish American Affairs is a direct and/or proximate result of Plaintiff's damages set forth herein.

207.    Defendant Caruso and Kerik violated Plaintiff's fundamental human rights and constitutional rights to freedom of speech, freedom of association and from discrimination, equal protection of the law and due process of law because of Plaintiff being a Moor or Moorish American or for Plaintiff's Moorish faith.

208.    Defendant Giuliani abused his office when it was communicated through Defendant Kerik at the closed door meeting between August and December 1998 that **"these people were going to be fired for**

**the actions that they had taken"**, referring to the Moors in connection to a press conference held by Defendant Giuliani regarding the Moors.

209.     Defendant Giuliani violated his Oath of office when by his own conduct working through Defendant Kerik and Caruso nullified the independence and integrity of OATH subjecting it to inappropriate influence, denying Plaintiff due process of law, as did the Plaintiffs in the Oha Hassan Wat Bey case.

210.     The conduct of OATH was at all time relevant, at the direction of the Mayor, as it was used as a "rubber stamp" to legitimize Defendant Kerik's adverse employment actions and treatment in summary suspension without pay, placement on modified duty in an asbestos contaminated facility, code blue status and discharge from employment of the Moorish American Correction Officers, as Plaintiff herein.

211.     By failing to remedy Defendant Caruso's, inhuman and unconstitutional wrongs against Plaintiff, by allowing and/or permitting Defendant Caruso's systemic policy or customs or practice aimed at targeting Moorish Americans for adverse employment actions and treatment to continue, by failing or refusing to order the DOC's Investigation and Trails Unit to conduct an unbiased independent investigation of the basis of the charges and specifications against Plaintiff and by being negligent in managing Defendant Caruso and DOC subordinates who caused and/or substantially contributed to the unconstitutional deprivations and human rights abuse visited upon Plaintiff, as were the Plaintiffs in the Oba Hassan Wat Bey case is the proximate and/or direct cause of Plaintiff damages set forth herein.

212.     At all time relevant hereto, pursuant to Article 62 of the Civil Service Law of the State of New York, Defendant Giuliani, Kerik, Caruso and Fraser sworn or affirmed an oath to uphold the Constitution of the United States and the Constitution of the State of New York.

213.     At all time relevant hereto, Defendant Giuliani, Kerik, Caruso and Fraser, new or should have reasonably known that their conduct in targeting Plaintiff, as were the Plaintiffs in the Oba Hassan Wat Bey case, for adverse employment actions and treatment because of being a Moor or Moorish American or associated as a Moor or Moorish American violates their Oath of office in their respective position of influence and authority.

214.    Defendant Kerik and Caruso violated Plaintiff's fundamental human rights and constitutional rights to freedom of speech, freedom of association and from discrimination, equal protection of the law and due process of law.

215.    On December 18, 2012, the reading of the Jury verdict was announced, which was unanimous, and that it was found by a preponderance of the evidence that the motivating factor for the adverse employment action against those Plaintiffs, to whom Plaintiff herein is similarly situated in all respects, is because of being Moorish American or Moor, among other things, to include Religion, freedom of Association, discrimination, denial of equal protection, and denial of due process, and 42 U.S.C. § 1983 claims, as set forth in the Jury verdict. See herein a copy of the Jury Verdict, dated December 18, 2012, at **Exhibit F**.

216.    At all time relevant hereto, the conduct of the OATH proceedings was compromised by Giuliani in which Plaintiff, and those similarly situated was denied due process of law.

217.    At all times relevant, Defendant Giuliani acted under color state law in using his power and position to influence the conduct of OATH in carrying out his intentions to discharge Moors from employment, as Plaintiff herein and the Plaintiffs in the Oba Hassan Wat Bey case.

218.    At all time relevant hereto, OATH's impartiality was and/or is compromised by the City's pecuniary interest in which it becomes enriched in the imposition of economic penalties, i.e. termination or discharge from city employment and lost of pension following the recommendation of the ALJ for city officials as was Defendant Kerik when he discharged Plaintiff employment with DOC, as he did with the Plaintiff's in the Oba Hassan Wat Bey case.

219.    At all time relevant hereto, OATH, an agency or department of the City of New York, was merely used as a "rubber stamp" by Defendant Giuliani through Kerik to discharge or terminate Plaintiff's employment, as was the Plaintiffs in the Oba Hassan Wat Bey case because of being a Moor or Moorish American.

