













# EXHIBIT A

NOTICE OF CLAIM
To The
OFFICE OF THE COMPTROLLER CITY OF NEW YORK
(Pursuant to N.Y. GMU Law § 50-i & 50-e)


CLAIMANT INFORMATION

CLAIMANT'S NAME: <u>Yashua Amen Shekhem El Bey</u>   TEL. #: <u>(347)238-0639</u>

STREET   ADDRESS: <u>244 Fifth Avenue, Suite 200</u>


CITY: <u>New York</u>        STATE: <u>New York</u>        ZIP: <u>10001</u>


SOC. SEC. # or TAX I.D. # xxx-xx-1078

CLAIM INFORMATION

CITY AGENCY INVOLVED: New York City Department of Correction, DOI & OATH

NATURE OF CLAIM:(<u>ATTACH ADDITIONAL SHEET(S) OF PAPER, IF NECESSARY</u>)

This Claim is being brought based on newly discovered information and its supporting exculpatory evidence giving rise to fraud committed and/or perpetuated upon the claimant herein by the City of New York through its agents, members and/or employees in not providing full disclosure of facts through its former policy maker Michael Caruso and others in closed door meetings with respect to targeting Moorish American Corrections Officers for termination of employment, the details of which is established and jury verdict decided in favor of the Moorish American former Correction Officers as Plaintiffs in the Civil Case "Oba Hasan Wat Bey, et. al. v. The City of New York, et. al 99 Civ. 3873 (AJN)(RLE) & 01 Civ. 9406 (AJN)(RLE)".

The Claimant herein discovered said new information and supporting exculpatory duly exhibited evidence on the record of said federal civil case following the course of the jury trial which started December 4 of 2012 and ended in a unanimous jury verdict in favor of the Moorish American former Correction Officers on December 18, 2012. That Claimant herein was not privy to such information or evidence prior to said jury trial nor was such information or evidence made available to claimant during claimant's civil actions that commenced as far back as 1998.

The Claimant herein, a Moor and former New York City Correction Officer, shield #6103, is similarly situated as those Moorish American former Correction Officers who as the record and evidence showed were singled out, as the claimant herein, and other Moorish Americans for

termination of employment because of Nationality, Race, religious belief and association as a Moor by the City of New York et. al.

The underlining factual circumstances of the aforesaid federal civil case of Oba Hasan Wat Bey, et. al. v. The City of New York, et. al 99 Civ. 3873 (AJN)(RLE) & 01 Civ. 9406 (AJN)(RLE) is the same as the claimant herein and with respect to the claimants prior civil actions against the City of New York, et. al. in Shekhem El Bey v. City of New York, et. al. 98 Civ. 1353 (LAK)(HBP)(stipulation of dismissal); 00 Civ. 9260 (JES) (dismissed) & 04 Civ. 7072 (TBG)(withdrawn without prejudice to be re-filed at a later date) & the timely re-filed version that never received a civil docket number and was placed as a 60(b) motion by Judge Sprizzo without claimant's knowledge or consent as docket #44 under 00 Civ. 9260 (JES) that Judge Sprizzo had already dismissed); In which case none of the new information and supporting exculpatory evidence was known at that time when these cases were active and can now be corrected and properly revived under the applicable Federal Rules of Civil Procedure based on fraud as well as a new action arising from said new information and exculpatory evidence in case, Oba Hasan Wat Bey, et. al. v. The City of New York, et. al 99 Civ. 3873 (AJN)(RLE) & 01 Civ. 9406 (AJN)(RLE).

As a direct and proximate result, the policy decision to terminate Claimant because of being a Moor and for Moorish religious belief and association, Claimant suffered money damages, lost of reputation, lost of pension, denied due process, and as to all other damages mentioned in the aforesaid Federal Civil Case, Oba Hasan Wat Bey, et. al. v. The City of New York, et. al 99 Civ. 3873 (AJN)(RLE) & 01 Civ. 9406 (AJN)(RLE)in which a favorable Jury verdict was handed down in favor of the Moorish American former Correction Officers on December 18, 2012.

Claimant herein is entitled, but not limited to, the same award as set forth in Oba Hasan Wat Bey, et. al. v. The City of New York, et. al 99 Civ. 3873 (AJN)(RLE) & 01 Civ. 9406 (AJN)(RLE), to wit: Actual damages to be computed, Reinstatement and Front Pay, Back Pay, Retirement shield and Good Guy Letter, Pension benefits, Retroactive Seniority, Pre-and-Post Judgment Interest, Expunging and/or Purging of Personal files, Equitable and Injunctive relief.

TOTAL AMOUNT CLAIMED: $13,000,000.00

IF MORE THAN ONE ITEM IS INCLUDED IN THE TOTAL AMOUNT CLAIMED, SUPPLY BREAKDOWN OF AMOUNTS AND SPECIFY ITEMS: (ATTACH ADDITIONAL SHEET(S), IF NEEDED)

| ITEM | AMOUNT |
|------|--------|
| 1. Selective Prosecution | $1,000,000.00 |
| 2. Malicious Prosecution | $1,000,000.00 |

3. Intentional Infliction of emotional distress       $1,000,000.00

4. Negligent Infliction of emotional distress        $1,000,000.00

5. Discrimination based on Nationality            $1,000.000.00

6. Discrimination based on Race                $1,000.000.00

7. Discrimination based on Religious belief         $1,000,000.00

8. Discrimination based on Freedom of Association    $2,000,000.00

9. Denial of Due Process of Law  (State/Fed.)       $2,000,000.00

10. Denial of Equal Protection of Law(State/Fed.)     $2,000,000.00


PLEASE   ATTACH   COPIES   OF   SUPPORTING   DOCUMENTATION,   PREVIOUS
CORRESPONDENCE, INVOICES, ETC.

CLAIMANT'S SIGNATURE: _____

SS: STATE OF N.Y.

CITY OF N.Y. SUBSCRIBED AND AFFIRM TO BEFORE ME THIS _28th_

DAY OF _February_ , 20 _13_

NOTARY

JOHN L. YANT
Notary Public State of New York
No. 01YA6160009
Qualified in Bronx County
Term Expires 1/29/2015

TO:    **OFFICE OF THE COMPTROLLER**
       **DIVISION OF LAW - RM.1225 South**
       **1 CENTRE STREET**
       **NEW YORK, N.Y. 10007**
       **TELEPHONE # (212) 669-4736**
       **C.R.R. # 7012 2210 0002 2251 7044**















# EXHIBIT B



**THE CITY OF NEW YORK**
**OFFICE OF THE COMPTROLLER**
**CLAIMS AND ADJUDICATIONS**
**1 CENTRE STREET  ROOM 1200**
**NEW YORK, N.Y.  10007-2341**

WWW.COMPTROLLER.NYC.GOV

Michael Aaronson
Chief, Bureau of Law and
Adjustment

015 - 151

**John C. Liu**
**COMPTROLLER**

Date:        03/11/2013
Claim No:  2013PI006910
RE:          Acknowledgment of Claim

YASHUA AMEN SHEKHEM EL BEY
244 5 AV
NEW YORK, NY 10001

Dear Claimant:

We acknowledge receipt of your claim, which has been assigned the claim number shown above. Please refer to this claim number in any correspondence or inquiry you may have with our office.

We will do our best to investigate and, if possible, settle your claim. However, if we are unable to resolve your claim, **any lawsuit against the City must be started within one year and ninety days from the date of the occurrence.**

If you have any questions regarding your claim, you may contact us at either 212-669-8750 for property damage claims or 212-669-4445 for claims involving personal injury.

Sincerely,
Michael Aaronson



FIRST CLASS

UNITED STATES POSTAGE
PITNEY BOWES
$ 00.460
02 1M
000 4226141
MAR 13 2013
MAILED FROM ZIPCODE 10007

OFFICE OF THE COMPTROLLER
THE CITY OF NEW YORK
1 CENTRE ST., NEW YORK, N.Y. 10007-2341

3-58















# EXHIBIT C

CCALBEY1                    Trial

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   OBA HASSAN WAT BEY, et al.,

4               Plaintiffs,

5          v.                              99 CV 3873 (AJN)
                                           01 CV 9406 (AJN)
6   THE CITY OF NEW YORK, et al.,

7               Defendants.

8   ------------------------------x
                                           New York, N.Y.
9                                          December 10, 2012
                                           9:18 a.m.
10
    Before:
11
                        HON. ALISON J. NATHAN,
12
                                           District Judge
13
                        APPEARANCES
14
    THOMAS & ASSOCIATES
15       Attorneys for Plaintiffs
    BY:  IRENE DONNA THOMAS
16       -and-
         DAVID SCHLACHTER
17
    NEW YORK CITY LAW DEPARTMENT
18  OFFICE OF THE CORPORATION COUNSEL
         Attorneys for Defendants
19  BY:  MAXWELL D. LEIGHTON
         RICARDO TAPIA
20       JAMES M. LEMONEDES

21

22

23

24

25

CCALBEY3                    Blake - recross

1   exemptions they claim.  Respondents' beliefs, as sincere as

2   they may be, do not present colorable legal claims."

3            MR. TAPIA:  Thank you.  I have no further questions.

4            THE COURT:  All right.  Ms. Blake, you may step down.

5   Thank you.

6            (Witness excused)

7            THE COURT:  Who's the next witness, please?

8            MS. THOMAS:  Terrence Skinner.

9            THE COURT:  Please bring in Mr. Skinner.

10           Is someone getting Mr. Skinner?

11           MS. THOMAS:  Yes.

12           THE COURT:  Good afternoon, Mr. Skinner.  Come on up,

13  please.

14   TERRENCE SKINNER,

15       called as a witness by the Plaintiffs,

16       having been duly sworn, testified as follows:

17  DIRECT EXAMINATION

18  BY MS. THOMAS:

19  Q.  Good morning, Mr. Skinner.

20           Are you currently employed?

21  A.  No, I'm not.

22  Q.  Between 1997 and 1998, where were you employed?

23  A.  The New York City Department of Correction.

24  Q.  And how long had you -- were you employed by the New York

25  City Department of Correction?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

CCALBEY3                    Skinner - direct

1   A.  At that time, 14 years.

2   Q.  And what was your job title at that time during that

3   period?

4   A.  I was a deputy warden, the executive officer to the chief

5   of security.

6   Q.  And who was your immediate superior?

7   A.  Chief William Fraser.

8   Q.  And what was his job title, he was chief of the department?

9   A.  He was chief of security.

10  Q.  Now, who was Commissioner of the New York City Department

11  of Corrections at that time?

12  A.  Bernard Kerik.

13  Q.  And the mayor?

14  A.  Rudolph Giuliani.

15  Q.  Now, what were your job duties as executive officer to the

16  chief of security?

17  A.  Responsibilities included managing overall security

18  throughout the entire department.

19  Q.  And did you have any responsibilities in connection with

20  the gang intelligence unit?

21  A.  Yes.  The chief of security's office oversaw the gang

22  intelligence unit.

23  Q.  And did you have particular responsibilities in connection

24  with that unit?

25  A.  I had previously been the commanding officer of the gang

CCALBEY3                        Skinner - direct

1    intelligence unit.

2    Q.  Who was responsible for establishing the unit?

3    A.  It was Chief Taylor.  Initially, the unit was the gang task

4    force.  I was asked to conduct an analysis of how it operated

5    and what it did.  I did that, and then I was placed in charge

6    of the new gang intelligence unit.

7    Q.  Now, was the gang intelligent unit ever used for a purpose

8    other than its original intent?

9    A.  One time, at some point in 1998 between August and December

10   of 1998.

11   Q.  And what happened at that time?

12   A.  We were instructed by the Inspector General, Mike Caruso,

13   to have the gang intelligence unit conduct video surveillance

14   of a protest at 60 Hudson Street.

15   Q.  And was there a meeting held to plan the surveillance?

16   A.  Initially there was a meeting between myself, Chief Fraser,

17   Commissioner Kerik, and his chief of staff, John Piciano.  And

18   at that meeting we were instructed that Mike Caruso would

19   contact us and that we should do what he needed us to do

20   regarding our surveillance of the demonstration that was going

21   to take place.

22   Q.  And what was the concern that was raised at that meeting

23   concerning the surveillance activity?

24   A.  The commissioner indicated that the mayor had held a press

25   conference and indicated that these people were going to be

CCALBEY3                      Skinner - direct

1    fired for the actions that they had taken and that this was an

2    important issue, so we should do what was necessary to assist

3    the Inspector General's Office in trying to gather information

4    against this group.

5    Q.  And what group were you referring to, sir?

6    A.  They were referred to as the Moors.

7    Q.  Now, did you actually conduct surveillance at the 60 Hudson

8    Street location?

9    A.  The gang intelligence unit did do video surveillance of the

10   demonstration, yes.

11   Q.  Were you present during that surveillance?

12   A.  I wasn't with them, but I was present at 60 Hudson Street,

13   out on the street, observing the protest.

14   Q.  At any time did the gang intelligence unit remove

15   individuals from the 60 Hudson Street location?