220.    At all times relevant hereto, the OATH proceedings deprived Plaintiff as did the Plaintiff's in the Oba Hasan Wat Bey case of due process of law because OATH was subjected to the undue influence of Defendant Giuliani in which it was indicated by Defendant Kerik at a closed door meeting in 1998 that "

these people were going to be fired for the actions that they had taken" and "...They were referred to as the Moors".

221.    By promulgating, executing and/or implementing in a scheme or conspiracy and retaliation, a policy or custom, practice, statement, ordinance, or regulation or by adopting and/or ratifying a decision promulgated DOI policy-making officials to target all DOC employees of the Moorish American faith for adverse employment actions and treatment leading up to termination of employment although DOC employees who did not claim to be Moors engaged in the same or substantially similar misconduct did not suffer the same adverse employment actions and treatment as the Moorish American Correction Officers.

222.    By promulgating, executing and/or implementing in a scheme or conspiracy and/or in retaliation and/or a policy or custom, practice, in violation of Plaintiffs and similarly situated DOC employees fundamental human rights and constitutional rights to freedom of speech, freedom of association and from discrimination, equal protection of the law and due process of law, DOI officials regularly attended and participated in "leadership" meetings with then-Mayor Giuliani to keep the Mayor informed of all investigations and where Giuliani approved of the investigation leading to Plaintiffs ultimate discharge and those Plaintiffs in the Oba Hassan Wat Bey case.

223.    Defendant Giuliani made announcements in the media approving of the investigation and the discharge of Moorish Americans, although DOC employees who did not claim to be Moors engaged in the same or substantially similar misconduct and were not discharged from employment because of being White, Defendant City violated Plaintiff's fundamental human rights and Constitutional Rights.

224.    As a legal and proximate and/or direct result of Defendant Giuliani, Kerik's, Caruso, and other co-conspirators not yet or should be named herein, violated Plaintiff's rights under the U.S. and New York State Constitution just as they did against the Oba Hassan Wat Bey Plaintiffs.

225.    Plaintiff have suffered and continues to suffer substantial losses, including the loss of past and future earnings, promotional opportunities, bonuses, deferred compensation, overtime, night differential and other fringe benefits;

226.    Plaintiff has suffered and continue to suffer impairment and damage to his good name and reputation; Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, emotional distress, loss of enjoyment and quality of life, loss of reputation, the stigma of being a "black separatist" terrorist because of being a Moor or Moorish American and other incidental and consequential damages and expenses.

227.    The conduct of Defendants shocks the conscience, were outrageous, inhumane, vicious and malicious, was intended and for the purpose to, and in fact, injured and/or damaged Plaintiff and was flagrantly done with reckless and depraved indifference to Plaintiff's fundamental human, constitutional and civil rights, entitling Plaintiff to an award of equitable, ancillary and declaratory relief against the individual Defendants.

## COUNT I
### (42 U.S.C. § 1983 - Due Process)

228.    Plaintiff repeat and reallege paragraph 1 through 227 above with the same force and effect as if set forth herein.

229.    As a proximate and/or direct result, by engaging in a, policy, custom and practice under color of state law targeting Moorish Americans for adverse employment actions and treatment in summary suspension without pay, placement on modified duty under horrific working conditions in an asbestos contaminated facility, code blue status and termination or discharge from employment with no means of ever obtaining city employment, Defendant Giuliani, Kerik, Caruso and Fraser, and each of them and collectively and through their subordinates violated Plaintiff's rights to due process of law pursuant to the due process clause of the 14th Amendment to the U.S. Constitution. Plaintiff suffered damages to which Plaintiff is entitled to equitable and ancillary relief as a matter of law and in the interest of justice.

## COUNT II
### (42 U.S.C. § 1983 - Equal Protection- Selective Enforcement & Prosecution)

230.    Plaintiff repeat and reallege paragraph 1 through 229 above with the same force and effect as if set forth herein.

231.    By Selectively subjecting Plaintiff as were other Moorish Americans in DOC and those by association, for adverse employment actions compared with other similarly situated, where the selective

treatment was based on race and/or religion, the intent to inhibit the exercise of constitutional rights and a malicious or bad faith intent to injure Plaintiff, as those Plaintiff in the Oba Hassan Wat Bey case, Defendants engaged in a policy, custom and/or practice to violate Plaintiff's rights to equal protection of the law.