16   A.  No.  It was the security for the actual demonstration was

17   done by the NYPD.  The gang intelligence unit was in an

18   undercover vehicle and they did the surveillance.  And it was

19   peaceful, there were no issues, and basically that was the end

20   of the surveillance.

21          MS. THOMAS:  Thank you very much.  No further

22   questions save any redirect.

23          THE COURT:  Anything, Mr. Schlachter?

24          MR. SCHLACHTER:  No questions, your Honor.

25          THE COURT:  Who will be examining?

CCALBEY3                          Skinner - direct

1          MR. TAPIA:  Yes, your Honor, I have a few questions.

2          THE COURT:  Mr. Tapia.

3   CROSS-EXAMINATION

4   BY MR. TAPIA:

5   Q.  Good morning, Mr. Skinner.

6   A.  Good morning.

7   Q.  Did you have a lawsuit where you sued the City of New York

8   and the Department of Corrections previously?

9   A.  Yes, I did.

10  Q.  And that lawsuit was resolved?

11  A.  Yes, it was.

12  Q.  Now, have you spoken to Ms. Thomas, Irene Donna Thomas, in

13  the past?

14  A.  Yes, I have.

15  Q.  Have you ever spoken to me in the past?

16  A.  Not that I know of.

17  Q.  And what about Mr. Maxwell Leighton, have you spoken to

18  him?

19  A.  He looks familiar but I don't think so.

20  Q.  As far as any of the tax records that were submitted by the

21  plaintiffs in this case, have you seen any of those documents?

22  A.  I have not.

23  Q.  Have you read any of the decisions issued by the

24  administrative law judge in these cases?

25  A.  No, I have not.

CCALBEY3                    Skinner - cross

1    Q.  And as far as the demonstrations that were held that day,

2    were they stopped at all in any way?

3    A.  No.  It was just one demonstration.

4              MR. TAPIA:  I have nothing further.  Thank you.

5              THE COURT:  Ms. Thomas.

6    REDIRECT EXAMINATION

7    BY MS. THOMAS:

8    Q.  Mr. Skinner, without going into the specifics of your

9    lawsuit, what was its resolution?

10   A.  The case was decided in my favor.

11             MR. TAPIA:  Objection, your Honor.

12             THE COURT:  Overruled.  Go ahead.

13   A.  The case was decided in my favor, a jury trial.

14   Q.  And were you satisfied with that?

15   A.  Yes, I was.

16             MS. THOMAS:  No further questions, your Honor.

17   RECROSS EXAMINATION

18   BY MR. TAPIA:

19   Q.  Now, did your case have anything to do with the Moorish

20   American faith?

21   A.  No, it did not.

22   Q.  Did it have anything to do with these seven individuals in

23   this courtroom?

24   A.  No, it did not.

25   Q.  By the seven individuals, obviously, I mean the plaintiffs.

CCALBEY3                          Skinner - recross

1    A.   No.

2    Q.   Okay.  And as far as the verdict in your favor, you

3    actually settled the case after the verdict, correct?

4    A.   The city appealed and then there was a settlement, yes.

5               MR. TAPIA:  Thank you so much.

6               THE COURT:  You may step down.  Thank you.

7               THE WITNESS:  Leave?

8               THE COURT:  Yes, you may.

9               (Witness excused)

10              THE COURT:  Ms. Thomas, who will be the next witness?

11              MS. THOMAS:  Mr. Andrew Fenneck.  Is he here?

12              MR. LEIGHTON:  Give me 30 seconds.  I have to see

13   which witness is present.

14              THE COURT:  I invite you to stand in place and stretch

15   if you like.

16              MR. LEIGHTON:  Your Honor, I believe both witnesses or

17   the next witness is on the 8th floor.  We moved a little more

18   quickly than I expected.  They are present; I know they're

19   there.  It's your discretion if you wish for me to get them and

20   bring them up.

21              THE COURT:  I do.  I'll let the jury take a break

22   rather than sitting here.  You can go back to the room for

23   about five minutes.

24              (Continued on next page)

25



I (We) hereby certify that the foregoing is a true and correct transcription of my (our) stenographic notes taken at the time and place aforesaid.

Official Court Reporter
U.S. District Court















# EXHIBIT D

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  11/5/13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
OBA HASSAN WAT BEY, et al.,

                       Plaintiffs,

      -against-

THE CITY OF NEW YORK, et al.,

                   Defendants.
-------------------------------------------------------------X

99 **CIVIL** 3873 (AJN)
01 **CIVIL** 9406 (AJN)
**AMENDED JUDGMENT**

#12,2265

Following a trial held from December 4 through December 13, 2012, a jury having rendered

a verdict finding in favor of Plaintiffs and against Defendants City of New York ("the City"),

William Fraser ("Fraser"), and Bernard Kerik ("Kerik") (collectively, "Defendants"); thereafter,

post-trial motions were filed by the parties in the above-captioned employment discrimination

action; on September 4, 2013, this Court having rendered a Memorandum and Order granting

Defendants' motion to vacate the award of punitive damages, but denying the remainder of

Defendants' motion, granting Plaintiffs' motions for pre-and post-judgment interest, but denying

the remainder of Plaintiffs' Rule 59 and 60 motions, granting Plaintiffs' motions for attorney's fees

and costs in part, awarding Ms. Thomas $1,271,573.96 in fees and costs, awarding Mr. Schlachter

$175,253.50 in fees and costs, and directing the Clerk of the Court to correct the judgment

previously entered, Dkt. No. 396, to reflect this Order, and the matter having come before the

Honorable Alison J. Nathan, United States District Judge, and the Court, on October 22, 2013,

having rendered its Order granting Plaintiffs' request for calculation of prejudgment interest, and

directing the Clerk of the Court to calculate prejudgment interest according to the methodology

described in Section IV.B of the Court's Memorandum and Order dated September 4, 2013, see Dkt.

No. 501, at 60-61, and using the dates given in Plaintiffs' letter dated October 22, 2013, Dkt. No.

529, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Memorandum and Order dated September 4, 2013 and Order dated October 22, 2013,

Defendants' motion to vacate the award of punitive damages is granted, but the remainder of

Defendants' motion is denied; judgment is entered as follows: in favor of plaintiff Robert Watson

in the amount of $488,000 plus pre-judgment interest of $106,071.41 for a total of $675,404.75; in

favor of plaintiff Pedro Rivera Sr. Bey in the amount of $467,000 plus pre-judgment interest of

$87,005.89 for a total of $554,005.89; in favor of plaintiff Alberto Rivera Bey in the amount of

$405,000 plus pre-judgment interest of $40,994.00 for a total of $445,994.00; in favor of plaintiff

Hassan Abdallah in the amount of $467,000 plus pre-judgment interest of $87,005.89 for a total of

$554,005.89; in favor of plaintiff Edward Ebanks in the amount of $300,000 plus pre-judgment

interest of $55,892.44 for a total of $355,892.44; in favor of plaintiff Michael Nichols in the amount

of $379,000 plus pre-judgment interest of $70,610.77 for a total of $449,610.77; in favor of plaintiff

Herbert Hinnant in the amount of $300,000 plus pre-judgment interest of $55,892.44 for a total of

$355,892.44; all as against defendant City of New York; Plaintiffs' motions for pre-and

post-judgment interest are granted, but the remainder of Plaintiffs' Rule 59 and 60 motions are

denied; Finally, Plaintiffs' motions for attorney's fees and costs are granted in part; Ms. Thomas is

awarded $1,271,573.96 in fees and costs, and Mr. Schlachter is awarded $175,253.50 in fees and

costs.

**DATED:** New York, New York
      November 5, 2013

                                  **RUBY J. KRAJICK**

                                    **Clerk of Court**

**BY:**

                                    **Deputy Clerk**

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON _____















# EXHIBIT E

CHARGING CONFERENCE VERSION

COURT EXHIBIT # ___I___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DATE: 12-12-12
TIME: _____
CASE: 99-cv-3873

-----------------------------------------------------------------X

OBA HASSAN WAT BEY, ET AL.,
                         Plaintiffs,

      -v-

CITY OF NEW YORK, ET AL.,
                         Defendants.

-----------------------------------------------------------------X

: 99 Civ. 03873 (AJN)
: 01 Civ. 09406 (AJN)

JURY INSTRUCTIONS

1       Members of the jury, we have now reached that point in the trial where you are about to

2  enter your final function as jurors which, as you all appreciate, is one of the most important

3  duties of citizenship in this country.  You have all given very careful attention to the evidence,

4  and I am confident you will act together with fairness and impartiality and reach a just verdict in

5  the case.

6                          **1.  Role of the Court and the Jury**

7       I will now instruct you as to the law.  It is your duty to accept these instructions of law

8  and apply them to the facts as you determine them.  If an attorney has stated a legal principle

9  different from any that I state to you in my instructions, it is my instructions that you must

10  follow.  You should not single out any instruction as alone stating the law; you should consider

11  my instructions as a whole when you retire to deliberate.

12       These instructions on the law to be applied by you in your deliberations will be in three

13  parts.  First, I will describe the law to be applied to the facts as you find them to be established

14  by the evidence.  Second, I will instruct you on damages, to be applied only if you find liability.

15  Third, I will give you some instructions concerning the evaluation of evidence.

**CHARGING CONFERENCE VERSION**

1      You, the members of the jury, are the sole and exclusive judges of the facts. You pass

2    upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as

3    there may be in the testimony. You draw whatever reasonable inferences you decide to draw

4    from the facts as you have determined them, and you determine the weight of the evidence. You

5    must weigh and consider the evidence without regard to sympathy, prejudice, or passion for or

6    against any party.

7      What has been said in the opening statements, closing arguments, objections, or questions

8    is not evidence. The evidence before you consists of the answers given by witnesses, the

9    exhibits that were received in evidence, and any facts of which I have instructed you to take

10    judicial notice. You may not consider any testimony that I have told you to disregard or that was

11    stricken from the record.

12      Nor is what I say evidence. The rulings I have made during the trial are not any

13    indication of my views of what your decision should be. Since you are the sole and exclusive

14    judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict

15    should be. The rulings I have made during the trial are not any indication of my views of what

16    your decision should be as to whether or not the Plaintiffs have proven their case.

17      I also ask you to draw no inference from the fact that upon occasion I asked questions of

18    certain witnesses. These questions were only intended for clarification or to expedite matters and

19    certainly were not intended to suggest any opinions on my part as to the verdict you should

20    render, or whether any of the witnesses may have been more credible than any other witnesses.

21    You are expressly to understand that the court has no opinion as to the verdict you should render

22    in this case.

23

CHARGING CONFERENCE VERSION

1            2. **Preponderance of the Evidence**

2        The standard under which you will decide whether a party in this case has met its burden

3 of proof on a particular issue is the preponderance of the evidence. To establish something by a

4 preponderance of the evidence means that the evidence of the party having the burden of proof

5 must be more convincing and persuasive to you than the evidence opposed to it. The difference

6 in persuasiveness need not be great: it requires only that you find that the scales tip, however

7 slightly, in favor of the party with the burden of proof—that what that party claims is more likely

8 than not true.

9        What is important is the quality of the evidence and not the number of witnesses, or the

10 number or variety of the exhibits, or the length of time spent on a subject. In determining

11 whether any fact has been proved by a preponderance of the evidence, you may consider the

12 testimony of all of the witnesses and all of the exhibits.

13        Simply because I have permitted certain evidence to be introduced does not mean that I

14 have decided on its importance or significance. That is for you to decide.

15        Some of you may have heard of proof beyond a reasonable doubt, which is the proper

16 standard of proof in a criminal trial. That requirement does not apply to a civil case such as this

17 and you should put it out of your mind.

18            3. **Liability in General**

19        We turn now to legal responsibility, known as "liability." If a party making a claim

20 against another party proves each of the essential elements of its claim by a preponderance of the

21 credible evidence, we say that that party has established that the other party is legally liable. The

22 Plaintiffs in this case are Robert Watson, formerly known as Oba Hassan Wat Bey, Pedro Rivera

23 Sr. Bey, Alberto Rivera Bey, Hassan Abdallah, Edward Ebanks, Michael Nichols, and Herbert

Case 1:13-cv-08927-AJN-RLE    Document 28-1    Filed 05/12/14    Page 25 of 80
Case 1:99-cv-03873-AJN-RLE    Document 509    Filed 12/18/12    Page 4 of 32
CHARGING CONFERENCE VERSION

1    Hinnant.  The individual Defendants are Bernard Kerik and William Fraser.  Plaintiffs are also

2    suing the City of New York as the employer of these individuals.

3         Plaintiffs Robert Walker, Pedro Rivera Sr. Bey, and Alberto Rivera Bey contend that the

4    Defendants are liable based on their suspension from work, placement on modified duty upon

5    returning to work, termination, and placement on "Code Blue" status.  Plaintiffs Hassan

6    Abdallah, Edward Ebanks, Michael Nichols, and Herbert Hinnant contend that the Defendants

7    are liable based on their termination and placement on "Code Blue" status.

8         Although there are several Defendants in this case and they are being represented by the

9    same attorneys, it does not follow that if one is liable, all of the rest are liable as well.  Each

10   Defendant is entitled to fair, separate and individual consideration of the case without regard to

11   your decision as to the other Defendants.