232.    As a proximate and/o direct result, Plaintiff suffered damages to which Plaintiff is entitled to equitable and ancillary relief as a matter of law and in the interest of justice. Plaintiff suffered damages to which Plaintiff is entitled to equitable and ancillary relief as a matter of law and in the interest of justice.

## COUNT III
### (42 USC § 1983 - Freedom of Association)

233.    Plaintiff repeat and reallege paragraph 1 through 232 above with the same force and effect as if set forth herein.

234.    By summarily suspending Plaintiff without pay following an involuntary unpaid medical leave of absence, ordering Plaintiff's modified duty placement in an asbestos contaminated facility under horrific working conditions, code blue status and recommending Plaintiff for termination, and in fact discharging Plaintiff, and treating Plaintiff as a "security concern" for no reason other than the fact that Plaintiff is affiliated with the "Moorish National group" identified in an NYPD memorandum and because Plaintiff submitted documents to the DOC announcing his nationality and religious philosophy, the Defendants engaged in a policy, custom and/or practice to violated Plaintiff's First Amendment right to freedom of association as purview through the 14th Amendment to the United States Constitution.

235.    As a proximate and/or direct result, Plaintiff suffered damages to which Plaintiff is entitled to equitable and ancillary relief as a matter of law and in the interest of justice.

## COUNT IV
### (42 USC § 1983 - Freedom of Speech)

236.    Plaintiff repeat and reallege paragraph 1 through 235 above with the same force and effect as if set forth herein.

237.    By Defendants basing their decision to summarily suspend without pay, place on modified duty in a asbestos contaminated facility under horrific working conditions and terminate Plaintiff on the content of his speech, filing federal lawsuits, documents submitted to the DOC on a matter of public

concern, professing adoption of the Moorish American faith and Plaintiff's rights and immunity(ies) as a member of that religious faith, pursuant to the DOC's policy prohibiting discrimination on the basis of religion, Defendant engaged in a policy, custom and/or practice to violated Plaintiff right to freedom of speech.

238.    As a proximate and/or direct result, Plaintiff suffered damages to which Plaintiff is entitled to equitable and ancillary relief as a matter of law and in the interest of justice.

**COUNT V**
**(42 U.S.C. § 1981 - Discrimination)**

239.    Plaintiff repeat and reallege paragraph 1 through 238 above with the same force and effect as if set forth herein.

240.    Plaintiff is a Moor or Moorish American who adopted the Moorish American faith.

241.    By engaging in a pattern, policy, custom and practice of targeting Moorish Americans for adverse treatment due solely to Plaintiff association with Moorish American faith and religion, Defendants violated Plaintiff's rights to be free from race and religious discrimination to which Plaintiff is entitled to equitable and ancillary relief as a matter of law.

242.    DOC employees who did not claim to be Moorish American, some of whom were white, but who also submitted the same or substantially similar documents to the Department were not similarly suspended without pay, placed on modified duty in an asbestos contaminated facility, recommended for, and in fact discharged as was Plaintiff herein, as also were the Plaintiff in the Oba Hassan Wat Bey case.

243.    Plaintiff's race and religion was at least a motivating factor in his discharge.

244.    As a proximate and/or direct result, Defendants conduct and actions has caused Plaintiff to suffer damages to which Plaintiff is entitled to the same or similar relief as set forth in the Oba Hassan Wat Bey case, but not limited thereto, as a matter of law and in the interest of justice.

**COUNT VI**
**(42 U.S.C. § 1985 (3) - Conspiracy)**

245.    Plaintiff repeat and reallege paragraph 1 through 244 above with the same force and effect as if set forth herein.

Page 33 of 41

246.    By engaging in a policy, custom and/or practice of targeting Moorish Americans for adverse employment actions and treatment,  Defendant Kerik, Caruso, Fraser, with the "meeting of the minds" conspired covertly behind closed doors and selectively targeted Moorish Americans to which Plaintiff has been identified for adverse employment actions, including but not limited to, summary suspension without pay, modified duty in an asbestos contaminated facility, code blue status and subsequent discharge from employment, for the intent and purpose of denying Plaintiff the equal protection under the law, and utilizing OATH as a "rubber stamp" as part of their scheme or conspiracy and as a mechanism and tool with which to facilitate Plaintiff's discharge from City employment, as OATH was subjected to the inappropriate influences of Defendant Giuliani.