12        You must now determine, in accordance with my instructions, whether the Plaintiffs have

13   carried their burden of proving by a preponderance of the credible evidence that the Defendants

14   are liable to them on their various claims.

15                    4.  **Title VII and New York State Human Rights Law**

16        Plaintiffs Robert Watson, Edward Ebanks, Michael Nichols, and Herbert Hinnant raise a

17   claim against the City of New York based on Title VII of the Civil Rights Act of 1964. Title VII

18   provides in pertinent part that it shall be an unlawful employment practice for an employer, in

19   this case the City of New York,

20        to fail or refuse to hire or to discharge any individual, or otherwise to discriminate
21        against any individual with respect to his compensation, terms, conditions, or
22        privileges of employment, because of such individual's . . . religion . . . .
23
24        An unlawful employment practice is established when the complaining party

25   demonstrates that religion was a motivating factor in any employment practice, even though

**CHARGING CONFERENCE VERSION**

1    other factors may have also motivated the practice. A "motivating factor" is a factor that played

2    some part in Defendant's employment practice decision.

3        To prove his claim, Plaintiffs must prove by a preponderance of the evidence:

4        <u>First</u>, that Defendants took an adverse employment action against the Plaintiffs, and

5        <u>Second</u>, that the Plaintiffs' religion was a motivating factor in Defendant's decision.

6        You must find for the Defendants if either of these elements has not been proved.

7        Plaintiffs Robert Walker, Alberto Rivera Bey, Hassan Abdallah, and Herbert Hinnant

8    also bring claims against the City of New York under New York State Human Rights Law.

9    These claims are analyzed identically to Plaintiffs' Title VII claim.

10                    **5. <u>First Element: Adverse Employment Action</u>**

11        With regard to the first element, an "adverse employment action" is a materially adverse

12    change in the terms or conditions of employment. I instruct you that summary suspension,

13    placement on modified duty, and termination are each adverse employment actions.

14        The parties dispute whether placement on "Code Blue" is an adverse employment action.

15    An "adverse employment action" is a materially adverse change in the terms or conditions of

16    employment. To be materially adverse a change in working conditions must be more disruptive

17    than a mere inconvenience or an alteration of job responsibilities. A materially adverse change

18    might be indicated by a termination of employment, a demotion evidenced by a decrease in wage

19    or salary, a less distinguished title, a material loss of benefits, significantly diminished material

20    responsibilities, or other indices unique to a particular situation. Whether an action is adverse is

21    not defined solely in terms of job termination or reduced wages and benefits, and less flagrant

22    reprisals by employers may indeed be adverse. At the same time, however, not every unpleasant

CHARGING CONFERENCE VERSION

1   matter short of discharge or demotion is adverse. Whether Plaintiffs' placement on "Code Blue"

2   status is materially adverse is an issue of fact for you to decide.

3            6. **Second Element: Motivating Factor/Pretext**

4         In order to prove their claims, Plaintiffs must prove by a preponderance of the evidence

5   that their religion was a motivating factor in the Defendants' adverse employment action. A

6   motivating factor is a factor that significantly influenced the decision. Plaintiffs need not prove

7   that their religion was the only motivating factor in any such decision or that Defendants' other

8   reasons played no role in any such decision. Plaintiffs need only to show that, based on the

9   credible evidence, it is more likely than not that the adverse employment action was taken

10  because of prohibited discrimination. By the same token, if a Plaintiff fails to carry this burden,

11  you must find for the Defendants on that Plaintiff's claims.

12        The Defendants contend they relied on legitimate reasons for the actions they took.

13  Plaintiffs dispute that Defendants took these actions for the reasons they proffer. You should

14  scrutinize the reasons proffered by the Defendant, just as you would any other evidence. If you

15  find that the reasons were "pretextual," that is, they were not the real reasons for the decision,

16  then you may infer or not infer, as you choose, that the pretext was designed to conceal

17  discrimination.

18        Remember that it is the Plaintiffs' burden to prove that at least one of the motivating

19  reasons for the decision was intentional discrimination. However, Plaintiffs are not required to

20  show that the reasons proffered by the Defendants are pretextual in order to prevail. Rather, if

21  Plaintiffs prove by a preponderance of the evidence that discrimination was a motivating factor

22  for Plaintiffs' adverse treatment, but the preponderance of the evidence also shows that the

23  Defendants' legitimate explanation was also in the Defendants' mind, you should consider

6

CHARGING CONFERENCE VERSION

1    whether the Defendants would have reached the same decisions regarding Plaintiffs even without

2    such discrimination. If you find that the Defendants have proved by a preponderance that they

3    would have taken the same actions against the Plaintiffs even absent discrimination, you must

4    reach a verdict in favor of the Defendants. The reason for this is that if the Defendants would

5    have acted as they did in any event, then Plaintiffs have not been harmed by the Defendants'

6    discriminatory intent, and therefore Plaintiffs are not entitled to relief under this statute. If you

7    find that Defendants had both discriminatory and lawful reasons underlying their decisions, and

8    Defendants have not shown that they would have made the same decision absent discrimination,

9    you should find for the Plaintiff.

10        In this case, Plaintiffs contend that, although certain of the alleged adverse employment

11    actions taken against them were initiated or recommended by Mr. Caruso, the decisions on

12    whether to take these actions were made by Mr. Kerik and Mr. Fraser. If you find—consistent

13    with the instructions that I have just given you—that a motivating factor of Mr. Caruso's actions

14    was the Plaintiffs' religion, that he intended to cause the adverse employment actions that were

15    taken against the Plaintiffs, and that his actions were a proximate cause of those adverse

16    employment actions, the City of New York is liable to the Plaintiffs under Title VII. This is true

17    even if you conclude that Mr. Kerik and/or Mr. Fraser did not themselves have discriminatory

18    animus against the Plaintiffs based on the Plaintiffs' religion. I will instruct you on what it

19    means for an action to be the "proximate cause" of an event later in these instructions.

20        7. **New York City Human Rights Law**

21    Plaintiffs Robert Walker, Alberto Rivera Bey, Hassan Abdallah, and Herbert Hinnant

22    also have brought claims under New York City Human Rights Laws. This claim is analyzed in

7

1    the same way as Plaintiffs' claims under Title VII of the Civil Rights Act of 1964 and New York

2    State Human Rights law, on which I have just instructed you.

3         However, Plaintiffs' New York City Human Rights Law claims are broader than their

4    Title VII and New York State Human Rights Law claims in that, in addition to prohibiting

5    discrimination based on the Plaintiffs' religion, New York City Human Rights Law also

6    prohibits discrimination based on religion of a person with whom the Plaintiffs were known to

7    associate.

8              8.  **State Law Claims: Aiding and Abetting**

9         Plaintiffs Robert Walker, Hassan Abdallah, and Herbert Hinnant also bring claims

10   against individual Defendant Bernard Kerik, and Plaintiff Alberto Rivera Bey, brings a claim

11   against the individual Defendant William Fraser, under the New York State Human Rights Law

12   and New York City Human Rights Law for aiding and abetting the alleged violation of these

13   laws by the City of New York.  An individual may be liable for aiding and abetting the violation

14   of the New York State and New York City Human Rights Laws if he actually participated in the

15   conduct that gives rise to the claim of discrimination.  A supervisor who is aware of

16   discriminatory conduct by subordinates but does not take adequate remedial measures, ratifies, or

17   condones that conduct may be found to have "actually participated" in the violation and may be

18   liable as an aider and abettor.

19              9.  **Section 1983**

20        Many of the Plaintiffs' claims against the Defendants arise under Section 1983, the

21   federal civil rights law.  Section 1983 makes it unlawful for a person acting under color of state

22   law to deprive someone of his rights guaranteed under the Constitution or laws of the United

23   States.  Section 1983 provides:

8

**CHARGING CONFERENCE VERSION**

1    Every person who, under color of any statute, ordinance, regulation, custom, or
2    usage, of any State . . . , subjects, or causes to be subjected, any citizen of the
3    United States . . . to the deprivation of any rights, privileges, or immunities
4    secured by the Constitution and laws, shall be liable to the party injured.

5    Here, the rights at issue are as follows.  Plaintiffs Robert Watson, Pedro Rivera Sr. Bey, Hassan

6    Abdallah, Edward Ebanks, Michael Nichols, and Herbert Hinnant allege that Defendant Bernard

7    Kerik deprived them of (1) their rights under the Equal Protection Clause of the United States

8    Constitution; (2) their rights to Freedom of Association under the United States Constitution; and

9    (3) their rights under the Establishment Clause of the United States Constitution.  Plaintiff

10   Alberto Rivera Sr. Bey alleges that Defendant William Fraser deprived him of these same three

11   rights.

12                          10. **Elements of a Section 1983 claim**

13          To establish a Section 1983 claim, the Plaintiffs must establish, by a preponderance of the

14   evidence, each of the following three elements against the Defendant you are considering:

15          First, that the Defendant was acting under color of state law at the time of the incident.

16          Second, that the Defendant's acts were the proximate cause of injuries sustained by the

17   Plaintiff.

18          Third, that in committing these acts, the Defendant intentionally or recklessly deprived

19   Plaintiffs of a right secured by the Constitution or laws of the United States, in other words a

20   federal right.

21          I will now explain these element to you in further detail.

22                     11. **First Element: Action Under Color of State Law**

23          In this case, it is not disputed that, in the incident in question, the individuals involved in

24   the suspension, modified duty placement, termination, and placement on "Code Blue" status

9

**CHARGING CONFERENCE VERSION**

1   were acting under color of state law.  I instruct you that you should find that the Defendants were

2   acting under color of state law.

3                          12. **Second Element: Proximate cause**

4          The second element that Plaintiffs must prove to establish a Section 1983 claim is that the

5   Defendant's acts were a proximate cause of injuries sustained by the Plaintiffs.  An act is a

6   proximate cause of an injury if it is a substantial factor in bringing about the injury, and if the

7   injury was a reasonably foreseeable consequence of the Defendant's act.

8          A proximate cause need not always be the nearest cause either in time or space.  In

9   addition, there may be more than one proximate cause of an injury or damage.  Many factors or

10  the conduct of two or more people may operate at the same time, either independently or

11  together, to cause an injury.

12                        13. **Third Element: Deprivation of a Federal Right**

13         The third element that Plaintiffs must prove by a preponderance of the evidence to

14  establish their Section 1983 claim against a Defendant is that the Defendant intentionally or

15  recklessly deprived them of a federal right.

16         Here, Plaintiffs Robert Watson, Pedro Rivera Sr. Bey, Hassan Abdallah, Edward Ebanks,

17  Michael Nichols, and Herbert Hinnant allege that Defendant Bernard Kerik deprived them of (1)

18  their rights under the Equal Protection Clause of the United States Constitution; (2) their rights to

19  Freedom of Association under the United States Constitution; and (3) their rights under the

20  Establishment Clause of the United States Constitution.  Plaintiff Alberto Rivera Sr. Bey alleges

21  that Defendant William Fraser deprived him of these same three rights.

**CHARGING CONFERENCE VERSION**

1    In order for the Plaintiffs to establish this third element of their Section 1983 claim,

2    deprivation of a federal right, the Plaintiffs must show three things by a preponderance of the

3    evidence with respect to the Defendant whose liability you are considering:

4    <u>First</u>, that the Defendant acted in the way that the Plaintiffs allege.  In other words,

5    Plaintiffs must show by a preponderance of the evidence that the Defendant took the actions that

6    Plaintiffs claim violated their rights.

7    <u>Second</u>, that the Defendant's conduct caused the Plaintiffs to suffer the loss of a federal

8    right.

9    <u>Third</u>, that in performing the acts or omissions alleged, the Defendant acted with an intent

10    to deprive the Plaintiffs of their rights or in reckless disregard of those rights.

11    I will now discuss in more detail the federal rights that Plaintiffs allege Defendants

12    deprived him of.  You have heard both Plaintiffs' and Defendants' versions of what happened in

13    this case, and it is up to you to decide what the evidence shows actually occurred.  With that

14    determination in mind, you should consider whether, under the law as I am about to instruct you,

15    Plaintiffs have established whether each Defendant you are considering violated Plaintiffs'

16    rights.

17    ### 14. <u>Equal Protection</u>

18    In their first Section 1983 claim, Plaintiffs claim that Defendants violated their rights

19    under the Equal Protection Clause of the United States, which directs that similarly situated

20    individuals be treated alike by the state.  The Equal Protection Clause protects against selective

21    enforcement of the law based on impermissible criteria.  To establish an equal protection

22    violation by a particular Defendant, each Plaintiff must prove by a preponderance of the

23    evidence the following two elements:

11

CHARGING CONFERENCE VERSION

1    <u>First</u>, that the Plaintiff, compared with others similarly situated, was selectively treated by

2    the Defendant in question; and

3    <u>Second</u>, that the Defendant's selective treatment was deliberately based on impermissible

4    considerations, such as the Plaintiffs' religion, an intent to inhibit or punish the Plaintiffs for

5    their exercise of their right to Freedom of Association, or a malicious or bad faith intent to injure

6    the Plaintiff.