247.    As a proximate and/or direct result of Defendants actions stated herein, Plaintiff is injured and/or damaged in his property interest and denied the right to the equal protection under the law, to which Plaintiff is entitled to equitable and ancillary relief as a matter of law and in the interest of justice.

## COUNT VII
### (42 U.S.C. § 1986 - Neglect to Prevent Conspiracy)

248.    Plaintiff repeat and reallege paragraph 1 through 247 above with the same force and effect as if set forth herein.

249.    Defendants, individually and collectively, knew or should have reasonably known of their wrongs conspired to be done to Plaintiff and those similarly situated because of being a Moor or Moorish American or of the Moorish American faith, and having power to prevent or aid in preventing the commission of  same, neglected or refused so to do when Defendants and each of them by reasonable diligence could have prevented.

250.    As a proximate and/or direct result, Plaintiff suffered damages to which Plaintiff is entitled to equitable and anciliary relief as a matter of law and in the interest of justice.

## COUNT VIII
### (NYS - Selective Prosecution)

251.    Plaintiff repeat and reallege paragraph 1 through 250 above with the same force and effect as if set forth herein.

252.    By Selectively subjecting  Plaintiff, Moorish Americans, and other Moorish Americans, for adverse employment actions compared with other similarly situated, where the selective treatment was based on race and/or religion, the intent to inhibit the exercise of constitutional rights and a malicious or bad faith intent to injure Plaintiff, as those Plaintiff in the Oba Hassan Wat Bey case, Defendants engaged in a policy, custom and/or practice to violate Plaintiff's rights under New York State law for Selective Prosecution.

253.    As a proximate and/or direct result, Plaintiff suffered damages of selective prosecution and continue to suffer damages to which Plaintiff is entitled to equitable and ancillary relief as a matter of law and in the interest of justice.

**COUNT IX**
**(NYS-Malicious Prosecution)**

254.    Plaintiff repeat and reallege paragraph 1 through 253 above with the same force and effect as if set forth herein.

255.    By engaging in a pattern, policy, custom and practice of targeting Moorish Americans for adverse employment actions and treatment, retaliation and having been found by preponderance of the evidence in the Oba Hassan Wat Bey case in violation of "equal protection", "discrimination", denial of due process" demonstrated Malicious Prosecution under New York State law.

256.    As a proximate and/or direct result, Plaintiff suffered damages from malicious prosecution and continue to suffer damages to which Plaintiff is entitled to equitable and ancillary relief as a matter of law and in the interest o justice.

**COUNT X**
**(NYS-Intentional Infliction of Emotional Distress)**

257.    Plaintiff repeat and reallege paragraph 1 through 256 above with the same force and effect as if set forth herein.

258.    By engaging in a policy, custom and practice of targeting Moorish Americans for adverse employment actions and treatment, Defendant Giuliani and Kerik knew or should have known that their conduct, as expressed through Defendant Kerik, Caruso and his subordinates Rubin (non-party) vis-a-vis

the conduct of OATH through Rubin, with reckless and depraved indifference caused Plaintiff harm that was planned behind a closed door meeting held by Defendant Kerik.

259.    As a proximate and/or direct result, Plaintiff suffered damages of intentional infliction of emotional distress and continue to suffer damages to which Plaintiff is entitled to equitable and ancillary relief as a matter of law and in the interest of justice.

## COUNT XI
### (NYS-Negligent Infliction of Emotional Distress)

260.    Plaintiff repeat and reallege paragraph 1 through 259 above with the same force and effect as if set forth herein.

261.    By engaging in a pattern, policy, custom and practice of targeting Moorish Americans for adverse treatment Defendant Giuliani knew or should have known that his conduct, as expressed through Defendant Kerik and his subordinates, to include the subordinates of Defendant Giuliani, vis-a-vis the conduct of OATH through Rubin, with reckless and depraved indifference intentionally cause the harm that was expressed in the closed door DOC meeting held by Defendant Kerik.

262.    As a proximate and/or direct result, Plaintiff suffered damages of negligent infliction of emotional distress and continue to suffer damages to which Plaintiff is entitled to equitable and ancillary relief as a matter of law and in the interest of justice.