7    I will now explain these elements to you in further detail.

8    ### 15. <u>Equal Protection: Selective Treatment by Defendant</u>

9    The first element that a Plaintiff must prove by a preponderance of the evidence to

10   prevail in this claim is that the Defendant in question treated him differently than others who

11   were similarly situated.  You must decide whether a Defendant's adverse employment action

12   constituted such selective treatment.

13   To establish this element, Plaintiffs must demonstrate that individuals who engaged in

14   conduct comparable to that engaged in by the Plaintiffs, and who were subject to the same

15   standards of performance and discipline as Plaintiffs, were subject to lesser discipline or no

16   discipline.

17   ### 16. <u>Equal Protection: Deliberate, Impermissible Consideration</u>

18   The second element the Plaintiff must prove by a preponderance of the evidence is that

19   Defendant's selective treatment, if any, was deliberately based on impermissible considerations,

20   namely religion, an intent to inhibit or Punish Plaintiffs for their exercise of their right to

21   Freedom of Association, <u>or</u> a malicious or bad faith intent to injure the Plaintiff.  This element is

22   satisfied if you find, by a preponderance of the evidence, that a Defendant selected or affirmed a

23   particular course of action toward the Plaintiff at least in part because of the Plaintiff's religion.

12

**CHARGING CONFERENCE VERSION**

1     Alternatively, this element is satisfied if you find, by a preponderance of the evidence, that a

2     Defendant selected or affirmed a course of action out of malice or bad faith intent to hurt the

3     Plaintiff.  In either case, the Defendant must have acted deliberately, with this impermissible

4     purpose in mind.

5          However, the Plaintiffs do not need to demonstrate that that the challenged action was

6     taken solely for discriminatory purposes; it is sufficient to prove that a discriminatory purpose

7     was a motivating factor for the decision.

8          The Defendants contend that even if you find that they intended to discriminate on the

9     basis of religion, they would have reached the same decision regarding Plaintiffs even without

10    such discrimination. If you find from all the evidence that this is more likely true than not, you

11    must reach a verdict in favor of the Defendants. The reason for this is that if the Defendants

12    would have acted as they did in any event, then Plaintiffs have not been harmed by the

13    Defendants' discriminatory intent, and therefore Plaintiffs are not entitled to relief under this

14    statute.

15         It is important also that you realize that perfectly even-handed enforcement of the law is

16    not required.  A law can be enforced against a few persons -- even just one -- without offending

17    the Equal Protection Clause of the United States Constitution, so long as an impermissible

18    consideration did not underlie the selective enforcement.

19                      **17. <u>Freedom of Association</u>**

20         In their second Section 1983 claim, Plaintiffs contend their rights to freedom of

21    expressive association under the First Amendment were violated by the Defendants' actions.  To

22    establish a violation of the First Amendment's rights to expressive association by a particular

CHARGING CONFERENCE VERSION

1    Defendant, each Plaintiff must prove by a preponderance of the evidence the following three

2    elements:

3        First, the Plaintiff's acts of association were protected under the First Amendment;

4        Second, following Plaintiff's acts of association, the Defendant took adverse action

5    against the Plaintiffs; and

6        Third, Plaintiff's acts of association were a motivating factor in the Defendant's decision

7    to take adverse action against the Plaintiff.

8        I will now explain these elements to you in further detail.

9        **18. Freedom of Association: Plaintiffs' Acts of Expressive Association**

10       In this case, Plaintiffs claim that their acts of association with the Moorish religion are

11   protected under the First Amendment. I instruct you as a matter of law that Plaintiffs'

12   association with the Moorish religion is protected under the First Amendment. You may not

13   conclude differently.

14       **19. Freedom of Association: Adverse Action**

15       I have already instructed you that Plaintiffs were subjected to adverse employment

16   actions in their summary suspension, placement on modified duty, and termination. You may

17   not conclude otherwise. I have already instructed you on how to determine if the placement on

18   "Code Blue" status was an adverse employment action. You should apply the same analysis

19   here.

20       **20. Freedom of Association: Motivating Factor**

21       The third element of Plaintiffs' claim is that their association with the Moorish religion

22   was a motivating factor in their discipline. I have already instructed you on the standard for

14

CHARGING CONFERENCE VERSION

1    determining whether an impermissible consideration was a motivating factor in the Plaintiffs'

2    discipline. You should apply the same standard here, with a few clarifications.

3          Specifically, it is not permissible to punish a person merely based on his association with

4    a group in which some members may engage in illegal activity or that may have illegal aims, or a

5    belief that that members of the group engage in illegal activity or the group has illegal aims.

6    Rather, there must be proof that the person being punished knew of any such illegal aims or

7    activities and specifically intended to accomplish them. Thus, if you conclude that adverse

8    employment actions were taken against Plaintiffs and that these adverse actions were motivated

9    by their association with the Moorish religion, absent proof that Plaintiffs knew of any illegal

10   activity of the Moorish religion and intended to accomplish such illegal activity, this association

11   alone would not be a permissible basis for the adverse actions.

12         At the same time, the fact that Plaintiffs may have engaged in certain conduct because of

13   a good-faith or sincerely held belief that their religion justified that conduct does not excuse

14   Plaintiffs from complying with generally applicable laws or rules, and does not preclude

15   Defendants from disciplining Plaintiffs based on their conduct. If you believe Defendants'

16   explanations for disciplining the Plaintiffs and believe Defendants had a legitimate basis for that

17   discipline, the mere fact that Plaintiffs have asserted that the conduct on which their discipline

18   was based stems from their religious beliefs does not require you to find in Plaintiffs' favor.

19                                    21. **Establishment Clause**

20         In their third Section 1983 claim, the Plaintiffs contend their rights under the

21   Establishment Clause of the First Amendment were violated, because they claim that the alleged

22   adverse actions taken against them were intended to coerce them to abandon their choice of

15

**CHARGING CONFERENCE VERSION**

1   religion or religious association.  To establish this claim, each Plaintiff must prove by a

2   preponderance of the evidence the following three elements:

3          <u>First,</u> that they were subjected to an adverse employment action;

4          <u>Second</u>, that at the time adverse employment action was taken, the Plaintiff's job

5   performance was satisfactory; and

6          <u>Third</u>, that a motivating factor of the decision to take the adverse employment actions

7   was an intent to coerce the Plaintiffs to abandon their choice of religion or religious association.

8                              22. **Third Element: Intent**

9          As I noted earlier, to establish his Section 1983 claim, Plaintiffs must not only show that

10  the Defendant's acts deprived them of a federal right, but also that the Defendants took those acts

11  with the intent to deprive the Plaintiffs of their rights or with reckless indifference to those rights.

12         An act is intentional if it is done voluntarily and deliberately and not because of mistake,

13  accident, negligence, or another innocent reason.  An act is reckless if done in conscious

14  disregard of its known probable consequences. In other words, even if a Defendant did not

15  intentionally seek to deprive the Plaintiffs of the Plaintiffs' rights, if he purposefully disregarded

16  the high probability that his actions would deprive the Plaintiffs of the Plaintiffs' rights, then this

17  element is satisfied.

18         In determining if Defendants acted intentionally or recklessly in their actions or failure to

19  act, you should remember that there is no way of looking into a person's mind.  Therefore, you

20  have to depend on what was done and what the people involved said was in their minds, and

21  your belief or disbelief with respect to those facts.

22                              23. **§ 1983: Individual Liability**

**CHARGING CONFERENCE VERSION**

1    Plaintiffs Robert Watson, Pedro Rivera Sr. Bey, Alberto Rivera Bey, Hassan Abdallah,

2    Edward Ebanks, Michael Nichols, and Herbert Hinnant have brought their § 1983 claims against

3    the individual Defendant Bernard Kerik. Plaintiff Alberto Rivera Bey has also brought his §

4    1983 claims against the individual Defendant William Fraser. If you find that one or more of the

5    Plaintiffs' were denied their rights under § 1983, you should consider the individual liability of

6    Mr. Kerik and/or Mr. Fraser, as appropriate.

7    Mr. Kerik and Mr. Fraser may not be held liable under § 1983 for the conduct of their

8    subordinates merely based on the supervisory relationship. Rather, to find these individuals

9    liable, the Plaintiffs must show by a preponderance of the evidence either that

10    (1) the individual Defendant you are considering participated directly in the violation of

11    the Plaintiffs rights; or

12    (2) the individual Defendant you are considering created a policy or custom under which

13    unconstitutional practices occurred, or allowed the continuance of such a policy or

14    custom.

15    Direct participation means personal participation by a person who has knowledge of the

16    facts that render the employment actions unlawful. I will define policy or custom for you in the

17    next instruction.

18    ### 24. § 1983: Municipal Liability

19    The fact that an employee of a the City of New York deprived the Plaintiffs of a federal

20    right, is not alone a sufficient basis for holding the City of New York liable to the Plaintiffs

21    under Sections1983. Before you can hold the City of New York liable under these statutes, the

22    Plaintiffs must establish by a preponderance of the evidence that the action of the employee that

23    deprived him of his federal right, or that constituted intentional racial discrimination, was the

CHARGING CONFERENCE VERSION

1    result either of an official policy of the City of New York or a custom of the City of New York

2    that was in place even though such a custom had not necessarily received formal approval

3    through the body's official decision-making channels.

4            Whether an official policy or custom exists is a question of fact for you to determine. To

5    qualify as customary, the action must be taken pursuant to a long-standing or regularly applied

6    custom of the municipality. With respect to action taken pursuant to official policy, however,

7    longstanding or regularly applied custom is not necessary. If it is determined that the particular

8    policy was established even for a single occasion, you may find that it represented an official

9    policy of the municipality, provided that a deliberate choice to follow a course of action was

10   made among various alternatives by the official or officials responsible for establishing final

11   policy with respect to the subject matter in question.

12           To find that the City of New York is liable based on the acts of a policy-maker of the

13   City of New York, the Plaintiffs must show that the policy-maker took the acts causing the

14   deprivation of the Plaintiffs' rights with deliberate indifference to the Plaintiffs' rights.

15   Deliberate indifference is established if the Plaintiffs demonstrate that the policy-maker was

16   aware of the deprivation of the Plaintiffs' rights, or the risk of the deprivation of the Plaintiffs'

17   rights, but made a conscious choice not to take appropriate action to prevent or sanction the

18   violation of those rights.  The discriminatory practice must be so manifestly clear that it implies

19   acquiescence by the policy-making officials.

20           I instruct you that Bernard Kerik and William Fraser are final policymaking officials

21   whose actions may be attributed to the municipality.  You may not conclude differently.

22                              25. **Damages: Overview**

18

**CHARGING CONFERENCE VERSION**

1    I will now instruct you on the law for measuring damages.  The fact that I am instructing

2    you as to the proper measure of damages should not be considered as indicating any view of

3    mine as to which party is entitled to your verdict in this case.  Instructions as to the measure of

4    damages are given for your guidance only in the event you should find in favor of one or more

5    of the Plaintiffs from a preponderance of the evidence in the case in accordance with my other

6    instructions.

### 26. <u>Actual Damages</u>

8    If you find that at least one of the Defendants is liable, then, pursuant to my instructions

9    below, you should award the Plaintiff to whom they are liable the sum that you find will fairly

10    and justly compensate him.  There are three distinct kinds of actual damages and you must

11    consider them separately.  Each Plaintiff has the burden of proving that he is entitled to any of

12    these damages by a preponderance of the evidence.

### 27. <u>Back Pay</u>

14    You may award a sum consisting of the salary, bonuses and other forms of compensation

15    and benefits that a Plaintiff would have earned in his employment if he had not been discharged,

16    through the date of your verdict, *minus* the amount of earnings and benefits that the Plaintiff

17    received from other employment during that time.

### 28. <u>Front Pay</u>

19    You may also award a sum consisting of the salary, bonuses and other forms of

20    compensation and benefits that  a Plaintiff would have received, had he not been fired, from the

21    time going forward from the date of your verdict, *minus* the amount that the Plaintiff is expected

22    to receive from other employment.

**CHARGING CONFERENCE VERSION**

1    You may calculate this amount from today through the time at which the Plaintiff would

2    no longer be reasonably expected to work.  In determining how far into the future a Plaintiff

3    should be awarded front pay, you must remember that an award of front pay cannot involve

4    speculation.

5              29. **Compensatory Damages**

6    You may award damages to compensate for any emotional pain, suffering,

7    inconvenience, humiliation and mental anguish suffered by the Plaintiff that was proximately

8    caused by the Defendant's actions. I remind you that an injury is "proximately caused" by the

9    misconduct of a Defendant if that misconduct was a substantial factor in causing the injury and if

10   the injury was a foreseeable consequence of the Defendant's misconduct.   No evidence of the

11   monetary value of such intangible things as pain and suffering has been, or need be, introduced

12   into evidence. There is no exact standard for fixing the compensation to be awarded for these

13   elements of damages

14              30. **Fixing an Amount of Damages**

15   You must enter separate amounts for each type of damages on the verdict form and must

16   not include the same items in more than one category.