## COUNT XII
### (NYS Constitution - Due Process)

263.    Plaintiff repeat and reallege paragraph 1 through 262 above with the same force and effect as if set forth herein.

264.    By engaging in a pattern, policy, custom and practice of targeting Moorish Americans for adverse employment actions and treatment in which Plaintiff was subjected to summary suspension without pay, placed on modified duty in an asbestos contaminated facility, placed on code blue status and then discharge from employment, suffering the lost of a property interest in his employment, violates the "due process" clause the New York State Constitution, Bill of Rights, Article 1, Section 6, 2nd paragraph.

265.    As a proximate and/or direct result, Plaintiff suffered damages and continue to suffer damages to which Plaintiff is entitled to equitable and ancillary relief as a matter of law and in the interest of justice.

## COUNT XIII
### (NYS Constitution - Equal Protection)

266.    Plaintiff repeat and reallege paragraph 1 through 265 above with the same force and effect as if set forth herein.

267.    By engaging in a pattern, policy, custom and practice of targeting Moorish Americans for adverse employment actions and treatment, Defendants, and each of them and in corroboration with their subordinates violated Plaintiff rights to "equal protection" as a New York State Citizen under Article 1, Section 11 of the New York State Constitution.

268.    As a proximate and/or direct result, Plaintiff suffered damages and continue to suffer damages to which Plaintiff is entitled to equitable and ancillary relief as a matter of law and in the interest of justice.

## COUNT XIV
### (Employment Discrimination - New York State Human Rights Law)

269.    Plaintiff repeat and reallege paragraph 1 through 268 above with the same force and effect as if set forth herein.

270    Plaintiff is a Moor or Moorish American.

271.    By engaging in a pattern and practice of targeting Moorish Americans for adverse treatment due solely to Plaintiff's association with the Moorish American faith, Defendants violated Plaintiff's right to be free from race and religious discrimination under New York State Human Rights law.

272.    DOC employees who did not claim to be Moorish American, some of whom were white, but who also submitted the same or substantially similar documents to the Department were not similarly suspended without pay, placed on modified duty in an asbestos contaminated facility, placed on a code blue status, and recommended for, and in fact discharged from employment without being able to ever obtain a city job.

273.    Plaintiff's race and religion was at least a motivating factor in his discharge.

274.    Defendants conduct has caused Plaintiff to suffer damages as more fully stated above.

275.     As a proximate and/or direct result, Plaintiff suffered damages and continue to suffer damages to which Plaintiff is entitled to equitable and ancillary relief as a matter of law and in the interest of justice.

**COUNT XV**
**(Employment Discrimination - New York City Human Rights Law)**

276.     Plaintiff repeat and reallege paragraph 1 through 275 above with the same force and effect as if set forth herein.

277.     Plaintiff is a Moor or Moorish American

278.     By engaging in a pattern and practice of targeting Moorish Americans for adverse employment actions and treatment, and in conspiracy thereof, due solely to Plaintiff's association with the Moorish American faith, Defendants violated Plaintiff's right to be free from race and religious discrimination under New York City Human Rights law.

279.     DOC employees who did not claim to be Moorish American, some of whom were white, but who also submitted the same or substantially similar documents to the Department were not similarly suspended, placed on modified duty, recommended for, and in fact discharged.

280.     Plaintiff's race and religion were at least a motivating factor in his discharge

281.     Defendants conduct has caused Plaintiff to suffer damages as more fully stated above.

282.     As a proximate and/or direct result, Plaintiff suffered damages and continue to suffer damages to which Plaintiff is entitled to equitable and ancillary relief as a matter of law and in the interest of justice.

**JURY DEMAND**

283.     Plaintiff demands a trail by jury on all issues of facts to be decided by the Jury.

**DEMAND FOR RELIEF**

**WHEREFORE,** Plaintiff Demands that this Court grant judgment containing the following relief:

a.     For equitable and ancillary relief for damages pursuant to 42 U.S.C. § 1983 with respect to the Defendants' violation of the equal protection, due process, freedom of association, custom or policy, proven by preponderance of evidence in the Oba Hassan Wat Bey case, an award of Thirteen Million Dollars ($13,000,000.00) and/or not less than the total combine final award in the Oba Hassan Wat Bey