17   Any amount you fix should be fair in light of the evidence presented at trial. In

18   determining such an amount, you should be guided by dispassionate common sense. The

19   damages you award must be fair compensation—no more and no less. You must use sound

20   discretion in fixing an award of damages, drawing reasonable inferences from the facts in

21   evidence. You should not award damages based on sympathy, speculation, or guess work. On the

22   other hand, the law does not require that the Plaintiff prove the amount of his losses with

20

**CHARGING CONFERENCE VERSION**

1   mathematical precision, but only with as much definiteness and accuracy as circumstances

2   permit.

3   31. <u>**Reduction to Present Value**</u>

4        You must reduce any award to its present value by considering the interest that the

5   Plaintiffs could earn on the amount of the award if they had made a relatively risk-free

6   investment. The reason you must make this reduction is because an award of an amount

7   representing future loss of earnings is more valuable to the Plaintiffs if they receive it today than

8   if Plaintiffs received it in the future, when they would otherwise have earned it. It is more

9   valuable because the Plaintiffs can earn interest on it for the period of time between the date of

10   the award and the date that the Plaintiffs would have earned the money. Thus, you should adjust

11   the amount of any award for future loss of earning by the amount of interest that the Plaintiffs

12   can earn on that amount in the future, taking into account inflation. I instruct you that, absent

13   other evidence of rate of interest by which to adjust any award, a two percent rate has been held

14   to be appropriate.

15   32. <u>**No Double Recovery and Compensatory Damages**</u>

16        In this case, Plaintiffs claim that Defendants violated their rights in a number of ways.

17   You must remember in calculating the damages that Plaintiffs are entitled to be compensated

18   only for injuries they actually suffered. Thus, if you find that the Defendants violated more than

19   one of Plaintiffs' rights, but the resulting injury is no greater than it would have been if the

20   Defendants had violated only one of those rights, you should award an amount of compensatory

21   damages no greater than you would award if the Defendants had violated only one of the

22   Plaintiffs' rights. On the other hand, if you find that the Defendants violated more than one of

23   Plaintiffs' rights <u>and</u> you can identify separate injuries resulting from those separate violations,

21

CHARGING CONFERENCE VERSION

1     you should award an amount of compensatory damages equal to the total of the damages you

2     believe will fairly and justly compensate the Plaintiffs for the separate injuries they suffered.

3     33. **Nominal Damages**

4        If you find in favor of a Plaintiff on any of his claims, but you find that his damages have

5     no monetary value, then you must return a verdict for that Plaintiff in the amount of one dollar.

6     These are called nominal damages and are intended to confirm your judgment that, even if no

7     actual damages were proved, liability was found.

8     34. **Punitive Damages**

9        If you find that there is liability, whether or not you award compensatory damages you

10    must also consider whether to award punitive damages. Punitive damages may be awarded as a

11    punishment to the individual Defendants for extreme or outrageous conduct or as a warning to

12    others to keep them from following the Defendants' example. Punitive damages may not be

13    awarded against the City of New York.

14       You may, but you are not required to, award punitive damages if you determine that the

15    Plaintiffs have proved, by a preponderance of the evidence, that the acts or omissions of the

16    Defendants were done maliciously or wantonly. An act or failure to act is malicious if it was

17    prompted by ill-will or spite toward the Plaintiff. An act or failure to act is wanton if it was done

18    with a reckless or callous disregard for the Plaintiffs's rights.

19       If you find that Plaintiffs have proved by a preponderance of the evidence that any of the

20    Defendants acted with actual malice or in wanton and willful disregard of his rights, you may

21    award punitive damages in this case against that particular Defendant either as punishment, to

22    deter others, or both. An award of punitive damages is discretionary; that is, if you find the legal

CHARGING CONFERENCE VERSION

1    requirements to award punitive damages are met, then you may decide to award punitive

2    damages or you may decide not to award them.

3          Should you decide to award punitive damages on this claim, you should bear in mind that

4    the amount is not intended to compensate a Plaintiff for injuries but rather to punish the

5    Defendant or to prevent similar conduct in the future.  You should also consider whether actual

6    damages may be adequate to punish the Defendant or deter similar conduct, or whether the

7    conduct was so extreme or outrageous that actual damages are not adequate for these purposes.

8                          35. **Direct and Circumstantial Evidence**

9          There are two types of evidence that you may properly use in reaching your verdict.  One

10   type of evidence is direct evidence.  One kind of direct evidence is a witness's testimony about

11   something the witness knows by virtue of her or his own senses—something the witness has

12   seen, felt, touched or heard.  Direct evidence may also be in the form of an exhibit.  The other

13   type of evidence is circumstantial evidence.

14         Circumstantial evidence is evidence that tends to prove one fact by proof of other facts.

15   There is a simple example of circumstantial evidence that is often used in this courthouse.

16   Assume that when you came into the courthouse this morning the sun was shining and it was a

17   nice day.  Assume that the courtroom blinds are drawn and you cannot look outside.  As you are

18   sitting here, someone walks in with an umbrella that is dripping wet.  Somebody else then walks

19   in with a raincoat that is also dripping wet.

20         Now, you cannot look outside the courtroom and you cannot see whether or not it is

21   raining.  So you have no direct evidence of that fact.  But on the combination of the facts that I

22   have asked you to assume, it would be reasonable and logical for you to conclude that between

23   the time you arrived at the courthouse and the time these people walked in, it had started to rain.

23

CHARGING CONFERENCE VERSION

1    That is all there is to circumstantial evidence. You infer on the basis of reason and

2    experience and common sense from an established fact the existence or the nonexistence of some

3    other fact. Many facts, such as a person's state of mind, can only rarely be proved by direct

4    evidence. Circumstantial evidence is of no less value than direct evidence; the law makes no

5    distinction between direct and circumstantial evidence, but simply requires that you, the jury,

6    decide the facts in accordance with the preponderance of all the evidence, both direct and

7    circumstantial.

8                              36. **Credibility of Witnesses**

9    Now for the important subject of evaluating testimony. How do you evaluate the

10   credibility or believability of the witnesses? The answer is that you use your plain common

11   sense. Common sense is your greatest asset as a juror. You should ask yourselves, did the

12   witness impress you as honest, open, and candid? Or did the witness appear evasive or as though

13   the witness were trying to hide something? How responsive was the witness to the questions

14   asked on direct examination and on cross-examination?

15        If you find that a witness is intentionally telling a falsehood, such a finding is

16   always a matter of importance that you should weigh carefully. If you find that any witness has

17   lied under oath at this trial, you should view the testimony of such a witness cautiously and

18   weigh it with great care. It is, however, for you to decide how much of the witness's testimony,

19   if any, you wish to believe. Few people recall every detail of every event precisely the same

20   way. A witness may be inaccurate, contradictory, or even untruthful in some respects and yet

21   entirely believable and truthful in other respects. It is for you to determine whether such

22   inconsistencies are significant or inconsequential, and whether to accept or reject all or to accept

23   some and reject the balance of the testimony of any witness.

**CHARGING CONFERENCE VERSION**

1      On some occasions during this trial, witnesses were asked to explain an apparent

2    inconsistency between testimony offered at this trial and previous statements made by the

3    witness. It is for you to determine whether a prior statement was inconsistent, and if so, how

4    much (if any) weight to give to an inconsistent statement in assessing the witness's credibility at

5    trial. You may consider evidence of a prior inconsistent statement by a witness who is not a

6    party only insofar as it relates to that witness's credibility, and may not consider it as evidence of

7    a Defendant's liability, except for statements that have been received in evidence. You may

8    consider evidence of a party's prior inconsistent statement for whatever light you find it sheds on

9    the issues in this case.

10    You are not required to accept testimony even though the testimony is uncontradicted and

11    the witness's testimony is not challenged. You may decide because of the witness's bearing or

12    demeanor, or because of the inherent improbability of the testimony, or for other reasons

13    sufficient to yourselves that the testimony is not worthy of belief. On the other hand, you may

14    find, because of a witness's bearing and demeanor and based upon your consideration of all the

15    other evidence in the case, that the witness is truthful.

16    In evaluating the credibility of the witnesses, you should take into account any evidence

17    that a witness may benefit or suffer in some way from the outcome of the case. Such interest in

18    the outcome creates a motive to testify falsely and may sway a witness to testify in a way that

19    advances his or her own interests. Therefore, if you find that any witness whose testimony you

20    are considering may have an interest in the outcome of this trial, then you should bear that factor

21    in mind when evaluating the credibility of his testimony, and accept it with great care.

22    Keep in mind, though, that it does not automatically follow that testimony given by an

23    interested witness is to be disbelieved. There are many people who, no matter what their interest

**CHARGING CONFERENCE VERSION**

1   in the outcome of the case may be, would not testify falsely.  It is for you to decide, based on

2   your own perceptions and common sense, to what extent, if at all, the witness' interest has

3   affected her or his testimony.

4        Thus, there is no magic formula by which you can evaluate testimony.  You bring to this

5   courtroom all your experience.  You determine for yourselves in many circumstances the

6   reliability of statements that are made by others to you and upon which you are asked to rely and

7   act.  You may use the same tests here that you use in your everyday lives.  Among the factors

8   you may consider are the witness's intelligence; the ability and opportunity the witness had to

9   see, hear, or know about the things that the witness testified about; the witness's memory; any

10   interest, bias, or prejudice the witness may have; the manner of the witness while testifying; and

11   the reasonableness of the witness's testimony in light of all the evidence in the case.

12                                      37. **Inferences**

13        At points in this trial, the attorneys have asked you to infer, on the basis of your reason,

14   experience, and common sense, from one or more established facts, the existence of some other

15   fact.

16        An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a

17   disputed fact exists on the basis of another fact which has been shown to exist.

18        There are times when different inferences may be drawn from facts, whether proved by

19   direct or circumstantial evidence. The Plaintiffs ask you to draw one set of inferences, while the

20   Defendants asks you to draw another. It is for you, and you alone, to decide what inferences you

21   will draw.

22        The process of drawing inferences from facts in evidence is not a matter of guesswork or

23   speculation. An inference is a deduction or conclusion which you, the jury, are permitted to

                                        26

CHARGING CONFERENCE VERSION

1   draw--but not required to draw--from the facts which have been established by either direct or

2   circumstantial evidence. In drawing inferences, you should exercise your common sense.

3        So, while you are considering the evidence presented to you, you are permitted to draw,

4   from the facts which you find to be proven, such reasonable inferences as would be justified in

5   light of your experience.

6                                  38. **Interrogatories**

7        You have heard and seen evidence in this case which is in the form of interrogatories.

8        Interrogatories are written questions posed by one side which call for written answers

9   under oath from the other side. Both the questions and answers are made prior to trial after the

10  case has begun in what is called pretrial discovery, and each side is entitled to seek such

11  discovery from the other.

12       You may consider a party's answers to interrogatories as evidence against a party who

13  made the answer, just as you would any other evidence which has been admitted in this case.

14       In this regard, you are not required to consider a party's answers to interrogatories as true,

15  nor are you required to give them more weight than any other evidence. It is up to you to

16  determine what weight, if any, should be given to the interrogatory answers which have been

17  admitted as evidence.

18                                  39. **Depositions**

19       Some of the testimony before you is in the form of depositions which have been received

20  in evidence.  A deposition is the sworn testimony of a witness taken before trial. The witness is

21  placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A

22  court reporter is present and records the questions and answers.

27

**CHARGING CONFERENCE VERSION**

1        This is part of the pretrial discovery, and each side is entitled to take depositions.

2   Deposition testimony is entitled to the same consideration and is to be judged, insofar as

3   possible, in the same way as if the witness had been present to testify.  Do not place any

4   significance on the behavior or tone of voice of any person reading the questions or answers.

5                          40. **Requests for Admission**

6        You have heard evidence in the form of certain "requests for admission" submitted by the

7   Plaintiffs. Requests for admission are written statements of fact submitted by one party prior to

8   trial to the opposing party.  In determining whether or not the Defendants are liable, you are not

9   permitted to disregard or disbelieve the contents of these requests, even in light of any other

10  evidence presented. The requests admitted in evidence are binding and conclusive on the

11  Defendants for the purposes of this trial.

12                 41. **Summaries and Charts Admitted as Evidence**

13       The Plaintiffs have presented exhibit 90 in the form of charts and summaries.  These

14  charts and summaries were admitted in place of the underlying documents that they represent in

15  order to save time and avoid unnecessary inconvenience. You should consider these charts and

16  summaries as you would any other evidence.

17               42. **Summaries and Charts Not Admitted as Evidence**

18       The Plaintiffs have also presented ▮▮▮▮▮▮▮▮ [MARKED AS] in order to make the

19  other evidence more meaningful and to aid you in considering the evidence. This document is no

20  better than the testimony or the documents upon which it is based, and is not itself independent

21  evidence. ▮▮[ANY OTHER DEMONSTRATIVE]▮▮

22       It is for you to decide whether the timeline chart correctly presents the information

23  contained in the testimony and in the exhibits on which they were based. You are entitled to

CHARGING CONFERENCE VERSION

1  consider the chart  if you find that it is of assistance to you in analyzing the evidence and

2  understanding the evidence.