case, encompassing but not limited to: punitive and compensatory damages: loss of wages, overtime, benefits and promotional opportunities, loss of opportunity to obtain any city government job, and for being stigmatized as a "black separatist" terrorist as a Moor, and for mental anguish, loss of enjoyment and quality of life, negligent and intentional infliction of emotional distress, anxiety, loss of sleep, depression, loss of reputation, pain and suffering, humiliation, embarrassment and emotional injury;

b.      For equitable and ancillary relief for damages pursuant to 42 U.S.C. § 1983 that OATH proceedings deprived Plaintiff, as were the Oba Hassan Wat Bey Plaintiffs, and those similarly situated, of due process of law because 1). OATH was subjected to the inappropriate influence by Defendant Giuliani who was empowered to direct OATH through the Chief ALJ, and 2). OATH impartiality is compromised by the City's financial and/or pecuniary interest in which it becomes enriched from the imposition of economic penalties, i.e. termination from employment and loss of pension, that are recommended or "rubber stamped" by OATH. Hence, a conflict of interest.

d.      As for Declaratory relief pursuant to 28 U.S.C. § 2201 and/or 2202, to declare that Plaintiff is similarly situated with the Plaintiffs in the Oba Hassan Wat Bey case, as to the adverse employment action, vis-a-vis, summary suspension without pay, placement on modified duty, placement on code blue status and termination from employment, and is at the very least entitled to the same relief, but not limited thereto.

e.      As for Declaratory relief pursuant to 28 U.S.C. § 2201 and/or 2202, to Declare this actions as a Class Action by extension to protect Moors or Moorish Americans who are similarly situated or victims regarding this matter, and for Moorish Americans seeking present or future employment with the City of New York in general, as would be enjoyed by other protected classes.

f.      Pursuant to 28 U.S.C. § 2201 and/or 2202 to declare the actions of Defendants, and each of them, violated Plaintiff's fundamental human rights with respect to Article 15 ("Everyone has a right to a Nationality" and "No one shall be arbitrarily deprived of his nationality nor denied the right to change his nationality") of the Universal Declaration of Human Rights.

g.    Reinstatement with all and/or full benefits to employment with the New York City Department of Correction as a Correction Officer with full restoration of seniority, expunging of adverse comments in Plaintiff's personnel file and then retired as Correction Captain with full pension and benefits thereafter, including "Good Guy Letter",.

h.    Leave to amend the complaint pursuant to Rule 15 (a) and (b) of the FRCP in the event further and new information or evidence requires new parties to be joined in as indispensable parties, and as to such other corrections and/or updates needed to perfect the pleadings.

i.    An award of all Court Cost, fees and incurred expenses of this action.

j.    Such other and further relief as the Court may deem reasonable and just under the circumstances.

I, Yashua Amen Shekhem El Bey, the Plaintiff herein declare and affirm under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my first hand knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

DATED:    May 12, 2014
          New York, New York


Signature: _Yosh Amen Sh El Bey_

Name:  _Yashua Amen Shekhem El Bey_
       244 Fifth Avenue, Suite 200
       New York, New York 10001
       Ph: 347-238-0639


5/12, 2014


Hong Tae Joon
Notary Public, State of New York
Qualified in New York County
Reg No 01HO6103878
My Commission Expires _1/21, 2016_

## VERIFICATION

STATE OF NEW YORK    )
                     ) as:
COUNTY OF NEW YORK)

BEFORE ME personally appeared: _Yashua Amen Shekhem EL Bey_

who, being by me first duly affirmed and identified in accordance with New York State Law, deposes and says:

My name is Yashua Amen Shekhem El Bey, the Plaintiff herein.

I have read and understand the attached foregoing third amended verified civil complaint with supporting exhibits annexed thereto, Exhibit A through T, and each fact alleged in the third amended verified civil complaint therein is true and correct of my own personal first hand knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters I believes it to be true.

FURTHER THE AFFIANT SAYETH NAUGHT.

_____
Yashua Amen Shekhem El Bey, Plaintiff - Affiant - Pro Se

Affirmed To and subscribed before me this _12_ day of _____May_____ 2014.

_____
Notary Public

Hong Tae Joon
Notary Public, State of New York
Qualified in New York County
Reg No 01HO6103878
My Commission Expires 1/12/2016

My Commission Expires: _1/12, 2016_