3                           43. **Note Taking By Jurors**

4        I remind you that any notes you may have taken are simply to be used solely to assist you

5  and are not to substitute for your recollection of the evidence in the case. The fact that a

6  particular juror has taken notes entitles that juror's views to no greater weight than those of any

7  other juror and your notes are not to be shown to any other juror during your deliberations. If,

8  during your deliberations, you have any doubt as to any of the testimony, you will be permitted

9  to request that the official trial transcript which is being made of these proceedings be read to

10  you.

11                          44. **Law Enforcement Witness**

12        You have heard testimony of a number of individuals currently or formerly employed by

13  the Government.  The fact that a witness is employed by the Government does not mean that his

14  testimony is necessarily deserving of more or less consideration or greater or lesser weight than

15  that of any other witness.  It is your decision, after reviewing all the evidence, whether to accept

16  or reject the testimony of the witness and to give to that testimony whatever weight you find it

17  deserves.

18                          45. **Improper Considerations**

19      Your verdict must be based solely upon the evidence, or the lack of evidence, developed at

20  trial.  It would be improper for you to consider in reaching your decision any personal feelings

21  you may have about a party or witness's race, sex, age, national origin, religion, or pregnancy.

22                          46. **Deliberation and Verdict**

CHARGING CONFERENCE VERSION

1    The verdict must represent the considered judgment of each juror.  The verdict must be

2    unanimous as to each question on the special verdict form.

3        Before you attempt to answer the questions on the verdict form, you should read each

4    question completely and make sure that everybody understands each question.  Before you

5    answer the questions, you should deliberate in the jury room and discuss the evidence that relates

6    to that question.

7        After your deliberations are complete and you have got the verdict, you will indicate your

8    verdict on the extra copy of the special verdict form that has been distributed to you.  You will

9    all sign at the bottom of it and advise the Marshal that a verdict has been reached.  It is important

10    that you adhere strictly to the instructions on the form.  Please do not add anything that is not

11    called for by the special verdict form and please skip any questions that the instructions require

12    you to skip based on your answers to the previous questions.

13        The purpose of the questions on the verdict form is to help us—the Court, the attorneys,

14    the Plaintiffs, and the Defendants—understand what your findings are.  No inference is to be

15    drawn as to what the answers should be.  The questions are not to be taken as any indication that

16    I have any opinion as to how they should be answered.  I have no such opinion.

17        Now, finally, with respect to your deliberations.  Your first task will be to select a

18    foreperson.  The foreperson has no greater voice or authority than any other juror but is the

19    person who will communicate with the Court when questions arise.

20        The foreperson will send out any notes, and when the jury has reached a verdict, he or

21    she will notify the Marshal that the jury has a verdict, and you will come into open court and

22    give verdict.

23                    47. **Closing Comment**

30

CHARGING CONFERENCE VERSION

1      The most important part of this case, members of the jury, is the part that you as jurors

2      are now about to play as you deliberate on the issues of fact.  I know you will try the issues that

3      have been presented to you according to the oath that you have taken as jurors.  In that oath you

4      promised that you would well and truly try the issues joined in this case and a true verdict render.

5          As you deliberate, please listen to the opinions of your fellow jurors, and ask for an

6      opportunity to express your own views.  Every juror should be heard.  No one juror should hold

7      the center stage in the jury room and no one juror should control or monopolize the deliberations.

8      If, after listening to your fellow jurors and if, after stating your own view, you become convinced

9      that your view is wrong, do not hesitate because of stubbornness or pride to change your view.

10     On the other hand, do not surrender your honest convictions and beliefs solely because of the

11     opinions of your fellow jurors or because you are outnumbered.

12         Your decision must be unanimous.  You are not to reveal the standing of the jurors, that

13     is, the split of the vote, to anyone, including the Court, at any time during your deliberations.

14     Finally, I say this, not because I think it is necessary, but because it is the custom in this

15     courthouse to say this: you should treat each other with courtesy and respect during your

16     deliberations.

17         During your deliberations, you will have the exhibits available to you.  You may also ask

18     for portions of the testimony, but please try to be as specific as you can in requesting testimony.

19         If you have questions for the Court, just send me a note.  As I said, you have a copy of

20     this set of instructions to take with you into the jury room.

21         All litigants stand equal in this room.  All litigants stand equal before the bar of justice.

22     All litigants stand equal before you.  Your duty is to decide between these parties fairly and

23     impartially, and to see that justice is done.  Under your oath as jurors, you are not to be swayed

31

**CHARGING CONFERENCE VERSION**

1    by sympathy.  You should be guided solely by the evidence presented during the trial and the law

2    as I gave it to you, without regard to the consequences of your decision.  You have been chosen

3    to try the issues of fact and reach a verdict on the basis of the evidence or lack of evidence.  If

4    you let sympathy interfere with your clear thinking, there is a risk that you will not arrive at a

5    just verdict.  All parties to a civil lawsuit are entitled to a fair trial.  You must make a fair and

6    impartial decision so that you will arrive at the just verdict.

7          Members of the jury, I ask your patience for a few moments longer.  Please remain

8    patiently in the jury box without speaking to each other.















# EXHIBIT F

COURT EXHIBIT #

DATE: 12-18-12
TIME: 12:15 PM
CASE: 99-cv-3873

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

OBA HASSAN WAT BEY, ET AL.,                          :
                       Plaintiffs,               :                    99 Civ. 03873 (AJN)
                                 :                    01 Civ. 09406 (AJN)
           -v-                                 :
                                 :                    <u>VERDICT FORM</u>
                                 :

CITY OF NEW YORK, ET AL.,                            :
                       Defendants.              :
----------------------------------------------------------------- X

<u>Preliminary Question:</u>

Did any of the Plaintiffs prove by a preponderance of the evidence that his religion, or
association, as I have instructed you in the jury instructions, was a motivating factor in any
adverse employment actions alleged to have been taken against him?

        <u> X </u>  YES             ____ NO

*If you answered "No" to this Question, skip all of the other Questions on this form and proceed
to the signature page on the end of this form.  If you answered "Yes" to this Question, answer
the Questions below as further directed on this form.*

## <u>LIABILITY</u>

<u>Question 1: Religious Discrimination (Title VII, New York State and New York City Human
Rights Law Claims)</u>

Did any of the following Plaintiffs prove by a preponderance of the evidence that his religion
was a motivating factor in any adverse employment actions taken against him?  The adverse
employment actions allegedly at issue for each Plaintiff are listed in parenthesis.

    Q.1A:  Robert Watson (summary suspension; placement on modified duty; "Code Blue"
    status; termination).

    <u> X </u>  YES             ____ NO

    Q.1B:  Edward Ebanks ("Code Blue" status; termination).

    <u> X </u>  YES             ____ NO

    Q.1C:  Michael Nichols ("Code Blue" status; termination).

    <u> X </u>  YES             ____ NO

    Q.1D:  Herbert Hinnant ("Code Blue" status; termination).

    ⤬  YES                   ____ NO

Q.1E:  Alberto Rivera Bey (summary suspension; placement on modified duty; "Code Blue" status; termination).

    ⤬  YES                   ____ NO

Q.1F:  Hassan Abdallah ("Code Blue" status; termination).

    ⤬  YES                   ____ NO

## Question 2: Discrimination Based on the Religion of Persons Plaintiff Associated With (New York City Human Rights Law Claims)

Did any of the following Plaintiffs prove by a preponderance of the evidence that the religion of persons with whom he was known to associate was a motivating factor in any adverse employment actions taken against him?  The adverse employment actions allegedly at issue for each Plaintiff are listed in parenthesis.

Robert Watson (summary suspension; placement on modified duty; "Code Blue" status; termination).

    ⤬  YES                   ____ NO

Herbert Hinnant ("Code Blue" status; termination).

    ⤬  YES                   ____ NO

Alberto Rivera Bey (summary suspension; placement on modified duty; "Code Blue" status; termination).

    ⤬  YES                   ____ NO

Hassan Abdallah ("Code Blue" status; termination).

    ⤬  YES                   ____ NO

## Question 3: Aiding and Abetting Liability

*Skip Question 3 if you answered "No" to every Plaintiff listed in Questions  1 and  2, and proceed to Question 4.*

*If you answered "Yes" to any of Questions 1 and/or 2, as to any of the Plaintiffs listed in Question 3, consider Question 3 as to the Plaintiff for whom you answered "Yes."  If you*

*answered "No" as to any Plaintiff in <u>both</u> of Questions 1 and 2, do not answer the portion of Question 3 that relates to that Plaintiff.*

Did Plaintiff Robert Watson prove by a preponderance of the evidence that individual Defendant Bernard Kerik aided and abetted the violation of his rights?

    ☒  YES           ____ NO

Did Plaintiff Herbert Hinnant prove by a preponderance of the evidence that individual Defendant Bernard Kerik aided and abetted the violation of his rights?

    ☒  YES           ____ NO

Did Plaintiff Alberto Rivera Bey prove by a preponderance of the evidence that individual Defendant William Fraser aided and abetted the violation of his rights?

    ☒  YES           ____ NO

Did Plaintiff Hassan Abdallah prove by a preponderance of the evidence that individual Defendant Bernard Kerik aided and abetted the violation of his rights?

    ☒  YES           ____ NO

<u>Question 4: Section 1983—Free Association</u>

Did any of the following Plaintiffs prove by a preponderance of the evidence the elements of his Section 1983 claim that his rights to Free Association were violated by any adverse employment actions taken against him? The adverse employment actions allegedly at issue for each Plaintiff are listed in parenthesis.

Q.4A: Robert Watson (summary suspension; placement on modified duty; "Code Blue" status; termination).

    ☒  YES           ____ NO

Q.4B: Edward Ebanks ("Code Blue" status; termination).

    ☒  YES           ____ NO

Q.4C: Michael Nichols ("Code Blue" status; termination).

    ☒  YES           ____ NO

Q.4D:  Herbert Hinnant ("Code Blue" status; termination).

___✕___  YES                      _____ NO

Q.4E:  Alberto Rivera Bey (summary suspension; placement on modified duty; "Code Blue" status; termination).

___✕___  YES                      _____ NO

Q.4F:  Hassan Abdallah ("Code Blue" status; termination).

___✕___  YES                      _____ NO

Q.4G:  Pedro Rivera Sr. Bey (summary suspension; placement on modified duty; "Code Blue" status; termination).

___✕___  YES                      _____ NO

<u>Question 5: Section 1983—Equal Protection Clause</u>

Did any of the following Plaintiffs prove by a preponderance of the evidence the elements of his Section 1983 claim that his rights under the Equal Protection Clause were violated by any adverse employment actions taken against him?  The adverse employment actions allegedly at issue for each Plaintiff are listed in parenthesis.

Q.5A:  Robert Watson (summary suspension; placement on modified duty; "Code Blue" status; termination).  *Answer "No" if you answered "No" as to this Plaintiff in Questions 1A and 4A.  If you answered "Yes" as to this Plaintiff in either Question 1A or 4A, you should consider whether the Plaintiff has proved by a preponderance of the evidence the elements of his Equal Protection Clause claim as provided in the jury instructions and answer this question accordingly.*

___✕___  YES                      _____ NO

Q.5B:  Edward Ebanks ("Code Blue" status; termination).  *Answer "No" if you answered "No" as to this Plaintiff in Questions 1B and 4B.  If you answered "Yes" as to this Plaintiff in either Question 1B or 4B, you should consider whether the Plaintiff has proved by a preponderance of the evidence the elements of his Equal Protection Clause claim as provided in the jury instructions and answer this question accordingly.*

___✕___  YES                      _____ NO

Q.5C:  Michael Nichols ("Code Blue" status; termination).  *Answer "No" if you answered "No" as to this Plaintiff in Questions 1C and 4C.  If you answered "Yes" as to this Plaintiff in either Question 1C or 4C, you should consider whether the Plaintiff has proved by a preponderance of the evidence the elements of his Equal Protection Clause claim as provided in the jury instructions and answer this question accordingly.*

4

___✗___ YES          ____ NO

Q.5D:  Herbert Hinnant ("Code Blue" status; termination).  *Answer "No" if you answered "No" as to this Plaintiff in Questions 1D and 4D.  If you answered "Yes" as to this Plaintiff in either Question 1D or 4D, you should consider whether the Plaintiff has proved by a preponderance of the evidence the elements of his Equal Protection Clause claim as provided in the jury instructions and answer this question accordingly.*

___✗___ YES          ____ NO

Q.5E:  Alberto Rivera Bey (summary suspension; placement on modified duty; "**Code Blue**" status; termination).  *Answer "No" if you answered "No" as to this Plaintiff in Questions 1E and 4E.  If you answered "Yes" as to this Plaintiff in either Question 1E or 4E, you should consider whether the Plaintiff has proved by a preponderance of the evidence the elements of his Equal Protection Clause claim as provided in the jury instructions and answer this question accordingly.*

___✗___ YES          ____ NO

Q.5F:  Hassan Abdallah ("Code Blue" status; termination).  *Answer "No" if you answered "No" as to this Plaintiff in Questions 1F and 4F.  If you answered "Yes" as to this Plaintiff in either Question 1F or 4F, you should consider whether the Plaintiff has proved by a preponderance of the evidence the elements of his Equal Protection Clause claim as provided in the jury instructions and answer this question accordingly.*

___✗___ YES          ____ NO

Q.5G:  Pedro Rivera Sr. Bey (summary suspension; placement on modified duty; "Code Blue" status; termination).

___✗___ YES          ____ NO

## Question 6: Section 1983—Establishment Clause

Did any of the following Plaintiffs prove by a preponderance of the evidence the elements of his Section 1983 claim that his rights under the Establishment Clause were violated by any adverse employment actions taken against him?  The adverse employment actions allegedly at issue for each Plaintiff are listed in parenthesis.

Q.6A:  Robert Watson (summary suspension; placement on modified duty; "Code Blue" status; termination).  *Answer "No" if you answered "No" as to this Plaintiff in Question 1A.  If you answered "Yes" as to this Plaintiff in Question 1A, you should consider whether the Plaintiff has proved by a preponderance of the evidence the elements of his Establishment Clause claim as provided in the jury instructions and answer this question*

*accordingly.*

_____ YES                    ⨯ NO

Q.6B:  Edward Ebanks ("Code Blue" status; termination).  *Answer "No" if you answered "No" as to this Plaintiff in Question 1B.  If you answered "Yes" as to this Plaintiff in Question1B, you should consider whether the Plaintiff has proved by a preponderance of the evidence the elements of his Establishment Clause claim as provided in the jury instructions and answer this question accordingly.*

_____ YES                    ⨯ NO

Q.6C:  Michael Nichols ("Code Blue" status; termination).  *Answer "No" if you answered "No" as to this Plaintiff in Question 1C.  If you answered "Yes" as to this Plaintiff in Question 1C, you should consider whether the Plaintiff has proved by a preponderance of the evidence the elements of his Establishment Clause claim as provided in the jury instructions and answer this question accordingly.*

_____ YES                    ⨯ NO

Q.6D:  Herbert Hinnant ("Code Blue" status; termination).  *Answer "No" if you answered "No" as to this Plaintiff in Question 1D.  If you answered "Yes" as to this Plaintiff in Question 1D, you should consider whether the Plaintiff has proved by a preponderance of the evidence the elements of his Establishment Clause claim as provided in the jury instructions and answer this question accordingly.*

_____ YES                    ⨯ NO

Q.6E:  Alberto Rivera Bey (summary suspension; placement on modified duty; "Code Blue" status; termination).  *Answer "No" if you answered "No" as to this Plaintiff in Question 1E.  If you answered "Yes" as to this Plaintiff in Question 1E, you should consider whether the Plaintiff has proved by a preponderance of the evidence the elements of his Establishment Clause claim as provided in the jury instructions and answer this question accordingly.*

_____ YES                    ⨯ NO

Q.6F:  Hassan Abdallah ("Code Blue" status; termination).  *Answer "No" if you answered "No" as to this Plaintiff in Question 1F.  If you answered "Yes" as to this Plaintiff in Question 1F, you should consider whether the Plaintiff has proved by a preponderance of the evidence the elements of his Establishment Clause claim as provided in the jury instructions and answer this question accordingly.*

_____ YES                    ⨯ NO

Q.6G:  Pedro Rivera Sr. Bey (summary suspension; placement on modified duty; "Code

6

Blue" status; termination). *Answer "No" if you answered "No" as to this Plaintiff in Question 5G. If you answered "Yes" as to this Plaintiff in Question 5G, you should consider whether the Plaintiff has proved by a preponderance of the evidence the elements of his Establishment Clause claim as provided in the jury instructions and answer this question accordingly.*

_____ YES          ✗  NO

*Answer Questions 7 and 8 only if you answered "Yes" to one or more of Questions 4, 5, or 6. If you answered "No" to all of these questions, but answered "Yes" to one or more of Questions 1 or 2, skip this section and proceed to the section of this form headed "DAMAGES," below. If you answered "No" to all of Questions 1, 2, 4, 5, and 6 (and skipped all of Question 3), skip the remaining Questions and proceed to the signature page at the end of this document.*

<u>Question 7: Participation by Individual Defendants Kerik and Fraser</u>

Did Plaintiff Robert Watson prove by a preponderance of the evidence that Bernard Kerik actually participated in the violation of his rights under § 1983? *Answer this question only if you have answered "Yes" to one or more of Questions 4A, 5A, or 6A as relating to this Plaintiff.*

✗  YES          _____ NO

Did Plaintiff Edward Ebanks prove by a preponderance of the evidence that Bernard Kerik actually participated in the violation of his rights under § 1983? *Answer this question only if you have answered "Yes" to one or more of Questions 4B, 5B, or 6B as relating to this Plaintiff.*

✗  YES          _____ NO

Did Plaintiff Michael Nichols prove by a preponderance of the evidence that Bernard Kerik actually participated in the violation of his rights under § 1983? *Answer this question only if you have answered "Yes" to one or more of Questions 4C, 5C, or 6C as relating to this Plaintiff.*

✗  YES          _____ NO

Did Plaintiff Herbert Hinnant prove by a preponderance of the evidence that Bernard Kerik actually participated in the violation of his rights under § 1983? *Answer this question only if you have answered "Yes" to one or more of Questions 4D, 5D, or 6D as relating to this Plaintiff.*

✗  YES          _____ NO

Did Plaintiff Alberto Rivera Bey prove by a preponderance of the evidence that William Fraser actually participated in the violation of his rights under § 1983? *Answer this question only if you have answered "Yes" to one or more of Questions 4E, 5E, or 6E as relating to this Plaintiff.*

   ✕  YES        \_\_\_\_ NO

Did Plaintiff Hassan Abdallah prove by a preponderance of the evidence that Bernard Kerik actually participated in the violation of his rights under § 1983? *Answer this question only if you have answered "Yes" to one or more of Questions 4F, 5F, or 6F as relating to this Plaintiff.*

   ✕  YES        \_\_\_\_ NO

Did Plaintiff Pedro Rivera Sr. Bey prove by a preponderance of the evidence that Bernard Kerik actually participated in the violation of his rights under § 1983? *Answer this question only if you have answered "Yes" to one or more of Questions 4G, 5G, or 6G as relating to this Plaintiff.*

   ✕  YES        \_\_\_\_ NO

<u>Question 8: Custom or Policy of the City of New York</u>

Did Plaintiff Robert Watson prove by a preponderance of the evidence that the violation of his rights under § 1983 was the result of a policy or custom of City of New York? *Answer this question only if you have answered "Yes" to one or more of Questions 4A, 5A, or 6A as relating to this Plaintiff.*

   ✕  YES        \_\_\_\_ NO

*If you checked "Yes" based on the determination that one or more policymaker(s) took acts causing the deprivation of Plaintiffs' rights, with deliberate indifference to those rights, as provided in the jury instructions, check which policymaker(s) whose actions you are relying on in reaching this conclusion. Check all that apply.*

   ✕  Bernard Kerik      ✕ Michael Caruso

Did Plaintiff Edward Ebanks prove by a preponderance of the evidence that that the violation of his rights under § 1983 was the result of a policy or custom of City of New York? *Answer this question only if you have answered "Yes" to one or more of Questions 4B, 5B, or 6B as relating to this Plaintiff.*

   ✕  YES        \_\_\_\_ NO

8

*If you checked "Yes" based on the determination that one or more policymaker(s) took acts causing the deprivation of Plaintiffs' rights, with deliberate indifference to those rights, as provided in the jury instructions, check which policymaker(s) whose actions you are relying on in reaching this conclusion. Check all that apply.*

___✗___ Bernard Kerik          ___✗___ Michael Caruso

Did Plaintiff Michael Nichols prove by a preponderance of the evidence that the violation of his rights under § 1983 was the result of a policy or custom of City of New York? *Answer this question only if you have answered "Yes" to one or more of Questions 4C, 5C, or 6C as relating to this Plaintiff.*

___✗___ YES          _____ NO

*If you checked "Yes" based on the determination that one or more policymaker(s) took acts causing the deprivation of Plaintiffs' rights, with deliberate indifference to those rights, as provided in the jury instructions, check which policymaker(s) whose actions you are relying on in reaching this conclusion. Check all that apply.*

___✗___ Bernard Kerik          ___✗___ Michael Caruso

Did Plaintiff Herbert Hinnant prove by a preponderance of the evidence that the violation of his rights under § 1983 was the result of a policy or custom of City of New York? *Answer this question only if you have answered "Yes" to one or more of Questions 4D, 5D, or 6D as relating to this Plaintiff.*

___✗___ YES          _____ NO

*If you checked "Yes" based on the determination that one or more policymaker(s) took acts causing the deprivation of Plaintiffs' rights, with deliberate indifference to those rights, as provided in the jury instructions, check which policymaker(s) whose actions you are relying on in reaching this conclusion. Check all that apply.*

___✗___ Bernard Kerik          ___✗___ Michael Caruso

Did Plaintiff Alberto Rivera Bey prove by a preponderance of the evidence that the violation of his rights under § 1983 was the result of a policy or custom of City of New York? *Answer this question only if you have answered "Yes" to one or more of Questions 4E, 5E, or 6E as relating to this Plaintiff.*

___✗___ YES          _____ NO

*If you checked "Yes" based on the determination that one or more policymaker(s) took acts causing the deprivation of Plaintiffs' rights, with deliberate indifference to those*

9

*rights, as provided in the jury instructions, check <u>which</u> policymaker(s) whose actions you are relying on in reaching this conclusion.  Check all that apply.*

_____ William Fraser        ☒ Michael Caruso

Did Plaintiff Hassan Abdallah prove by a preponderance of the evidence that the violation of his rights under § 1983 was the result of a policy or custom of City of New York?  *Answer this question <u>only</u> if you have answered "Yes" to one or more of Questions 4F, 5F, or 6F  as relating to this Plaintiff.*

☒ YES                  _____ NO

*If you checked "Yes" based on the determination that one or more policymaker(s) took acts causing the deprivation of Plaintiffs' rights, with deliberate indifference to those rights, as provided in the jury instructions, check <u>which</u> policymaker(s) whose actions you are relying on in reaching this conclusion.  Check all that apply.*

☒ Bernard Kerik           ☒ Michael Caruso

Did Plaintiff Pedro Rivera Sr. Bey prove by a preponderance of the evidence that the violation of his rights under § 1983 was the result of a policy or custom of City of New York?  *Answer this question <u>only</u> if you have answered "Yes" to one or more of Questions 4G, 5G, or 6G as relating to this Plaintiff.*

☒ YES                  _____ NO

*If you checked "Yes" based on the determination that one or more policymaker(s) took acts causing the deprivation of Plaintiffs' rights, with deliberate indifference to those rights, as provided in the jury instructions, check <u>which</u> policymaker(s) whose actions you are relying on in reaching this conclusion.  Check all that apply.*

☒ Bernard Kerik           ☒ Michael Caruso

## **DAMAGES**

*If you have answered "No" to all of the Questions above (that you have not been directed to skip), skip this section entirely and proceed to the signature page at the end of this document.*

*If you have answered "Yes" to one or more of the Questions above, answer Questions 9, 10 ,11, 12, and 13 as directed below.  Do so <u>only</u> as to those Plaintiffs for whom you have answered "Yes" to one or more of the Questions above.  For any Plaintiffs for whom you have provided only "No" answers to the Questions above, leave the areas of the Questions 9, 10, 11, and 12 that apply to those Plaintiffs <u>blank</u>.*

<u>Question 9</u>
Did each of the Plaintiffs establish, by a preponderance of the evidence, that he is entitled to
back pay as defined in section 27 of the jury instructions?

Please check either YES or NO in the appropriate box.  If you check YES with regard to any
Plaintiff, specify the amount of back pay to which that Plaintiff is entitled in the box marked
"AMOUNT."  If you check NO with regard to any Plaintiff, leave the "AMOUNT" box blank
for that Plaintiff.

| Plaintiff | YES | NO | AMOUNT |
|---|---|---|---|
| Robert Watson | X | | $488,000 |
| Pedro Rivera Sr. Bey | X | | $463,000 |
| Alberto Rivera Bey | X | | $405,000 |
| Hassan Abdallah | X | | $463,000 |
| Edward Ebanks | X | | $300,000 |
| Michael Nichols | X | | $379,000 |
| Herbert Hinnant | X | | $300,000 |

<u>Question 10</u>
Did each of the Plaintiffs establish, by a preponderance of the evidence, that he is entitled to
front pay as defined in section 28 of the jury instructions?

Please check either YES or NO in the appropriate box.  If you check YES with regard to any
Plaintiff, specify the amount of front pay to which that Plaintiff is entitled in the box marked
"AMOUNT."  If you check NO with regard to any Plaintiff, leave the "AMOUNT" box blank
for that Plaintiff.

| Plaintiff | YES | NO | AMOUNT |
|---|---|---|---|
| Robert Watson | | X | |
| Pedro Rivera Sr. Bey | | X | |
| Alberto Rivera Bey | | X | |
| Hassan Abdallah | | X | |

11

| Edward Ebanks | | ✕ | |
| Michael Nichols | | ✕ | |
| Herbert Hinnant | | ✕ | |

Question 11

Did each of the Plaintiffs establish, by a preponderance of the evidence, that he is entitled to compensatory damages as defined in section 29 of the jury instructions?

Please check either YES or NO in the appropriate box.  If you check YES with regard to any Plaintiff, specify the amount of compensatory damages to which that Plaintiff is entitled in the box marked "AMOUNT."  If you check NO with regard to any Plaintiff, leave the "AMOUNT" box blank for that Plaintiff.

| Plaintiff | YES | NO | AMOUNT |
|---|---|---|---|
| Robert Watson | | ✕ | |
| Pedro Rivera Sr. Bey | | ✕ | |
| Alberto Rivera Bey | | ✕ | |
| Hassan Abdallah | | ✕ | |
| Edward Ebanks | | ✕ | |
| Michael Nichols | | ✕ | |
| Herbert Hinnant | | ✕ | |

Question 12    SKIP

*Skip this question if you answered yes to Questions 9, 10, or 11.*

Did each of the Plaintiffs establish, by a preponderance of the evidence, that he is entitled to nominal damages as defined in section 33 of the jury instructions?

Please check either YES or NO in the appropriate box.

| Plaintiff | YES | NO |
|---|---|---|
| Robert Watson | | |

12

| | | |
|---|---|---|
| Pedro Rivera Sr. Bey | | |
| Alberto Rivera Bey | | |
| Hassan Abdallah | | |
| Edward Ebanks | | |
| Michael Nichols | | |
| Herbert Hinnant | | |

Question 13
Did each Plaintiffs establish, by a preponderance of the evidence, that the individual **Defendants** are liable for punitive damages as defined in section 34 of the jury instructions?

a. As against Bernard Kerik

| Plaintiff | YES | NO | AMOUNT |
|---|---|---|---|
| Robert Watson | ✕ | | $100,000 |
| Pedro Rivera Sr. Bey | ✕ | | $100,000 |
| | | | |
| Hassan Abdallah | ✕ | | $100,000 |
| Edward Ebanks | ✕ | | $100,000 |
| Michael Nichols | ✕ | | $100,000 |
| Herbert Hinnant | ✕ | | $100,000 |

b. As against William Fraser

| Plaintiff | YES | NO | AMOUNT |
|---|---|---|---|
| Alberto Rivera Bey | ✕ | | $100,000 |

13

**After completing the form, each juror who agrees with this verdict must sign this page:**

_____
Foreperson

Anne G. McDermott

Debra Jean Williams

Naomi Sandw

14















# EXHIBIT G

**THE CITY OF NEW YORK**
**DEPARTMENT OF CORRECTION**
2 WASHINGTON STREET, 10TH FLOOR
NEW YORK, NY  10004

**BERNARD B. KERIK**
COMMISSIONER

**ALAN VENGERSKY**
ASSISTANT COMMISSIONER FOR
PERSONNEL

June 11, 1999

Yashua Amen Shekhem' El Bey
150 West 136th Street, Suite #2
New York, N.Y. 10030

SS#█████████

Dear Officer Shekhem' El Bey:

Pursuant to the New York Civil Service Law Section 73, you are being reinstated to the position of Correction Officer effective Monday, June 14, 1999.  You will be assigned to the Correction Academy for retraining and then reassigned to the Adolescent Reception Detention Center (ARDC) upon completion of your training.

Upon completion of your personnel processing, you will report to Captain Ralph Greenberg at the Correction Academy.

Upon your return to full duty you are responsible for ensuring that your personnel office notifies the Payroll Section at 2 Washington Street, to restore you to active pay status.  You also must contact the Employee Benefits Section at (212) 487-6676, to activate your health coverage.

Very truly yours,

Alan Vengersky

AV:lh
c:    Sheila Vaughan, Chief of Administration
      Deborah J. Kurtz, Deputy Commissioner, Training, Organizational, Development
          & T.E.A.M.S.
      Elmer Toro, Deputy Commissioner, Investigations & Trials
      John Scudiero, Deputy Warden, HMD

Michael Caruso, Inspector General
Captain Ellen Murphy, Office of Chief of Administration
Captain Ralph Greenberg, Correction Academy
Vivienne Tollin, Deputy Director, HMD
Amelia Jefferson, assistant Director of Personnel
Carolyn Berry, Assistant Director of Personnel
Ira Kleinburd, Section Supervisor, Payroll
Dounia Alfred, Section Supervisor, Monitoring and Support
Judy Chawkins, Section Supervisor, CMM
Rodney B. Benson, Section Supervisor, Control & Services
Barbara Julius, Section Supervisor, Employee Benefits
Personnel File















# EXHIBIT H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

Jawan Akil Bey, Agnes Bey, Ajamu Jabari Bey, Yashua
Amen Shekhem'El-Bey, Zaimah El, Ntchawaidumela Bey,
et al., Damaged Proper Party(s),

                               Plaintiffs,

                   -against-

CITY OF NEW YORK, Rudolph Giuliani, Mayor/Chief
Magistrate of the City of New York, Michael Caruso-
Deputy Inspector General of the City of New York, CITY
OF NEW YORK DEPARTMENT OF CORRECTION,
Bernard Kerik Commissioner, Carl Dicarlo-Deputy
Commissioner of Trials and Litigation, CITY OF NEW
YORK OFFICE OF ADMINISTRATIVE TRIALS AND
HEARINGS, Rose Luttan Rubin-Chief Administrative
Law Judge of the OFFICE OF ADMINISTRATIVE
TRALS AND HEARINGS, CITY OF NEW YORK
OFFICE OF LABOR RELATIONS, James F. Hanley-
Commissioner of the OFFICE OF LABOR RELATIONS,
CORRECTION OFFICER'S BENEVOLENT
ASSOCIATION INC. of the CITY OF NEW YORK,
Norman Seabrook-Correction officer/President of COBA,
et. al. In their individual and official capacities, tortfeasors,

                             Defendants.

------------------------------------------------------------------------X

**STIPULATION
OF DISMISSAL**

**98 Civ.
1353(NRB)(HBP)**

      Plaintiff Yashua Amen Shekhem'El-Bey, the only remaining plaintiff in this

action, and Defendants, hereby agree that, as to any and all issues remaining in this matter, the

Verified Complaint shall be dismissed with prejudice as to any and all claims which arose on or

before the date that Plaintiffs filed the Verified Complaint herein, said date being February 24,

1998, except that the parties agree that this stipulation of dismissal shall have no collateral or

preclusive effect in 97 Civ. 4177 (S.D.N.Y.), 98 Civ. 2745 (S.D.N.Y.), or 99 Civ. 12490

(S.D.N.Y.)

YASHUA AMEN SHEKHEM'EL-BEY
c/o 150 West 136th Street, Suite 2
New York, New York 10030
Plaintiff pro se
September 5, 2000

MICHAEL D. HESS
Corporation Counsel of the
    City of New York
Attorney for Defendants
100 Church Street, Room 5-247
New York, NY 10007
September 5, 2000

By: _____
    Yashua Amen Shekhem'El-Bey
    Pro se

By: _____
    David M. Steiner
    Assistant Corporation Counsel

- 2 -















# EXHIBIT I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

YASHUA AMEN SHEKHEM'EL-BEY,

               Plaintiff,

    - against -

CITY OF NEW YORK, ET AL.,

               Defendants.

------------------------------------------------x

05 Civ. 7270 (TPG)

**ORDER**

     Pursuant to plaintiff's request in letters dated November 21, 2005 and April 13, 2006, this case is dismissed without prejudice.

SO ORDERED.

Dated:    New York, New York
          April 19, 2006

                         THOMAS P. GRIESA
                         U.S.D.J

MICROFILM
APR 21 2006 · 9:00 AM















# EXHIBIT J

CLOSED,RELATED

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:05-cv-07270-TPG

Shekhem' El-Bey v. City of New York et al        Date Filed: 08/17/2005

Assigned to: Judge Thomas P. Griesa        Date Terminated: 04/20/2006

Demand: $80,000,000        Jury Demand: Plaintiff

Cause: 42:2000e Job Discrimination (Employment)        Nature of Suit: 442 Civil Rights: Jobs

Jurisdiction: Federal Question

**Plaintiff**

**Yashua Amen Shekhem' El-Bey**      represented by     **Yashua Amen Shekhem' El-Bey**
244 Fifth Ave
Suite 200
New York, NY 10001
(212)252-2641
PRO SE

V.

**Defendant**

**City of New York**

**Defendant**

**Rudolph Giuliani**
*Mayor of the City of New York*

**Defendant**

**Bernard B. Kerik**
*Commissioner of the New York City
Department of Correction (DOC)*

**Defendant**

**Michael Caruso**
*Inspector General of DOC*

**Defendant**

**Carl DiCarlo**
*Assistant Commissioner of Trials and
Litigation, DOC*

**Defendant**

**Jack W. Louden**
*Supervising Attorney for DOC*

**Defendant**

**Rose Luttan Ruben**
*Chief Administrative Law Judge of the*
*Office of Administrative Trails and*
*Hearings of the City of New York*
*(OATH)*

**Defendant**

**Diedra L. Tompkins**
*Administrative Law Judge (ALJ) of*
*OATH*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/17/2005 | 1 | COMPLAINT against Diedra L. Tompkins, City of New York, Rudolph Giuliani, Bernard B. Kerik, Michael Caruso, Carl DiCarlo, Jack W. Louden, Rose Luttan Ruben. (Filing Fee $ 250.00, Receipt Number 552980)Document filed by Yashua Amen Shekhem' El-Bey.(lb, ) (Entered: 08/18/2005) |
| 08/17/2005 | | SUMMONS ISSUED as to Diedra L. Tompkins, City of New York, Rudolph Giuliani, Bernard B. Kerik, Michael Caruso, Carl DiCarlo, Jack W. Louden, Rose Luttan Ruben. (lb, ) (Entered: 08/18/2005) |
| 08/17/2005 | | CASE REFERRED TO Judge Thomas P. Griesa as possibly related to 1:04-cv-1572. (lb, ) (Entered: 08/18/2005) |
| 08/17/2005 | 2 | STATEMENT OF RELATEDNESS re: that this action be filed as related to 04-cv-1572. Document filed by Yashua Amen Shekhem' El-Bey.(lb, ) (Entered: 08/18/2005) |
| 08/26/2005 | | Magistrate Judge Debra C. Freeman is so designated. (jeh, ) (Entered: 08/29/2005) |
| 08/26/2005 | | CASE ACCEPTED AS RELATED TO 04cv1572. Notice of Assignment to follow. (jeh, ) (Entered: 08/29/2005) |
| 08/26/2005 | 3 | NOTICE OF CASE ASSIGNMENT to Judge Thomas P. Griesa. Judge Unassigned no longer assigned to the case. (jeh, ) (Entered: 08/29/2005) |
| 08/26/2005 | | Mailed notice to the attorney(s) of record. (jeh, ) (Entered: 08/29/2005) |
| 08/31/2005 | 4 | AMENDED COMPLAINT amending 1 Complaint, against Diedra L. Tompkins, City of New York, Rudolph Giuliani, Bernard B. Kerik, Michael Caruso, Carl DiCarlo, Jack W. Louden, Rose Luttan Ruben.Document filed by Yashua Amen Shekhem' El-Bey. Related document: 1 Complaint, filed by Yashua Amen Shekhem' El-Bey.(jco, ) (Entered: 09/06/2005) |
| 04/20/2006 | 5 | ORDER that purs. to plaintiff's request in letters dated 11/21/05 and 4/13/06 this case is dismissed without prejudice. (Signed by Judge Thomas P. Griesa on 4/19/06) (dle, ) (Entered: 04/21/2006) |
| 10/02/2008 | 6 | SUMMARY ORDER: It is hereby Ordered that petitioner's Rule 60(b) Motion shall be and hereby is denied. It is further Ordered that petitioner's Motion to reopen the |

| | | |
|---|---|---|
| | | 2005 Action shall be and hereby is denied. It is further Ordered that petitioner's Motion for Recusal shall be and hereby is denied. (Signed by Judge John E. Sprizzo on 9/30/2008) (jfe) (Entered: 10/02/2008) |
| 02/27/2009 | 7 | PRO SE MEMORANDUM dated 2/24/09 re: CHANGE OF ADDRESS for Yashua Amen Shekhem' El-Bey. New Address: 1044 Boynton Avenue, Apt #2C, Bronx, NY, 10472. (mro) (Entered: 02/27/2009) |
| 08/03/2009 | 8 | PRO SE MEMORANDUM dated 8/3/09 re: CHANGE OF ADDRESS for Yashua Amen Shekhem' El-Bey. New Address: 244 Fifth Avenue, Suite 200, New York, New York, 10001. (mro) (Entered: 08/03/2009) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/29/2014 14:51:48 | | |
| **PACER Login:** | us5070 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:05-cv-07270-TPG |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |