













# EXHIBIT K

DISTRICT COURT OF THE UNITED STATES
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- )
Yashua Amen Shekhem'El-Bey                                      )
                                                               )
                            Plaintiff                          )
                     vs.                                       )
City of New York; Rudolph Giuliani, Mayor of the City of       )
New York; Bernard B. Kerik, Commissioner of the New           )
York City Department of Correction (DOC); Michael             )
Caruso, Inspector General of DOC; Carl DiCarlo, Assistant      )
Commissioner of Trials and Litigation, DOC; Jack W.           )
Louden, Supervising Attorney for DOC; Rose Luttan              )
Ruben, Chief Administrative Law Judge of the Office of         )
Administrative Trials and Hearings of the City of New         )
York (OATH); Diedra L. Tompkins, Administrative Law            )
Judge (ALJ) of OATH;                                           )
                                                               )
                            Defendants                         )
-------------------------------------------------------------- )

Incorporated Case

**Civil Action No. 05 CV 7270**

**Verified Amended Civil Complaint**

**JURY TRIAL DEMANDED HEREIN**



AUG 3 1 2005

PRO SE OFFICE

## COMPLAINT

1.      COMES NOW Plaintiff, Yashua Amen Shekhem'El-Bey, a citizen of the United States of America, proceeding In Propria Persona Sui Juris (Pro Se) and complaining of municipal Defendants as follows:

2.      Based on new information and exculpatory evidence, which is public record in a pending case in <u>Kelly, et. al. v. City of New York, et. al.</u>, 01 Civ. 8906 (TPG) giving rise to a new and subsequent action in <u>Kelly, et al. v. City of New York, et. al.</u>, 04 Civ. 1572 (TPG); and events leading up to the subsequent media exposure of the infamous Bernard B Kerik corruption tax Scandal during the month of December of 2004 through January 2005, fully establishes Plaintiff's constitutional and state law claims in this new action and its progeny in Shekhem'El-Bey v. City of New York, et. al. 00 Civ. 9260 (JES).

3.      At all time relevant hereto, both Kelly, et. al. v. City of New York, et. al. cases, 01 Civ. 8906 (TPG) and 04 Civ 1572 (TPG) is parallel to Shekhem'El-Bey v. City of New York, et. al. 00 Civ. 9260 (JES), as they, for the most part and among other things, are based upon the

same underlying factual circumstances with respect to this new action based on new information and exculpatory evidence as part of the public record derived from the <u>Kelly</u> case, Kelly, et. al. v. City of New York, et. al. 01 Civ. 8906 (TPG)..

4.    This action seeks to vindicate Plaintiff's rights pursuant to the First, Fifth and Sixth amendment as purview through and in violation of the "privilege and immunity", "due process" and equal protection" clause of the Fourteenth Amendment to the Unites States Constitution and 42 U.S.C. §§ 1981, 1983, 1985 (3) and 1986, as applied to municipal Defendants.

5.    The Defendants, and each of them, are or were members, agents and/or employees of the City of New York, who under color of state law deprived Plaintiff of due process of law, equal protection of the law, the privilege and immunity, and for discrimination based on national origin, religious belief and association and for refusing or neglecting to prevent that deprivation and denial, to include but not limited to, abuse of process, intentional and negligent infliction of emotional distress by among other things placing Plaintiff's life in danger and conspiracy to deprive Plaintiff of rights protected under the United States Constitution and the New York State Constitution as will be Moor fully specified below.

6.    This civil action also seek monetary relief for actual, compensatory and punitive damages, as well as declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 against Defendants for committing acts under color of state law in violation of the United States Constitution, the New York State Constitution and 42 U.S.C. §§ 1981, 1983, 1985 (3) and 1986.

## <u>JURISDICTION</u>

7.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. §§ 1981, 1983, 1985 (3) and 1986;

8.    Jurisdiction of this Court is also conferred under 28 U.S.C. §§ 2201 and 2201;

9.    The All Writs Act, 28 U.S.C. § 1651 (a) in support of this Court's jurisdiction;

10.    Pursuant to 28 U.S.C. § 453 for the Judge and/or Magistrate to uphold and to administer Justice equally to all and without favoritism to none;

11.    This Court also has pendant state supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to the timely filed notice of claim based on new information and exculpatory evidence;

12.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events, incidents and/or omissions with respect to new information, facts and exculpatory evidence giving rise to the claims that occurred in this district;

## THE PARTIES

### PLAINTIFF

13.    Plaintiff, Yashua Amen Shekhem'El-Bey, herein after Plaintiff, is a citizen of the United States of America and a Citizen of New York State whose Nationality is Moorish American and whose religious belief is Islam and was employed by the Defendant City of New York within the Department of Correction since on or about June 13, 1983 and is a United States Army Veteran who was honorably discharged from serving his Country, the United States of America. Plaintiff has a principle place of address to receive mail at c/o 244 Fifth Avenue, Suite 200, New York, New York 10001.

### DEFENDANTS

14.    Defendant City of New York, herein after City, is a municipal Corporation local governmental unit chartered by the State of New York and it is a recipient of federal funds. The City operates the Department of Corrections, the Department of Investigations and the Office of Administrative Trials and Hearings, herein after DOC, DOI and OATH, respectively, for whom all the individual municipal Defendants were working and had influence, either directly or indirectly, when they engaged in the colorable acts as a custom, policy and practice, which have

precipitated this action. The City has a principal place of address at the Corporation Counsel of the City of New York, Law Department, 100 Church Street, 4th Floor, New York 10007.

15.    Defendant Rudolph Giuliani, herein after Giuliani, at all time relevant hereto, is or was the Mayor of the City and is or was the Chief Executive Magistrate of the City of New York and is being sued in his official and/or individual capacity.  Giuliani's last known principle place of business is or was City Hall and may receive mail or service at the Corporation Counsel of the City, Law Department, 100 Church Street, and 4th Floor, New York, New York 10007.

16.    Defendant Bernard Kerik, herein after Kerik, at all time relevant hereto, is or was the Commissioner of DOC and is being sued in his official and/or individual capacity. Kerik's last known principle place of business is or was 60 Hudson Street, New York 10013.

17.    Defendant Michael Caruso, herein after Caruso, was at all time relevant hereto a municipal employee of the City and worked within DOI and as the Inspector General for DOC. and is being sued in his official and/or individual capacity. Caruso's last known place of business is or was 60 Hudson Street, New York, 10013.

18.    Defendant Carl DiCarlo, herein after DiCarlo, at all time relevant hereto, is or was the Assistant Commissioner for Trials and Litigation of DOC. and is being sued in his official and/or individual capacity. DiCarlo's last known place of business is or was 60 Hudson Street, New York 10013.

19.    Defendant Jack W. Louden, herein after Louden, at all time relevant hereto, is or was the Supervising Attorney in the Office of Trials and Litigation for DOC. Louden's last known place of business is or was 60 Hudson Street, New York 10013.

20.    Rose Luttan Ruben, herein after Ruben, at all time relevant hereto, is or was an employee of the City and is or was an Attorney under the Bar of the State of New York and holds or held a City title of Chief Administrative Law Judge with OATH of the City that is governed under Mayor's Executive Order 32 and Chapter 45 and 54A of the City's Charter

known as the City Administrative Procedures Act, herein after CAPA, which is not under the Unified Court System nor under the New York State Constitution. Ruben's last known place of business is or was 40 Rector Street, New York, New York 10006.

21.    Diedra L. Tompkins, herein after Tompkins, at all time relevant hereto, is or was an employee of the City and is or was an Attorney under the Bar of the State of New York and holds or held a City title of Administrative Law Judge with OATH of the City that is governed under Mayor's Executive Order 32 and Chapter 45 and 54A of the City's Charter known as CAPA, which is not under the Unified Court System nor under the New York State Constitution. Tompkins's last known place of business is or was 40 Rector Street, New York, New York 10006.

## **Conditions Precedent**

22.    This action is commenced within the three (3) year statute of limitation from December 2003 with respect to new information and exculpatory evidence brought out during discovery in Kelly, et. al. v. City of New York, et. al., 01 Civ. 8906, culminating in another Kelly action in Kelly, et. al. v. City of New York, et. al., 04 Civ. 1572 following discovery, as well as, subsequent events leading up to and occurring on or about December 2004 through on or about January 2005 regarding the infamous Bernard B. Kerik corruption tax Scandal, both in print and televised media revealing additional new information and exculpatory evidence for the first time that was not previously known to Plaintiff as it was withheld by Defendants with respect to Shekhem'El-Bey v. City of New York, et. al. 00 Civ. 9260 (JES), all giving rise to this new action, particularly as the Plaintiff's Notice of Claim (corrected / amended) dated February 12, 2005 served upon the City has been received by the City of New York on February 15, 2005 and subsequent Letter of Acknowledgment dated March 10, 2005 from the City was received by Plaintiff. However, the City has not acted and/or failed to act to resolve or settle the matter within or after the 30-day statutory time frame after service of Plaintiff's Notice of Claim

## FACTS

23.    Plaintiff is a Natural Living Breathing Human Being, is over the age of eighteen, and is a citizen of the United States of American and citizen of New York State, and is properly identified by attribute and title and/or appellation in the above-entitled caption, as Yashua Amen Shekhem'El-Bey.

24.    Plaintiff held a competitive class civil service position, as a New York City Correction Officer.

25.    Plaintiff possessed a property interest in his employment as a tenured New York City Correction Officer with civil service status and was appointed on or about June 13, 1983.

26.    Plaintiff is a member of the Moorish American religious faith and his Nationality is Moorish American and National origin is Moor, and is a member of the Moorish Science Temple of America.

27.    On or about December of 1993, Plaintiff submitted to DOC through the United States mail an improvised non-government, letter styled document entitled "certificate of exemption from withholding in lieu of form W-4" with other accompanying documents in which Plaintiff claimed to not have a tax liability or non-tax liability status or exempt, which appeared under Plaintiff's former name, as James Mercer.

28.    At all time relevant hereto, Plaintiff became aware of a similar concurrent case in Kelly, et. al. v. City of New York, et. al., 01 Civ. 8906 (TPG) with respect to Shekhem'El-Bey v. City of New York, et. al., 00 Civ. 9260 (JES), involving other former Moorish American DOC employees in which, among other things, the underlying factual circumstances are the same as Plaintiff's case and with the same essential parties.

29.    Based on new information and exculpatory evidence, which is part of the public record that is derived from discovery in the Kelly case, 01 Civ. 8906 (TPG) giving rise to a subsequent case in Kelly, et. al. v. City of New York, et. al. 04 Civ. 1572 (TPG) USDC/SDNY,

on or about April 10, 1996, the DOI under the direction of Caruso, began an investigation called "99 exemption" to investigate all employees of DOC who had claimed between 40 or more exemptions on their federal and state tax forms submitted to the DOC.

30.     Based on new information and exculpatory evidence derived from discovery in the Kelly case, 01 Civ. 8906 (TPG) that is part of the public record, herein after "At all time relevant hereto", during the investigation, the DOI and the DOC did not advise Plaintiff that neither he nor the other Moorish American DOC employees was under investigation.

31.     At all time relevant hereto, on or about July 12, 1996, Caruso received and read a memorandum from the New York City Police Department, herein after NYPD, claiming, among other things, that an individual involved in a "car stop" was a member of that group known as "The Great Seal Association of Moorish Affairs" and that members of that group had been previously arrested and were suspected of armed robberies and trafficking in high-powered automatic weapons.

32.     At all time relevant hereto, the NYPD memorandum did not identify the individual involved in the "car stop" as a DOC employee. Plaintiff only connection to the NYPD memorandum was his connection with the Moorish American faith and his National Origin as a Moor and Nationality as Moorish American, all identified through his name as a "Bey" and/or "El".

33.     At all time relevant hereto, during the "99 exemption" investigation, Caruso and/or employees under his supervision, compiled a list of DOC employees as of November 14, 1997 who he/they identified as Moorish Americans and/or Moor. During the "99 exemption" investigation, Caruso and the DOI determined that there were between 900 to 1,000 DOC employees who had filed tax documents with the DOC claiming 99 exemptions and

approximately 184 DOC employees who filed tax documents with the DOC claiming that they were tax exempt.

34.    At all time relevant hereto, on or about December 3, 1997, Caruso determined that only approximately 21 DOC employees, who were not arrested for submission of allege false tax information should be summarily suspended and subsequently terminated from city employment.

35.    At all time relevant hereto, on or about December 3, 1997, Caruso summarily suspended approximately 20 DOC employees. All were Moorish American. One DOC employee, Michael Flynn, was identified by Caruso to be Moorish American because his name appeared on a petition signed by other Moorish Americans. Caruso also summarily suspended Mr. Flynn. Each individual was merely informed that the reason for the summary suspension was because they had supplied the DOC with tax forms containing false information.

36.    Prior to the suspension of the 20 Moorish American DOC employees, Plaintiff was medically discharged on or about August of 1997 from DOC without a hearing or opportunity to be heard and all pending charges with respect to sick leave for which Plaintiff was medically discharged had been legally expunged, as Plaintiff was no longer employed by DOC.

37.    At all time relevant hereto, before the 21 Moorish American DOC employees summary suspension and before Plaintiff's medical discharged from DOC, Plaintiff was not interviewed by the City's DOI nor any other manner given an opportunity to be heard.

38.    At all time relevant hereto, on or about January 3, 1998, Defendant Michael Caruso assigned the 20 Moorish American DOC employees to a modified duty assignment in a segregated facility with no inmate contact and limited contact with DOC employees among other changes in their terms and conditions of employment.

39.    At all time relevant hereto, among the DOC employees who were not arrested for submission of allege false tax information, only those DOC employees identified as Moorish

American, were placed on modified duty assignment for submission of alleged false tax information between April 10, 1996 and December 1998 to include Plaintiff who was subjected to the same treatment following his reinstatement back to DOC on June 14, 1999 from his medical discharge.

40.    That Plaintiff, after having been discharged for almost two years, and on the day of the June 14, 1999 reinstatement, Plaintiff was first summary suspended and remained suspended for more than 30 days and subsequently placed on modified duty assignment, as were those other DOC employees who were identified as Moorish Americans.

41.    At all time relevant hereto, neither Plaintiff nor the other Moorish American DOC employees were not interviewed or otherwise given an opportunity to be heard by Defendant Caruso during or after his investigation.

42.    At all time relevant hereto, on or about March 5, 1998, Caruso issued an identical memorandum of complaint for each Moorish American DOC employees, including Plaintiff except that Plaintiff received his memorandum of complaint following his reinstatement from his medical discharge back in June 14, 1999; the only difference being the date of the alleged misconduct, stating that the Moorish American DOC employees on certain dates "did submit false instrument(s) concerning Federal/State tax information to the Department of Correction and did also supply false tax information to the Department of Correction. In so doing officer [allegedly] did engage in conduct unbecoming an officer/member of the Department in that he did thereby violate Federal/State law/statute/code /regulation." For Plaintiff the allege date would be December 3, 1993.

43.    At all time relevant hereto, among those DOC employees who were not arrested for submission of alleged false tax information, Defendant Caruso recommended for termination

for submission of alleged false tax information only those DOC employees identified as Moorish Americans, including Plaintiff, between April 10, 1996, December 1998 and April of 2000.

44.    No one from DOI spoke to or interviewed Plaintiff prior to or after the issuance of the memorandum of complaint, and at all time relevant hereto, neither were the other Moorish American DOC employees spoken to or interviewed prior to or after the issuance of Defendants Caruso's memorandum of complaint, as to them.

45.    At all time relevant hereto, on or about April 16, 1998, the Moorish American DOC employees, as it was for Plaintiff herein, received a document, charges and specifications alleging that their misconduct constituted a crime with respect to 26 U.S.C. § 7205 and state penal law offenses indicating that they had engaged in conduct unbecoming an officer by submitting tax forms to the DOC claiming code "99" or "exempt" and that they had acted with an intent to defraud.

46.    During this time, Plaintiff was already medically discharged from the service and was not employed by DOC.

47.    It was only when Plaintiff made an application for reinstatement from his medical discharge, is when DOC mailed charges and specification to Plaintiff towards the beginning of 1999, yet dated as far back as June of 1998.

48.    At all time relevant hereto, Caruso, DiCarlo and Kerik, individually and/or collectively and in concert held Plaintiff to answer for a federal and state crime under the guise of misconduct, as set forth in their charges and specifications when the matter was brought before OATH that was presided over by ALJ Tompkins, who permitted such conduct.

49.    Said charges and specification, as to Plaintiff including the other Moorish American DOC employees also stated he/she had submitted to the DOC "written instruments, documents, statements, forms and attachments thereto, wherein [s]/he disclaims United States

Citizenship and wherein [s]/he adopts or espouses statements which violate/disclaim his/her oath of office to support the Constitution of the United States and the Constitution of the State of New York and thereby the laws there under."

50.     At all time relevant hereto, the charges and specifications were drafted by DiCarlo and served by and/or on behalf of Caruso via the U.S. Mail, as Plaintiff was already medically discharged and Plaintiff not employed with DOC at the time.

51.     At all time relevant hereto, among those DOC employees who were not arrested for submission of allege false tax information, between April 10, 1996 and June 1999, Defendant Caruso through DiCarlo issued charges and specifications for submission of alleged false tax documents only to those DOC employees identified as Moorish American, including Plaintiff.

52.     Before issuing the charges and specifications asserting criminal charge violations, Defendant DiCarlo, Caruso, Louden, nor anyone from the City's DOC spoke to or otherwise interviewed Plaintiff, who was medically discharge from the Service and not employed with DOC. similarly, before issuing the charges and specifications against Plaintiff, no one from the City conducted an independent investigation into the circumstances involving Defendant Caruso's selection of the Moorish American DOC employees including Plaintiff for recommendation of termination.

53.     Plaintiff became aware that he was being discipline and/or brought up on charges because of documents he filed in December of 1993 claiming to have no tax liability and because Plaintiff was accused of violating his oath of office, as well as for filing a federal law suit against the City regarding taxes in 1997 in case Bey, et. al. v. City of New York, et. al. 98 Civ. 4866 (RPP), which included the Moorish American DOC employees, some of whom are named Plaintiff in the Kelly case, Kelly, et. al. v. City of New York, et. al. 01 Civ. 8906 (TPG).

54.     The charges and specifications regarding Plaintiff's submission of documents in December 1993 were implemented under the "crimes exception" clause of Section 75 (4) of the

Civil Service Law in order to circumvent both, the crime clause provision of the Fifth Amendment by holding Plaintiff to answer for crimes without indictment and to circumvent the 18 months statute of limitation in which to bring forth an administrative proceeding for Plaintiff's removal from employment and was also used as a smoke screen to maliciously reinstate sick leave charges that were already expunged with respect to Plaintiff's medical discharge where Plaintiff was no longer employed with DOC.

55.    At all time relevant hereto, Plaintiff's medical discharge from the service where Plaintiff was not employed by the City is otherwise known as an involuntary unpaid medical leave of absence wherein the City may permit Plaintiff up to a years time in which to return to full service following an application for reinstatement and subsequent pre-qualifying physical evaluation exam, which determines whether or not Plaintiff could return to full duty or is denied application for reinstatement pursuant to Section 71 or 72 of the Civil Service Law.

56.    On or about November 3, 1999 and February 8, 2000, during an administrative hearing before the Office of Administrative Trials and Hearings ("OATH"), Plaintiff requested an opportunity to examine "his accusers", including Caruso, DiCarlo, Kerik and Giuliani, all of whom were in part or in whole responsible for initiating actions against Plaintiff, as well as the other Moorish American DOC employees.

57.    At all time relevant hereto, the OATH Administrative Law Judge ("ALJ"), Tompkins, who is govern by Mayor's Executive order #32 refused to permit Plaintiff to examine these individuals.

58.    During the OATH administrative hearings, Plaintiff repeatedly asked for an explanation of the charges against him wherein the ALJ Tompkins refused to permit such explanation.

59.    At all time relevant hereto, a similar event previously occurred with the other Moorish American DOC employees under ALJ Rosemarie Maldonado (non-party herein), who

refused to permit the Moorish American DOC employees request for an explanation of the charges against them, as mentioned in the Kelly case, <u>Kelly, et. al. v. City of New York, et. al.</u>, 01 Civ. 8906 (TPG).

60.     On or about March 2000, ALJ Tompkins issued her Report and Recommendation" rendering a "Giuliani" directed finding of guilty of all specific charges and specifications lodged against Plaintiff to include previously expunged sick leave charges that were resubmitted following Plaintiffs reinstatement from a medical discharge, except the charge of submitting documents to the DOC wherein he was alleged to have adopted or espoused statements which violated/disclaimed his oath of office to support the Constitution of the United States and the Constitution of the State of New York and thereby the laws there under" and thus, Plaintiff was determined "not guilty" of violating his oath of office.

61.     Kerik, Commissioner of the DOC adopted the ALJ's recommendation of termination on April 27, 2000.

62.     At all time relevant hereto, Kerik did not conduct an independent investigation into the circumstances underlying ALJ Tompkins's recommendation for termination, instead, his decision merely reflected the public statement made by Giuliani to reporters with respect to the tax issue that "the suspended employees would almost certainly lose their jobs after disciplinary proceedings against them were completed." as reported in the December 12, 1997 Chief Leader, civil service weekly news paper, and Kerik decision also relied on the actions and inactions of Defendant Caruso and his subordinates when making the decision to adopt ALJ Tompkins's report and recommendation, which is also based upon Giuliani's said public statements.

63.     At all time relevant hereto, Defendant Giuliani's public statement made to the media had a substantial influential and prejudicial effect and impact on ALJ Tompkins's decision, as OATH is a Mayoral agency that is directed by the Mayor pursuant to Mayor's Executive Order 32 of July 25, 1979, which, besides being codified in the New York City

Charter under Chapter 45 and 45A, nevertheless governs the conduct of OATH and the outcome of the OATH proceedings were predetermined to accommodate Plaintiff's termination, as with the other Moorish American DOC employees from employment by virtue of Giuliani's public statement and because of being associated with the Moorish Nation by virtue of Plaintiff's Nationality and national origin as reflected in Plaintiff's name as a Bey and/or El.

64.    During the course of these events, Plaintiff initiated a number of federal law suits protesting first, the initial summary suspension from duty on June 14, 1999, which was regarding the first day of Plaintiff's reinstatement in which Plaintiff was suppose to be reinstated to full duty in case 99 Civ. 12490 (JES)(MHD), the bias and non-impartial conduct of the Giuliani directed OATH proceedings and its subsequent amendments up to the Third Amended complaint and the eventual discharges of Plaintiff in the employ of the DOC in case 00 Civ. 9260 (JES) with a then concurrent Article 78 Proceeding challenging the OATH proceeding, and the constitutional challenge to OATH and the crime exception clause in case 03 Civ. 1050 (JES), among other things..

65.    At all time relevant hereto, Plaintiff's claims, among other things are five counts of denial of due process of law, denial of equal protection of the law, the privilege and immunity clause, abuse of process, selective enforcement and prosecution, defamation of character libel and slander, conspiracy, intentional and negligent infliction of emotional distress, discrimination based on national origin as a Moorish American, retaliation for having filed previous lawsuits in 1997 and 1998, and First Amendment violations with respect to freedom of association.

66.    At all time relevant hereto, Plaintiff discovered a DOC teletype of his name and shield number # 6103 wherein it was written on said teletype "I.D. as a Bey because he is on the law suit". Additionally, Plaintiff discovered a DOC pedigree sheet of officers with their photo's in uniform and where Plaintiff was also shown. On the pedigree sheet under Plaintiff's photo was

listed "intelligence information that Plaintiff is a Moorish Nation member and considered armed" and has unreasonably Placed Plaintiff's life at risk of life and limb.

67.    At all time relevant hereto, Plaintiff was not able to obtain the new information and exculpatory evidence to show proof of Plaintiff's claims in Shekhem'El-Bey v. City of New York, et .al., 00 Civ. 9260 (JES) due to Defendants refusal to disclose such information. However, in a parallel similarly situated case that is based on the same underlying factual circumstances in Kelly, et. al. v. City of New York, et. al., 01 Civ. 8906 (TPG) following its discovery, on or about December, 2004 Plaintiff was able to obtain new information and exculpatory evidence that was otherwise not available to Plaintiff and which substantiates Plaintiff various Constitutional and State law claims.

68.    In the Kelly case, 01 Civ. 8906 (TPG), in spite of discovery, Defendants City, Caruso and Kerik moved for summary judgment.

69.    The Defendants filing papers, in support of the Defendants Motion for summary judgment, Caruso submitted a declaration under penalty of perjury dated December 10, 2003. In that affidavit filed in the court, Plaintiff learned for the first time that Caruso and the DOC placed Plaintiff, as with the other Moorish American DOC employees in that case on the same type of modified assignment based on intelligence information provided by the City's NYPD regarding potential security concerns associated with individuals who were affiliated with the Moorish-National group. Defendants concealed the true nature of the charges and their concerted actions against Plaintiff, as with the other Moorish American DOC employees in that case.

70.    At all time relevant hereto, for the first time, Plaintiff learned that Caruso selected him and other Moorish American DOC employees for summary suspension, modified duty assignment and recommended Plaintiff's termination for allegedly submitting documents to the DOC claiming that he/they were not subject to arrest, that he/they were not subject to the jurisdiction of the United States and the State of New York and that he/they were renouncing

their United states Citizenship. Defendants concealed the true nature of the charges against Plaintiff and other Moorish American DOC employees that Defendants discharged from his/their employ and that the Defendants did not disclose the true nature of the charges.

71.    Before Plaintiff and the other Moorish American DOC employee's summary suspension, modified duty assignment and Caruso's recommendation for charges and specification asserting criminal charges under the guise of misconduct, Plaintiff, as with the previous Moorish American DOC employees, had not been given adequate notice of the charges against him, an explanation of the charges against him, and an opportunity to be heard on the charges against him before, during or after the OATH proceedings, even when said request was made as to the nature of the charges against him.

72.    After Plaintiff's summary suspension, modified duty assignment and Caruso's recommendation for charges and specifications, Plaintiff as with the previous Moorish American DOC employees have not been given adequate notice of the reasons for Caruso's actions against him, an explanation of Caruso's conduct and an opportunity to be heard before these actions.

73.    In doing the acts described above, and in doing other acts not yet known, the Defendants violated Plaintiff's constitutional and statutory rights to freedom of association, the right to be free from religious discrimination, the right to be free from discrimination based on national origin and nationality, and the right to due process of law and equal protection of the law, right to protection under the privilege and immunity clause, before deprivation of a property interest in Plaintiff's employment, including abuse of process, defamation of character, i.e. Libel and Slander, constructive fraud and retaliation for having filed lawsuits in the past against the City.

74.    At all time relevant hereto, as a custom, policy and practice, Caruso in concert with DiCarlo, Kerik, Luttan and Tompkins intentionally mislead and materially misrepresented the charges against Plaintiff, as with the other Moorish American DOC employees, by not

disclosing the true nature of the charges to Plaintiff and by not affording Plaintiff the opportunity to address the true nature of the charges and as such Plaintiff suffered a damage there-from resulting in Plaintiff's termination from employment, among other things mentioned herein.

75.    At all time relevant hereto, Mildred Lambert who was identified as a Moor has openly denounced her Moorish American nationality at OATH, stating "I dropped it like a hot potato because Giuliani called it a cult". Ms. Lambert kept her job and did not face termination from employment. Additionally, Giuliani's public statement that Moors or Moorish American is a cult is recorded in the public media and is an outright racist attack against Moorish Americans.

76.    Plaintiff and the other Moorish American DOC employees who did not denounced their Moorish Nationality like Ms. Lambert did face the wrath of termination from employment with DOC and were terminated from employment, as was Plaintiff herein.

77.    At all time relevant hereto, as reported in the National media that there were other DOC employees who were not Moorish American who had engaged in the same or substantially similar conduct of submitting tax forms containing allege false tax information claiming 99 or exempt, but were not charged or sent through an administrative OATH proceeding as Plaintiff and the other Moorish American DOC employees.

78.    At all time relevant hereto, from 1991 through 1995 there were 1200 DOC employees who filed 99 or exempt, and that DOC employees continued to file 99 or exempt in 2000 who are white and were not brought up on charges.

79.    In the wake of the Bernard Kerik corruption tax Scandal wherein Kerik was considered for heading the Nations Department of Homeland Security, in conjunction with the Kelly discovery, it was discovered for the first time that there were a number of other individuals, including Kerik himself and DOC employee CO Jeanette Pinnero, Kerik's mistress, Captain John Picciano, kerik's Chief of Staff at the time, CO John Sheridan, white male and other white CO's and High Ranking Correction officials who were subordinate to Kerik who

filed false tax forms claiming more than their household or 99 or exempt and were not charged nor were they subjected to an administrative proceeding at OATH while Kerik was DOC commissioner.

80.    At all time relevant hereto, Kerik under the Giuliani administration, as it has been revealed in the wake of the Kerik corruption tax scandal revealing individuals who were engaged in the same or substantially similar acts, including Kerik himself, and were not charged or discipline as Plaintiff and the other Moorish American DOC employees, while Kerik was DOC commissioner demonstrated how OATH was manipulated, controlled and used to terminate Moorish American DOC employees by rendering rubber stamped decisions that followed in line with what former Mayor Giuliani publicly stated as to what will happen after a disciplinary proceeding was completed. These OATH decisions were designed to accommodate the predetermine action of Kerik.

81.    At all time relevant hereto, Caruso, in a concerted activity together and individually with Kerik, DiCarlo, and Louden, committed fraud against Plaintiff by concealing the true nature of the charges against Plaintiff, as Defendants has done with the other Moorish American DOC employees mentioned in the Kelly case, Kelly et. al. v. City of New York, et. al. 01 Civ. 8906 (TPG) and has subjected Plaintiff to an OATH proceeding under false pretense, as the true nature of the charges were concealed from Plaintiff and subsequently utilized as a smoke screen to reinstate expunged sick leave charges.

82.    Defendants, and each of them, which includes Giuliani, Kerik, Caruso, DiCarlo and Louden in a concerted activity together and individually, conspired to deny Plaintiff, as with the other Moorish American DOC employees, of the right to equal protection and due process of the law by concealing the true nature of the charges against Plaintiff, and by protecting DOC employees who were not Moorish American from being subjected to the OATH proceedings and subsequent termination from employment.

83.    At all time relevant hereto, Defendants, and each of them, in a concerted activity together and/or individually, as a policy, custom and practice, and by concealing the true nature of the charges against Plaintiff, denied to Plaintiff the same rights for the security of persons and property as enjoyed by white citizens, such as C.O. Jeanette Pinero, CO John Sheridan, Captain John Picciano and other white citizens in DOC who committed the same or substantially similar acts as alleged to Plaintiff and the other Moorish American DOC employees by not subjecting other white DOC employees to charges and specifications containing criminal charges under the guise of misconduct, modified duty assignment, summary suspension, OATH proceedings and termination from employment.

84.    At all time relevant hereto, OATH was utilized and applied to Plaintiff and the other Moorish American DOC employees in an unconstitutional manner by Giuliani, Kerik, Caruso, DiCarlo, Louden, Luttan and Tompkins, all acting in concert together and in concealing the true nature of the charges as against Plaintiff and the other Moorish American DOC employees and then subjecting Plaintiff, as with the other Moorish American DOC employees, to the OATH proceedings that was influenced by Giuliani with respect to his public statement and pursuant to Mayor's Executive Order # 32 of July 25, 1979, which provides that the "the office shall be directed by the Mayor".

85.    At all time relevant hereto, OATH was established by Mayor's Executive Order number 32 on July 25, 1979 under former Mayor Edward I. Koch (non-party herein), which besides being codified nine years later in the New York City Charter under Chapter 45 and 45A that is referred to as the City Administrative Procedure's Act, provides in pertinent part that "the office shall be directed by the Mayor".

86.    At all time relevant hereto, OATH is not a part of the Unified Court System of the State of New York nor did the New York State legislature enact such a forum as a court of

record as what would be required by law to be a court of record according to Article 6 of the New York State Constitution.

87.    At all time relevant hereto, Giuliani violated Plaintiff's right to due process of law at OATH, as with the other Moorish American DOC employees, based on his public statement, which directed the ALJ's decision to be a mere rubber stamp to accommodate the agencies action to terminate Moorish American DOC employees. This violates Section 1046 of Chapter 45 of the New York City Charter, which provides that "at the hearings, the parties shall be afforded due process of law." which Plaintiff never received.

88.    At all time relevant hereto, Defendants utilized the "crimes exception" clause of Section 75 (4) of the Civil Service Law to assert crime charges against Plaintiff in the guise of misconduct wherein Defendants concealed the true nature of the charges.

89.    At all time relevant hereto, the crimes exception clause of Section 75 (4) of the Civil Service Law presumes or presupposes that ones conduct constitutes a crime if it were proved in court of appropriate jurisdiction without having to actually prove that a crime has been committed as the basis for bringing an administrative proceeding for removal wherein one is held to answer for the allege crime under the guise of misconduct, as was the case with Plaintiff at OATH with respect to charges and specifications asserting that Plaintiff violated 26 U.S.C. § 7205 and New York State Penal Law criminal offenses.

90.    At all time relevant hereto, the Defendants attempts to prove Plaintiff willfully committed a crime as set forth and alleged in the Charges and Specifications with respect to Federal and State Penal statutes, held Plaintiff to answer for a crime in violation of the crime clause provision of the Fifth and Sixth Amendment, as purview through and in violation of the "due process", "equal protection" and "privilege and immunity" clause of the Fourteenth Amendment to the United States Constitution.

91.    At all time relevant hereto, Plaintiff was neither indicted nor convicted for the allege crime stated in the charges wherein the Defendants intentionally and willfully concealed the true nature of the charges against Plaintiff.

92.    At all time relevant hereto, Defendants, and each of them in a concerted activity illegally perverted the legal system against Plaintiff, as with the other Moorish American DOC employees, by concealing the true nature of the charges against Plaintiff, and by summary suspending, placing on modified duty assignment, directing OATH to make adverse decisions and ultimately termination of Plaintiff's employment, all the while protecting other DOC employees who are white or those not deemed Moorish Americans from the fate that befell Plaintiff and the other Moorish American DOC employees as mentioned above.

93.    At all time relevant hereto, the Defendants, and each of them in a concerted activity, had an ulterior motive or purpose exercising said perverted use of the legal system motivated by an invidious discriminatory animus against Plaintiff and the other Moorish American DOC employees as mentioned above.

94.    At all time relevant hereto, by Defendants concealing the true nature of the charges against Plaintiff, as with the other Moorish American DOC employees, and by Defendants ulterior motive or purpose motivated by an invidious discriminatory animus against Moorish Americans exercising such perverted use of the legal system, Plaintiff suffered damages as a direct result and was terminated from employment, as was the other Moorish American DOC employees.

95.    At all time relevant hereto, the Defendants, and each of them, have an invidious discriminatory animus against Moorish Americans and the Defendants acts were performed intentionally and negligently with reckless disregard and depraved indifference to the rights of the Plaintiff, as with the other Moorish American DOC employees.

96.     At all time relevant hereto, the Defendants knew or should have reasonably known that their acts would foresee ably cause Plaintiff a damage and severe emotional distress.

97.     At all time relevant hereto, the Defendants colorable conduct shocks the conscience and was outrageous, indecent, atrocious, odious, uncivilized and intolerable.

98.     At all time relevant hereto, Plaintiff suffered severe emotional distress as a direct result of Defendants conduct, described above.

99.     Plaintiff demands a jury trial on all issues of facts to be tried by a jury.

## FIRST CAUSE OF ACTION

### (First & Fourteenth Amendment Freedom of Association)

100.    Plaintiff repeat and reallege paragraph 1 through 99 above with the same force and effect as if set forth herein.

101.    By intentionally and willfully concealing the true nature of the charges against Plaintiff and then summary suspending Plaintiff following his reinstatement from a medical discharge and disallowing Plaintiff the opportunity to begin a fresh start at correction, placing Plaintiff on modified duty assignment and recommending for termination, Placing Plaintiff's life in danger by identifying Plaintiff as a "Moorish Nation member that is considered armed" with respect to the NYPD memorandum and treating Plaintiff as a "security concern" for no reason other than the fact that Plaintiff possibly share the same faith, national origin and nationality as the individual identified in the NYPD memorandum, the Defendants acting in concert, either directly or indirectly and in cooperation with each other violated Plaintiff's First Amendment right to freedom of association, as purview through and in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## SECOND CAUSE OF ACTION

(Fifth & Fourteenth Amendment - Count 1 of Due Process of Law)

102.    Plaintiff repeat and reallege paragraph 1 through 101 above with the same force and effect as if set forth herein.

103.    By intentionally and willfully concealing the true nature of the charges asserting criminal charge statutes to which Plaintiff was being held to answer at OATH under the guise of misconduct for the purpose of Defendants attempts to prove willfulness, Defendant City, Giuliani, Caruso, DiCarlo, Kerik, Louden, Ruben and Tompkins under color of state law engaged in a policy, custom and practice to deprive Plaintiff of due process of law, i.e., the right to adequate notice and an opportunity to be heard in a court of appropriate jurisdiction on the charges against Plaintiff, the denial of protected rights under the "crime clause" provision of the Fifth and Sixth Amendment and the due process clause provision of the Fifth Amendment, all as purview through and in violation of the due process clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 before deprivation of a property interest in his employment and  to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## THIRD CAUSE OF ACTION

(Fifth & Fourteenth Amendment - Count 2 of Due Process of Law)

104.    Plaintiff repeat and reallege paragraph 1 through 103 above with the same force and effect as if set forth herein.

105.    By intentionally and willfully concealing the true nature of the charges against Plaintiff, Defendant Caruso deprived Plaintiff of due process of law, i.e., the right to adequate notice and an opportunity to be heard on the charges in a court of appropriate jurisdiction against Plaintiff before deprivation of a property interest in his employment and before recommending a

deprivation of a property interest with respect to the Fifth Amendment as purview through and in violation of the due process clause of the 14th Amendment to the United States Constitution and 42 U.S.C. § 1983 to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## FOURTH CAUSE OF ACTION

### (Fifth & Fourteenth Amendment - Count 3 of Due Process of Law)

106.    Plaintiff repeat and reallege paragraph 1 through 105 above with the same force and effect as if set forth herein.

107.    By discharging Plaintiff without assuring that he had adequate notice and an opportunity to be heard before his summary suspension following his reinstatement from a medical discharge, subsequent modified duty assignment and Caruso's recommendation for termination, thus willfully concealing the true nature of the charges against Plaintiff, Defendant Kerik violated Plaintiff's right to due process of law before deprivation of a property interest in his employment with respect to the Fifth Amendment as purview through and in violation of the Due Process clause of the 14th Amendment to the United States Constitution, as applied to the municipal employees under the state and 42 U.S.C. § 1983 to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## FIFTH CAUSE OF ACTION

### (Fifth & Fourteenth Amendment - Count 4 of Due Process of Law)

108.    Plaintiff repeat and reallege paragraph 1 through 107 above with the same force and effect as if set forth herein.

109.    By intentionally and willfully concealing the true nature of the charges against Plaintiff and by subjecting Plaintiff to an administrative proceeding of the City at OATH that was already fixed and predetermine to rubber stamp Kerik's action to terminate Shekhem'El-

Bey's employment arising out of the public statement of Giuliani in which case Defendant Ruben, Tompkins, Kerik, Caruso, DiCarlo and Louden, individually and/or collectively acted in concert and in cooperation with each other to carry out the termination process before deprivation of a property interest in Plaintiff employment by having OATH render a decision that was merely a rubber stamp for DOC to terminate Plaintiff's employment violates Plaintiff's rights to due process of law with respect to the 5th Amendment as purview through and in violation of the due process clause of the 14th Amendment to the United States Constitution and 42 U.S.C. § 1983, as applied to municipal employees under the state and  to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

<u>SIXTH CAUSE OF ACTION</u>

(Sixth & Fourteenth Amendment - Count 5 of Due Process of Law)

110.    Plaintiff repeat and reallege paragraph 1 through 109 above with the same force and effect as if set forth herein.

111.    By intentionally and willfully concealing the true nature of the charges against Plaintiff and by subjecting Plaintiff to a sham criminal administrative proceeding with respect to federal and state penal offenses under the guise of misconduct and subjected to being held to answer for a crime in which to attempt to prove willfulness, absent what is required under the Fifth and Sixth Amendment with respect to crime charges, all under the guise of misconduct in an administrative tribunal violates the Sixth Amendment as purview through and in violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983 and to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## SEVENTH CAUSE OF ACTION

### (Fourteenth Amendment Equal Protection Clause)

112.    Plaintiff repeat and reallege paragraph 1 through 111 above with the same force and effect as if set forth herein.

113.    By intentionally and willfully concealing the true nature of the charges against Plaintiff and by Kerik, Caruso and DiCarlo pursuing Moorish Americans to subject them to summary suspension, placing them on modified duty assignment and subsequently terminating them from the employ of DOC, as was Plaintiff and not equaling applying the same process to other DOC employees who were not Moorish Americans or identified as Moorish Americans and who have committed the same or substantially similar acts, as set forth above violates the equal protection clause of the 14th Amendment to the United States Constitution and 42 U.S.C. § 1983  to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## EIGHTH CAUSE OF ACTION

### (Fifth and Fourteenth Amendment Privilege and Immunity Clause)

114.    Plaintiff repeat and reallege paragraph 1 through 113 above with the same force and effect as if set forth herein.

115.    That Defendants, and each of them in a concerted activity and in cooperation with each other and acting under the authority of the state, and as a custom, policy and practice, their enforcement of the "crimes exception" clause of Section 75 of the Civil Service Law of the State of New York against Plaintiff violated the privilege and immunity clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## NINTH CAUSE OF ACTION

(Discrimination based on national origin, race and religious faith – 42 U.S.C. § 1981)

116.    Plaintiff repeat and reallege paragraph 1 through 115 above with the same force and effect as if set forth herein.

117.    The above described policy, custom and practice was a motivating factor in the unequal terms and condition of Plaintiff's employment on account of Plaintiff's race, religion, national origin, nationality and/or creed as Plaintiff did not enjoy the same rights for the security of person and property (property interest) as enjoyed by white citizens, i.e. Jeanette Pinnero, John Sheridan, John Picciano, etc. and violates Plaintiff's rights under 42 U.S.C. § 1981 to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## TENTH CAUSE OF ACTION

(New York State Constitution)

118.    Plaintiff repeat and reallege paragraph 1 through 117 above with the same force and effect as if set forth herein.

119.    The above described policy, custom and practice was a motivating factor in the unequal terms and conditions of Plaintiff's employment in violation of the corresponding laws under the New York State Constitution and to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## ELEVENTH CAUSE OF ACTION

(Conspiracy to deprive rights – 42 U.S.C. § 1985 (3))

120.    Plaintiff repeat and reallege paragraph 1 through 119 above with the same force and effect as if set forth herein.

121.    The above described policy, custom and practice of the Defendants that was motivated by an invidious discriminatory animus against Moorish Americans, and by intentionally and willfully concealing the true nature of the charges against Plaintiff and by Defendants, and each of them acting in cooperation and in concert with each other in a conspiracy, either directly or indirectly, Giuliani, Kerik, Caruso, DiCarlo, Louden, Ruben and Tompkins under color of state law by their actions and/or omissions deprived Plaintiff of the equal protection of the law and the equal privilege and immunities under the laws, and thus violated the equal protection due process and privilege and immunity clause of the 14th Amendment to the United States Constitution and 42 U.S.C. § 1985 (3)  to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

TWELFTH CAUSE OF ACTION

(Action for Neglect to Prevent – 42 U.S.C. § 1986)

122.    Plaintiff repeat and reallege paragraph 1 through 121 above with the same force and effect as if set forth herein.

123.    By intentionally and willfully concealing the true nature of the charges against Plaintiff, Defendants, and each of them, reasonably having knowledge that the wrongs conspired to be done, as set forth above with respect to 42 U.S.C. § 1985 (3), are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, when such wrongful acts, as set forth above, has been committed is in violation of 42 U.S.C. § 1986 to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## THIRTEENTH CAUSE OF ACTION

### (Retaliation)

124.    Plaintiff repeat and reallege paragraph 1 through 123 above with the same force and effect as if set forth herein.

125.    The above described policy, custom and practice of the Defendants, was also the motivating factor in their retaliating against Plaintiff and other Moorish Americans for having filed a federal lawsuits in the past against the City of New York and DOC and to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## FOURTEENTH CAUSE OF ACTION

### (Abuse of Process)

126.    Plaintiff repeat and reallege paragraph 1 through 125 above with the same force and effect as if set forth herein.

127.    By Defendants concealing the true nature of the charges against Plaintiff and the other Moorish American DOC employees, the above described policy, custom and practice of the Defendants, was the motivating factor in their intentional misuse of the legal system by illegally abusing the process to pursue Moorish Americans for summary suspension, modified duty assignment, sham administrative proceeding of the City and ultimately termination from employment, while not imposing the same process to white DOC employees who have engaged in the same or substantially similar conduct and   to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## FIFTEENTH CAUSE OF ACTION

### (Selective Enforcement)

128.    Plaintiff repeat and reallege paragraph 1 through 127 above with the same force and effect as if set forth herein.

129.    By Defendants concealing the true nature of the charges against Plaintiff and the other Moorish American DOC employees, the above described policy, custom and practice of the Defendants, was the motivating factor in their selective enforcement to pursue Moorish Americans for summary suspension, modified duty assignment, sham administrative proceeding of the City and ultimately termination from employment, while shielding white DOC employees who have engaged in the same or substantially similar conduct and  to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

### SIXTEENTH CAUSE OF ACTION

### (Selective Prosecution)

130.    Plaintiff repeat and reallege paragraph 1 through 129 above with the same force and effect as if set forth herein.

131.    By Defendants concealing the true nature of the charges against Plaintiff and the other Moorish American DOC employees, the above described policy, custom and practice of the Defendants, was the motivating factor in their selective prosecution in pursuing Moorish Americans for summary suspension, modified duty assignment, sham administrative proceeding of the City and ultimately termination from employment, while shielding white DOC employees who have engaged in the same or substantially similar conduct and  to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## SEVENTEENTH CAUSE OF ACTION

### (Defamation of Character - Slander)

132.    Plaintiff repeat and reallege paragraph 1 through 131 above with the same force and effect as if set forth herein.

133.    By Defendants Giuliani publicly stating that Moorish Americans is a cult and for Mildred Lambert to have testified at OATH that she dropped her Nationality "like a hot potato because Giuliani call it cult" in order to keep her employment, and various documents, including the aforementioned teletype stating that Plaintiff "…is a Moorish Nation member and considered armed" inferring that Plaintiff specifically and Moorish Americans generally are a part of a criminal element associating Plaintiff with the aforementioned NYPD memo in order to justify Defendants conduct, were done with malice and constitute defamation of character and is slander to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## EIGHTEENTH CAUSE OF ACTION

### (Defamation of Character - Libel)

134.    Plaintiff repeat and reallege paragraph 1 through 133 above with the same force and effect as if set forth herein.

135.    By Defendants Giuliani publicly stating that Moorish Americans is a cult and for Mildred Lambert to have testified at OATH that she dropped her Nationality "like a hot potato because Giuliani call it cult" in order to keep her employment, and various documents, including the aforementioned teletype stating that Plaintiff "…is a Moorish Nation member and considered armed" inferring that Plaintiff specifically and Moorish Americans generally are a part of a criminal element associating Plaintiff with the aforementioned NYPD memo in order to justify Defendants conduct, were done with malice and constitute defamation of character and is Libel

to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## NINETEENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

136.    Plaintiff repeat and reallege paragraph 1 through 135 above with the same force and effect as if set forth herein.

137.    By Defendants concealing the true nature of the charges against Plaintiff and other Moorish American DOC employees, the above described policy, custom and practice of the Defendants and each of them in a concerted activity, was the motivating factor in their intentionally inflicting emotional distress upon Plaintiff, wherein Plaintiff did suffer severe emotional distress as a direct result of the Defendants uncivilized and outrageous conduct where Plaintiff's life has been placed in jeopardy with reckless and depraved indifference and to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## TWENTIETH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress)

138.    Plaintiff repeat and reallege paragraph 1 through 137 above with the same force and effect as if set forth herein.

139.    By Defendants concealing the true nature of the charges against Plaintiff and other Moorish American DOC employees, the above described policy, custom and practice of the Defendants and each of them in a concerted activity, was the motivating factor in their negligently inflicting emotional distress upon Plaintiff, wherein Plaintiff did suffer severe emotional distress as a direct result of the Defendants uncivilized and outrageous conduct where Plaintiff's life has been placed in jeopardy and in danger with reckless and depraved indifference

and to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## TWENTY-ONE CAUSE OF ACTION

### (Fraud)

140.    Plaintiff repeat and reallege paragraph 1 through 139 above with the same force and effect as if set forth herein.

141.    By Defendants intentionally and willfully concealing the true nature of the charges against Plaintiff and by Defendants commencing an action against Plaintiff under false pretense and with malice through misrepresentation of facts constitutes fraud by Defendants not disclosing the true nature of the charges to Plaintiff before deprivation of a property interest wherein Defendants deprived Plaintiff of due process of law, i.e., the right to adequate notice and an opportunity to be heard on the charges in a court of appropriate jurisdiction before deprivation of a property interest in his employment and before recommending a deprivation of a property interest with respect to the crime clause provision of the Fifth and Sixth Amendment as purview through and in violation of the due process, equal protection and privilege and immunity clause of the 14th Amendment to the United States Constitution and to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

## TWENTY-TWO CAUSE OF ACTION

### (Right to a Declaratory Judgment per 28 U.S.C. §§ 2201 and 2202)

142.    Plaintiff repeat and reallege paragraph 1 through 141 above with the same force and effect as if set forth herein.

143.    By Defendants concealing the true nature of the charges involving crime charges under the guise of misconduct against Shekhem'El-Bey and the Defendants use of the "crimes exception" clause of Section 75 (4) of the Civil Law of the State of New York in conjunction

with the application of OATH govern by Mayor Executive Order #32, codified as Chapter 45 and 45 (A) in the New York City Charter, give rise to a justiciable controversy in which Plaintiff's rights and the law governing OATH and the crimes exception clause must be determine for all time, as a matter of law and to which Plaintiff is entitled to a Declaratory Judgment and further relief based upon said declaratory judgment as specifically set forth in the demand for relief below.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff, Yashua Amen Shekhem'El-Bey, respectfully demands that this Court grant judgment against Defendants City of New York and its Codefendants, individually and/or collectively, and in favor of Shekhem'El-Bey containing the following relief:

a.    An award of Plaintiff's actual damages in an amount to be determine at trail but not less than Thirteen Million Dollars ($13,000,000.00) for loss of wages, benefits and promotional opportunities, including an award of front pay compensating Plaintiff for loss of future salary and benefits by Defendant City of New York and/or its codefendants;

b.    Full reinstatement to employment with the New York City Department of Correction as a New York City Correction Officer;

c.    An award of damages in an amount to be determine at trial but not less than Thirteen Million Dollars ($13,000,000.00) to compensate Plaintiff for mental anguish, humiliation, embarrassment, lost of enjoyment of life, emotional injury, anxiety and stress by Defendant City of New York and/or its codefendants;

d.    An award of punitive and exemplary damages in an amount to be determined at trial but not less than Fifty Four Million Dollars ($54,000,000.00), as against Defendants City and/or its codefendants to insure that such colorable and outrageous acts would not be repeated by any future administration of the City through its agents, members, servants and/or employees;

e.      For a declaratory judgment that OATH was applied in an unconstitutional manner as to Plaintiff with respect to 42 U.S.C. § 1983;

f.      For a declaratory judgment that OATH pursuant to Mayors Executive Order # 32 of July 25, 1979 that was promulgated by Former Mayor Edward I. Koch, to be unconstitutional on its face and as applied as it was demonstrated by Giuliani as the Mayor of the City;

g.      For a declaratory judgment that the Defendants application of the "crimes exception" clause of Section 75 (4) of the Civil Service Law (CSL) to assert crime charges in which to hold Plaintiff to answer under the guise of misconduct following Plaintiff's reinstatement from a medical discharge, as well as the "crimes exception clause itself, to be unconstitutional on its face and as applied, as Plaintiff was never indicted nor convicted for the allege crime asserted in the charges and cannot be presumed guilty of an offense or held to answer for a crime absent an indictment before commencing or during an administrative proceeding;

h.      For a declaratory judgment that the "crimes exception" clause of Section 75 (4) CSL violates the "privilege and immunity" clause of the Fourteenth Amendment;

i.      That Plaintiff reserves the right to enter default by the Clerk pursuant to Rule 55 (a)(b)(1) of Federal Rules of Civil Procedure for a sum certain in the base amount of Eighty Million Dollars ($80,000,000.00) for this action in the event Defendant City and/or its codefendants fails to answer this civil complaint pursuant to Rule 7 (a) and 12 (a)(1)(A) of the Federal Rules of Civil Procedure, as required by law;

j.      Leave to amend the Complaint pursuant to Rule 15 (a) and (b) of the Federal Rules of Civil Procedure in the event newly discovered information and evidence requires new parties to be joined in as Defendants, and as to such other corrections needed to perfect the pleadings;

k.    An award of reasonable Attorney fees and costs of this action;

l.    Such other and further relief as this Court may deem just and proper according to law.

Dated: New York, New York
      August 31, 2005

                                         Yashua Amen Shekhem'El-Bey
                                         Plaintiff, In Pro Per (Pro Se)
                                         c/o 244 Fifth Avenue, Suite 200
                                         New York, New York 10001
                                         (212) 252-2641

VERIFICATION


The foregoing verified amended civil complaint by the hands of Yashua Amen Shekhem'El-Bey is given subject to the penalties of Perjury pursuant to 28 U.S.C. § 1746 and laws of the United States of America, and hereby affirm, declare and certify that the foregoing verified amended civil complaint is true and correct to the best of my first hand knowledge, information and belief.

Dated: August 31, 2005
       New York, New York



                                        Yashua Amen Shekhem'El-Bey
                                        Plaintiff, In Pro Per (Pro Se)















# EXHIBIT L

PRO SE OFFICE

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

DANIEL PATRICK MOYNIHAN UNITED STATES COURTHOUSE
500 PEARL STREET, ROOM 230
NEW YORK, NEW YORK  10007

**J. MICHAEL McMAHON**
CLERK OF COURT

Date:  NOV 1 3 2006

Re: _Shekhem' El-Bey_    v.  _City of New York et al._

Dear Litigant:

Please be advised that your papers were received by the *Pro Se* Office on ___NOV 1 3 2006___.
If there are any problems with your papers, they may be returned to you.

If your papers are in order, they will be processed and assigned a docket number and a judge.  You will be notified by mail when this is done.  Unless directed by the Court, please **DO NOT** submit any other papers until you have been assigned a docket number.

If you have any questions regarding these procedures, you may contact this Office by letter or by telephone during our normal business hours, 8:30 a.m. - 5:00 p.m., Monday - Friday (except federal holidays).  Please note that we cannot accept collect calls.

Sincerely,

*Pro Se* Clerk
(212) 805-0175

## IMPORTANT NOTE:

**YOU MUST IMMEDIATELY NOTIFY THE COURT OF ANY CHANGE OF YOUR ADDRESS BY SUBMITTING A LETTER TO THE *PRO SE* OFFICE OR YOU RISK DISMISSAL OF YOUR CASE.**

rev. 7/03

DISTRICT COURT OF THE UNITED STATES
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ )
Yashua Amen Shekhem'El-Bey                                         )          Incorporated Case
                                                                   )
                          Plaintiff                                )        **Civil Action No:**
              vs.                                                  )
City of New York; Rudolph Giuliani, Mayor of the City of           )
New York; Bernard B. Kerik, Commissioner of the New               )
York City Department of Correction (DOC); Michael                 )
Caruso, Inspector General of DOC; Carl DiCarlo, Assistant         )
Commissioner of Trials and Litigation, DOC;                       )
                                                                   )
                          Defendants                               )
------------------------------------------------------------------ )

RECEIVED
NOV 13 2006

## STATEMENT OF RELATEDNESS

Yashua Amen Shekhem'El-Bey, the Plaintiff (Pro Se) in the above-captioned entitled case, states that this matter is related to <u>Kelly, et. al. v. City of New York, et. al.</u>, 04 Civ. 1572 (TPG) and <u>Shekhem'El-Bey v. The City of New York, et. al.</u> 00 Civ. 9260 (JES), as these cases are inextricably intertwined and because they are based upon the same underlying factual circumstances, except that this action is based on new information and exculpatory evidence, which became known to Plaintiff on or about December 2004 with respect to deliberately withheld information learned for the first time in <u>Kelly, et. al. v. City of New York, et. al.</u>, 01 Civ. 8906 (TPG) following its discovery that was completed on or about December 2003, wherein the opportunity for notice and to be heard on those matters were never afforded nor provided during the pendancy of Shekhem'El-Bey v. The City of New York, et al. 00 Civ. 9260 (JES) in which case Plaintiff previously filed this case under docket 05 Civ. 7270 (TPG), establishing Plaintiff's constitutional and state law claims with respect to this new action and its progeny in <u>Shekhem'El-Bey v. The City of New York, et. al.</u>, 00 Civ. 9260 (JES) that was



dismissed by U.S.D.C. John E. Sprizzo for lack of evidence, as discovery was closed in 2000 due to the misapplication of the Rooker-Feldman doctrine.

Additionally, the subsequent events leading up to and occurring on or about December 2004 through on or about January 2005 regarding the infamous Bernard B. Kerik corruption Tax Scandal, both in print and televised media revealing information and exculpatory evidence for the first time that was previously not known to Plaintiff, all consequently giving rise to this new action, particularly as Plaintiff's Notice of Claim dated February 12, 2005 served upon the City of New York has been received by the City of New York on February 15, 2005 and the Defendant City of New York has mailed their letter of acknowledgment dated March 10, 2005 to acknowledge their receipt of Plaintiff's Notice of Claim. However, the City of New York has not acted or has failed to act to resolve or settle the matter within or after the 30-day statutory time frame from the date of service of the Notice of Claim.

Dated: New York, New York
November 13, 2006

Yashua Amen Shekhem'El-Bey
Plaintiff, In Pro Per (Pro Se)
244 Fifth Avenue, Suite 200
New York, New York 10001
Ph: (212) 252-2641

DISTRICT COURT OF THE UNITED STATES
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------
Yashua Amen Shekhem'El-Bey

Plaintiff

vs.

City of New York; Rudolph Giuliani, Mayor of the City of
New York; Bernard B. Kerik, Commissioner of the New York
City Department of Correction (DOC); Michael Caruso,
Inspector General of DOC; Carl DiCarlo, Assistant
Commissioner of Trials and Litigation, DOC;

Defendant(s)
------------------------------------------------------------------------

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Incorporated Case
Civil Action No.

**Verified Civil Complaint**

JURY TRIAL
DEMANDED
HEREIN
NOV 1 8 2000

## **COMPLAINT**

1.    COMES NOW Plaintiff, Yashua Amen Shekhem'El-Bey, proceeding In Propria

Persona Sui Juris (Pro Se) and complaining of municipal Defendants as follows:

2.    This action is being brought based on new information and exculpatory evidence

that became public record derived from discovery in case  Kelly, et. al. v. City of New York, et.

al., 01 Civ. 8906 (TPG) (currently on appeal) giving rise to a new and subsequent action in

Kelly, et al. v. City of New York, et. al., 04 Civ. 1572 (TPG) in which the City had defaulted for

its failure to answer and is in statutory default in violation of Rule 55 of the Federal Rules of

Civil Procedure.

3.    Further, said information and exculpatory evidence derived from the Kelly action

01 Civ. 8906 (TPG) together with information derived from events leading up to and during the

subsequent exposure in the national media of the infamous Bernard B Kerik deceptive tax

scandal and money scheme linking him with the mob that was publicly exposed during the

month of December of 2004 through January 2005, where it was learned that Kerik did favored

and protected white CO's while punishing non-whites and Moorish American CO's as DOC

Commissioner with respect to Plaintiff's previous actions in Shekhem'El-Bey v. City of New

York, et. al. 00 Civ. 9260 (JES).

4.     Kerik was convicted of a misdemeanor following a plea agreement to avoid a possible felony conviction against him on the state level, however, there is an ongoing federal level investigation based on similar facts involving illegal business practices regarding the sale of cigarettes and the disappearance of substantial funds, among other things, while he was Correction Commissioner.

5.     The newly discovered informational facts set forth herein and exculpatory evidence to be introduced during discovery fully supports Plaintiff's constitutional and state law claims in this new action and its progeny in Shekhem'El-Bey v. City of New York, et. al. 00 Civ. 9260 (JES) that was dismissed. April 13, 2006 following the initial withdrawal of this instant action without prejudice by leave of this court under Shekhem'El-Bey v. City of New York, et. al. 05 Civ. 7270 (TPG) in February 19, 2006 in which to preserve this action within the statutory time frame.

6.     At all time relevant hereto, <u>Kelly, et. al. v. City of New York, et. al</u>. 04 Civ 1572 (TPG) is parallel to this instant action and to Shekhem'El-Bey v. City of New York, et. al. 00 Civ. 9260 (JES), as they, among other things, are based upon the same underlying factual circumstances with respect to discrimination based on national origin and race, violation of equal protection rights, conspiracy to deny Plaintiff's said rights, fraud, abuse of process, and numerous counts of due process violations in this new action.

7.     This action seeks to vindicate Plaintiff's rights pursuant to the First and Fourteenth amendment as purview through the "due process", "equal protection" and the privilege and immunity" clause of the Fourteenth Amendment to the Unites States Constitution and 42 U.S.C. §§ 1981, 1983, 1985 (3) and 1986, to include a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

8.     This civil action also seek monetary relief for actual, compensatory, exemplary and punitive damage pursuant to 42 U.S.C. §§ 1981, 1983, 1985 (3) and 1986.

## JURISDICTION

9.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. §§ 1981, 1983, 1985 (3), 1986 and 1988;

10.     Jurisdiction of this Court is also conferred under 28 U.S.C. §§ 2201 and 2202;

11.     Jurisdiction is had under the doctrine of "Respondeat Superior" with respect to the applicable statutes regarding claims wherein the City of New York is liable for damages based upon the actions of the municipal Defendants, as set forth in the instant action;

12.     The All Writs Act, 28 U.S.C. § 1651 (a) in support of this Court's jurisdiction;

13.     Pursuant to 28 U.S.C. § 453 for the Judge and/or Magistrate to uphold the United States Constitution and to administer Justice equally to all, both poor or rich, and without political favoritism to none;

14.     Pursuant to Article III and 6 of the U.S. Constitution governed under this Constitutional Republic where only Article III Judge or Justice is authorized at and by law to hear this case governed under the Supreme Law of the Land and that Article 1 or 2 Commissioners are prohibited thereby;

15.     This Court also has pendant state supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to the timely filed notice of claim based on new information and exculpatory evidence;

16.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events, incidents and/or omissions with respect to new information, facts and exculpatory evidence giving rise to the claims, which occurred in this district;

## THE PARTIES

## PLAINTIFF

17.     Plaintiff, Yashua Amen Shekhem'El-Bey, herein after Plaintiff, has a principle place of address to receive mail at 244 Fifth Avenue, Suite 200, New York, N.Y. 10001.

## DEFENDANTS

18.     Defendant City of New York, herein after City, is a municipal Corporation local governmental unit chartered by the State of New York and it is a recipient of federal funds. The City operates the Department of Correction, the Department of Investigations and the Office of Administrative Trials and Hearings, herein after DOC, DOI and OATH, respectively, for whom all the individual municipal Defendants were working when they engaged in the colorable acts as a custom, policy and practice, which have precipitated this action. The City has a principal place of address at the Corporation Counsel of the City of New York, Law Department, 100 Church Street, 4th Floor, New York, N.Y. 10007.

19.     Defendant Rudolph Giuliani, herein after Giuliani, at all time relevant hereto, is or was the Mayor of the City and is or was the Chief Executive Magistrate of the City and is being sued in his official and/or individual capacity.  Giuliani's last known principle place of business is Giuliani Partners LLC, 5 Time Square, New York, N.Y. 10036.

20.     Defendant Bernard Kerik, herein after Kerik, at all time relevant hereto, is or was the Commissioner of DOC and is being sued in his official and/or individual capacity. Kerik's last known principle place of business is or was 60 Hudson Street, New York, N.Y. 10013.

21.     Defendant Michael Caruso, herein after Caruso, was at all time relevant hereto a municipal employee of the City and worked within DOI as the Inspector General for DOC. Caruso is being sued in his official and/or individual capacity. Caruso's last known place of business is or was 60 Hudson Street, New York, N.Y. 10013.

22.     Defendant Carl DiCarlo, herein after DiCarlo, at all time relevant hereto, is or was the Assistant Commissioner for Trials and Litigation of DOC and is being sued in his official and/or individual capacity. DiCarlo's last known place of business is or was 60 Hudson Street, New York, N.Y. 10013.

**Preliminary Facts**

**Conditions Precedent**

23.     This action is commenced within the three (3) year statute of limitation from December 2003 with respect to new information and exculpatory evidence brought out during discovery in Kelly, et. al. v. City of New York, et. al., 01 Civ. 8906, culminating in another Kelly action in Kelly, et. al. v. City of New York, et. al., 04 Civ. 1572 in which Defendant City is in statutory default in violation of Rule 55 of the Federal Rules of Civil Procedure for its failure to answer as required by Rule 7 (a) and 12 (a) (1) (A) of the Federal Rules of Civil Procedure.

24.     That additional facts and exculpatory evidence was made known arising from the Kelly action above and the subsequent media exposure leading up to and occurring on or about December 2004 through on or about January 2005 regarding the infamous Bernard B. Kerik's tax scandal and illegal money schemes with the mob, both in print and televised media revealing information that was not previously known to Plaintiff as Defendants did not disclose said information with respect to Shekhem'El-Bey v. City of New York, et. al. 00 Civ. 9260 (JES), which involved discrimination based on national origin, race and color, among other things

25.     This instant action was originally filed on August 17, 2005 as Shekhem'El-Bey v. City of New York, et. al. 05 Civ. 7270 (TPG) and amended August 31, 2005 and then voluntarily withdrawn without prejudice by leave of the Court on February 19,  2006 by letter of request from Plaintiff dated November 21, 2005 reserving the right to refile at a later date with the statutory time frame, all of which occurred prior to the dismissal of Shekhem'El-Bey v. City of New York, et. al. 00 Civ. 9260 (JES) on March 13, 2006 and in which case the matter is preserved due to the discovery of fraud, among other things.

26.     Plaintiff's Notice of Claim, dated February 12, 2005 served upon the City has been received by the City of New York on February 15, 2005 and subsequent Letter of Acknowledgment dated March 10, 2005 from the City was received by Plaintiff. The City has not acted to resolve or settle the matter within or after the 30-day statutory time frame.

## FACTS

27.     Plaintiff is a natural living breathing human being, is over the age of eighteen, and is a citizen of the United States of America and citizen of New York State by birth, and is properly identified by attribute and title and/or appellation in the above-entitled caption as Yashua Amen Shekhem'El-Bey.

28.     Plaintiff is not a corporation nor officer of a corporation nor corporate entity nor trust nor artificial person nor ward of the State or legal fiction and a check with the Department of State of the State of New York by letter dated July 30, 2004 indicated that Plaintiff is not a corporation  nor a corporation identified as YASHUA AMEN SHEKHEM'EL-BEY.

29.     At all time relevant hereto, Plaintiff held a competitive class civil service position, as a New York City Correction Officer for the City of New York with shield # 6103, herein after City.

30.     Plaintiff possessed a property interest in his employment as a tenured New York City Correction Officer with civil service status and was appointed on or about June 13, 1983.

31.     Plaintiff is a United States Army Veteran, who was on leave of absence from DOC to serve in the United States Army for three years from February 1985 through February 1988 and was honorably discharged, which is or was on record with DOC.

32.     At all time relevant hereto, Plaintiff's Nationality is Moorish American and National origin is Moor.

33.     At all time relevant hereto, Plaintiff was formerly a member of the Moorish Science Temple of America, Temple 82.

34.     On or about December of 1993, Plaintiff submitted to DOC through the United States mail an improvised non-government, letter styled document entitled "certificate of exemption from withholding in lieu of form W-4" with other accompanying documents in which Plaintiff claimed to not have a tax liability or non-tax liability status or exempt based on what

Plaintiff believed or known to believed to be sound information, which appeared under Plaintiff's former name, as James Mercer.

35.    At all time relevant hereto, Plaintiff became aware of a concurrent case identified as <u>Kelly, et. al. v. City of New York, et. al.</u>, 04 Civ. 1572 (TPG) with respect to <u>Shekhem'El-Bey v. City of New York, et. al.</u>, 00 Civ. 9260 (JES), involving other former Moorish American DOC employees in which, among other things, the underlying factual circumstances are the same as Plaintiff's instant action and with the same essential parties.

36.    Based on new information and exculpatory evidence that is part of the public record derived from discovery in the Kelly case, 01 Civ. 8906 (TPG) giving rise to a subsequent action in Kelly, et. al. v. City of New York, et. al. 04 Civ. 1572 (TPG) USDC/SDNY; on or about April 10, 1996, the DOI under the direction of Caruso, began an investigation called "99 exemption" to investigate all employees of DOC who had claimed between 40 or more exemptions on their federal and state tax forms submitted to the DOC.

37.    Based on new information and exculpatory evidence derived from discovery in the Kelly case, 01 Civ. 8906 (TPG), which gave rise to the subsequent Kelly action in Kelly, et. al. vs. City of New York, et. al. 1572 (TPG)/USDC-SDNY that is in default by the City and is part of the public record, herein after "At all time relevant hereto", during the investigation, the DOI and the DOC did not advise Plaintiff that neither he nor the other Moorish American DOC employees was under investigation.

38.    At all time relevant hereto, on or about July 12, 1996, Caruso received and read a memorandum from the New York City Police Department, herein after NYPD, claiming, among other things, that an individual involved in a "car stop" was a member of that group known as "The Great Seal Association of Moorish Affairs" and that members of that group had been previously arrested and were suspected of armed robberies and trafficking in high-powered automatic weapons.

39.    At all time relevant hereto, the NYPD memorandum did not identify the individual involved in the "car stop" as a DOC employee nor did it specify the location of "The Great Seal Association of Moorish Affairs" nor did it specifically identified or referred to the "Great Seal National Association of Moorish Affairs".

40.    Plaintiff's only connection to the NYPD memorandum was Plaintiff being a Moor based on his National Origin and his Nationality as Moorish American, all identified through his name as a "Bey" and/or "El".

41.    At all time relevant hereto, during the "99 exemption" investigation, Caruso and/or employees under his supervision, compiled a list of DOC employees as of November 14, 1997 who he/they identified as Moorish Americans and/or Moor.

42.    At all time relevant hereto, during the "99 exemption" investigation, Caruso and the DOI determined that there were between 900 to 1,000 DOC employees who had filed tax documents with the DOC claiming 99 exemptions and approximately 184 DOC employees who filed tax documents with the DOC claiming that they were tax exempt.

43.    At all time relevant hereto, on or about December 3, 1997, Caruso determined that only approximately 21 DOC employees, who were not arrested for submission of allege false tax information should be summarily suspended.

44.    At all time relevant hereto, on or about December 3, 1997, Caruso summarily suspended approximately 20 DOC employees. All were Moorish Americans. One DOC employee, Michael Flynn, was identified by Caruso to be Moorish American because his name appeared on a petition signed by other Moorish Americans. Caruso also summarily suspended Mr. Flynn. Each individual was merely informed that the reason for the summary suspension was because they had supplied the DOC with tax forms containing false information.

45.    Prior to the suspension of the 20 Moorish American DOC employees, Plaintiff was medically discharged on or about August of 1997 from DOC without a hearing or

opportunity to be heard and all pending charges with respect to sick leave for which Plaintiff was medically discharged had been legally expunged, as Plaintiff was not employed by DOC at that time

46.     At all time relevant hereto, before the 21 Moorish American DOC employees summary suspension and before Plaintiff's medical discharged from DOC, Plaintiff was not afforded fair notice or interviewed by the City's DOI nor any other manner given an opportunity to be heard regarding Plaintiff's charges related to filing tax related documents in December 1993.

47.     At all time relevant hereto, on or about January 3, 1998, Defendant Michael Caruso assigned the 20 Moorish American DOC employees to a modified duty assignment in a segregated asbestos contaminated facility known as the Brooklyn Correctional Facility (BCF) with no inmate contact and limited contact with DOC employees among other changes in their terms and conditions of employment.

48.     At all time relevant hereto, among the DOC employees who were not arrested for submission of allege false tax information, such as Jeanette Pinnero, John Sheridan, John Piccione, etc, only those DOC employees identified as Moorish American, were placed on modified duty assignment for submission of alleged false tax information between April 10, 1996 and December 1998 to include Plaintiff who was subjected to the same treatment following his reinstatement back to DOC on June 14, 1999 from his medical discharge.

49.     That Plaintiff, after having been discharged for almost two years, and on the day of the June 14, 1999 reinstatement, Plaintiff was first summary suspended based on filing alleged false tax document in December of 1993 and remained suspended for more than 30 days and subsequently placed on modified duty assignment at BCF, as were those other DOC employees who were identified as Moorish Americans.

50.     At all time relevant hereto, neither Plaintiff nor the other Moorish American DOC employees were not interviewed or otherwise given an opportunity to be heard by Defendant Caruso during or after his investigation.

51.     At all time relevant hereto, on or about March 5, 1998, Caruso issued an identical memorandum of complaint for each Moorish American DOC employees, including Plaintiff except that Plaintiff received his memorandum of complaint following his request for reinstatement from his medical discharge and prior to his actual reinstatement date of June 14, 1999; the only difference being the date of the alleged misconduct, stating that the Moorish American DOC employees on certain dates allegedly "did submit false instrument(s) concerning Federal/State tax information to the Department of Correction and did also supply false tax information to the Department of Correction. In so doing officer [allegedly] did engage in conduct unbecoming an officer/member of the Department in that he did thereby violate Federal/State law/statute/code /regulation." For Plaintiff the allege date is December 3, 1993.

52.     At all time relevant hereto, among those DOC employees who were known at the time to not have been arrested for submission of alleged false tax information, Defendant Caruso recommended for termination.

53.     At all time relevant hereto, Defendant Caruso did not recommend termination for Jeanette Pinnero, John Sheridan, John Piccione, and other whites who also submitted allege false tax documents, except only those DOC employees identified as Moorish Americans, including Plaintiff, between April 10, 1996, December 1998 and April of 2000.

54.     No one from DOI spoke to or interviewed Plaintiff prior to or after the issuance of the memorandum of complaint, and at all time relevant hereto, neither were the other Moorish American DOC employees spoken to or interviewed prior to or after the issuance of Defendants Caruso's memorandum of complaint, as to them.

55.    At all time relevant hereto, on or about April 16, 1998, the Moorish American DOC employees received a document, charges and specifications, as it was for Plaintiff herein, alleging that "he/they had engaged in conduct unbecoming an officer by submitting tax forms to the DOC claiming code "99" or "exempt" and that he/they had acted with an intent to defraud the government".

56.    During this time, Plaintiff was already medically discharged from the service and was not employed by the City with DOC.

57.    It was only when Plaintiff made an application for reinstatement from his medical discharge, is when DOC mailed charges and specification to Plaintiff towards the beginning of 1999, yet dated as far back as June of 1998.

58.    Said charges and specification, as to Plaintiff, as it was for the other Moorish American DOC employees, stated "he/she had submitted to the DOC "written instruments, documents, statements, forms and attachments thereto, wherein [s]/he disclaims United States Citizenship and wherein [s]/he adopts or espouses statements which violate/disclaim his/her oath of office to support the Constitution of the United States and the Constitution of the State of New York and thereby the laws there under."

59.    At all time relevant hereto, the charges and specifications were drafted by DiCarlo and served by and/or on behalf of Caruso and Kerik via the U.S. Mail, as Plaintiff was already medically discharged and not employed with DOC at the time.

60.    At all time relevant hereto, among those DOC employees who were not arrested for submission of allege false tax information, between April 10, 1996 and June 1999, Defendant Caruso through DiCarlo issued charges and specifications for submission of alleged false tax documents only to those DOC employees identified as Moorish American, including Plaintiff.

61.    Before issuing the charges and specifications asserting criminal charge violations, Defendant DiCarlo, Caruso and Kerik nor anyone from the City's DOC or DOI spoke to or

otherwise interviewed Plaintiff, who was medically discharge from the Service and not employed with DOC.

62.    Similarly, before issuing the charges and specifications against Plaintiff, no one from the City conducted an independent investigation into the circumstances involving Defendant Caruso's selection of the Moorish American DOC employees for recommendation for termination.

63.    Plaintiff became aware that he was being discipline and/or brought up on charges because of documents he filed in December of 1993 claiming to have no tax liability and because Plaintiff was accused of violating his oath of office, as well as for filing numerous federal law suit against the City, to include one case regarding taxes in 1998 in case Bey, et. al. v. City of New York, et. al. 98 Civ. 4866 (RPP), which included the Moorish American DOC employees, some of whom are named Plaintiff in the Kelly action, Kelly, et. al. v. City of New York, et. al. 01 Civ. 8906 (TPG) and Kelly, et. al. v. City of New York, et. al. 04 Civ 1572 (TPG)

64.    Defendants Caruso, DiCarolo and Kerik used the crimes exception clause of section 75 (4) CSL regarding the charge of filing false tax documents in December 1993 to reinstate sick leave charges that otherwise would not have been brought forward upon Plaintiff's reinstatement from a medical discharge, wherein Plaintiff would enjoy a fresh start with DOC.

65.    On or about November 3, 1999 and February 8, 2000, during an administrative hearing before OATH, Plaintiff requested an opportunity to examine "his accusers", including Caruso, DiCarlo, Kerik and Giuliani.

66.    At all time relevant hereto, the OATH Administrative Law Judge ("ALJ"), Diedra L.Tompkins (non-party herein) refused to permit Plaintiff to examine these individuals.

67.    During the OATH administrative hearings, Plaintiff repeatedly asked for an explanation of the charges against him wherein the ALJ Tompkins refused to permit such explanation.

68.    At all time relevant hereto, a similar event previously occurred with the other Moorish American DOC employees under ALJ Rosemarie Maldonado (non-party herein), who refused to permit the Moorish American DOC employees request for an explanation of the charges against them, as mentioned in the Kelly case, <u>Kelly, et. al. v. City of New York, et. al.</u>, 01 Civ. 8906 (TPG).

69.    On or about March 2000, ALJ Tompkins issued her Report and Recommendation" rendering a "Giuliani" directed finding of guilty of all specific charges and specifications lodged against Plaintiff to include previously expunged sick leave charges that were reinstated following Plaintiffs reinstatement from a medical discharge, except the charge of submitting documents to the DOC wherein he was alleged to have adopted or espoused statements which violated/disclaimed his oath of office to support the Constitution of the United States and the Constitution of the State of New York and thereby the laws there under" and thus, Plaintiff was determined "not guilty" of violating his oath of office.

70.    Kerik, as Commissioner of the DOC adopted the ALJ's recommendation of termination on April 27, 2000.

71.    At all time relevant hereto, Kerik did not conduct an independent investigation into the circumstances underlying ALJ Tompkins's recommendation for termination, instead, his decision merely reflected the public statement made by Giuliani to reporters with respect to the tax issue that "the suspended employees would almost certainly lose their jobs after disciplinary proceedings against them were completed." as reported in the December 12, 1997 Chief Leader, civil service weekly news paper.

72.    At all time relevant hereto, Defendant Giuliani's public statement made to the media had a substantial influential and prejudicial effect and impact on both Kerick's decision to terminate Plaintiff and the ALJ Tompkins's adverse OATH decision against Plaintiff.

73.    At all time relevant hereto, the outcome of the OATH proceedings were predetermined against Plaintiff, as with the other Moorish American DOC employees arising

from Giuliani's public statement and because of being associated with the Moorish Nation by virtue of Plaintiff's Nationality and national origin as reflected in Plaintiff's name as a Bey and/or El.

74.    During the course of the these aforementioned events, Plaintiff initiated a number of federal law suits protesting first, Plaintiff's sick leave condition and subsequent medical discharge in Shekhem'El-Bey v. City of New York, et. al. 97 Civ. 4177 (JES) and 98 Civ. 2745 (JES), respectively, then Plaintiff's summary suspension from duty on June 14, 1999, which was regarding the first day of Plaintiff's reinstatement from his medical discharge wherein Plaintiff was suppose to be reinstated to full duty in case 99 Civ. 12490 (JES)(MHD), the bias and non-impartial conduct of the Giuliani directed OATH proceedings and its subsequent amendments up to the Third Amended complaint and the eventual discharges of Plaintiff in the employ of DOC in case 00 Civ. 9260 (JES) with a then concurrent Article 78 Proceeding that unbeknownst to Plaintiff at that time was conducted under fraud, as Plaintiff was not afforded full disclosure wherein Plaintiff was challenging the OATH proceeding.

75.    At all time relevant hereto, Plaintiff's claims in the instant action, among other things, four (4) counts of denial of due process of law, denial of equal protection of the law, abuse of process, selective enforcement and selective prosecution, defamation of character libel and slander, conspiracy, intentional and negligent infliction of emotional distress, discrimination based on national origin and race as a Moor and Moorish American, retaliation for having filed previous lawsuits in 1997, 1998 and 1999, fraud and First Amendment violations with respect to freedom of association.

76.    At all time relevant hereto, Plaintiff discovered a DOC teletype of his name and shield number # 6103 wherein it was written on said teletype "I.D. as a Bey because he is on the law suit".

77.    At all time relevant hereto, Plaintiff discovered a DOC pedigree sheet of officers with their photo's in uniform and where Plaintiff was also shown. On the pedigree sheet under

Plaintiff's photo was listed "intelligence information that Plaintiff is a Moorish Nation member and considered armed".

78.    At all time relevant hereto, Plaintiff was not able to obtain the new information and exculpatory evidence to show proof of Plaintiff's claims in Shekhem'El-Bey v. City of New York, et .al., 00 Civ. 9260 (JES) due to Defendants not disclosing such information during the discovery phase with respect to Plaintiff's submission of request for production of documents and interrogatory request, including dilatory tactics used to stay Plaintiff's said federal case to permit an article 78 case to move forward and then used as Rooker-Feldman tactic to stop Plaintiff's said federal case in Shekhem'El-Bey v. City of New York, et. al. 00 Civ. 9260 (JES).

79.    However, in a parallel similarly situated case that is based on the same underlying factual circumstances in Kelly, et. al. v. City of New York, et. al., 01 Civ. 8906 (TPG), almost a year after its discovery, on or about December 2004, Plaintiff was able to obtain new information and exculpatory evidence that was otherwise withheld and/or not made available to Plaintiff and which substantiates Plaintiff various Constitutional and State law claims in this actions and its progeny in Shekhem'El-Bey v. City of New York, et .al., 00 Civ. 9260 (JES), in which the court would not permit or entertain any further discovery.

80.    In the Kelly case, 01 Civ. 8906 (TPG), in spite of discovery, Defendants City, Caruso and Kerik moved for summary judgment that was granted by this Court.

81.    The Defendants filing papers, in support of the Defendants Motion for summary judgment, Caruso submitted a declaration under penalty of perjury dated December 10, 2003. In that declaration filed in the court, Plaintiff learned for the first time that Caruso and the DOC placed Plaintiff, as with the other Moorish American DOC employees in that case on the same type of modified assignment based on intelligence information provided by the City's NYPD regarding potential security concerns associated with individuals who were affiliated with the Moorish-National group. Defendants concealed the true nature of the charges and their concerted actions against Plaintiff, as with the other Moorish American DOC employees.

82.    At all time relevant hereto, for the first time, Plaintiff learned that Caruso selected him and other Moorish American DOC employees for summary suspension, modified duty assignment and recommended Plaintiff's termination for allegedly submitting documents to the DOC claiming that he/they were not subject to arrest, that he/they were not subject to the jurisdiction of the United States and the State of New York and that he/they were renouncing their United states Citizenship. Defendants concealed the true nature of the charges against Plaintiff and other Moorish American DOC employees and that Defendant did not disclose the true nature of the charges at OATH.

83.    Before Plaintiff and the other Moorish American DOC employee's summary suspension, modified duty assignment and Caruso's recommendation for charges and specifications, Plaintiff, as with the previous Moorish American DOC employees, had not been given adequate notice of the charges against him, an explanation of the charges against him, and an opportunity to be heard on the charges against him before or during the OATH proceedings, even when said request was made as to the nature of the charges against him by Plaintiff's Bill of Particulars.

84.    After Plaintiff's summary suspension, modified duty assignment and Caruso's recommendation for charges and specifications, Plaintiff as with the previous Moorish American DOC employees, have not been given adequate notice of the reasons for Caruso's actions against him, an explanation of Caruso's conduct and an opportunity to be heard before these actions.

85.    At all time relevant hereto, Defendant Caruso committed fraud against Plaintiff by concealing the true nature of the charges against Plaintiff.

86.    At all time relevant hereto, the OATH proceedings deprived Plaintiff of due process of law, as it was subjected to inappropriate influences by Giuliani arising from his public statement and by Caruso in his misapplication of OATH in concealing the true nature of the charges against Plaintiff and the other Moorish American DOC employees.

87.     Defendants Giuliani, Kerik and Caruso selectively utilized OATH against Moorish Americans in which to facilitate Plaintiff and other Moorish American former CO's removal from employment, wherein OATH's impartiality was grossly compromised.

88.     In doing the acts described above, and in doing other acts not yet known, the Defendants violated Plaintiff's constitutional and statutory rights to freedom of association, the right to be free from discrimination based on national origin and race, and the right to due process of law and equal protection of the law before deprivation of a property interest in Plaintiff's employment, including abuse of process, defamation of character with respect to Libel and Slander, fraud and retaliation for having filed numerous lawsuits in the past against the City.

89.     At all time relevant hereto, as a custom, policy and practice, Caruso intentionally mislead and materially misrepresented the charges against Plaintiff by not disclosing the true nature of the charges to Plaintiff and by not affording Plaintiff the opportunity to address the true nature of the charges defrauding Plaintiff from obtaining due process of law.

90.     At all time relevant hereto, Mildred Lambert who was identified as a Moor has openly denounced her Moorish American nationality at OATH, stating "I dropped it like a hot potato because Giuliani called it a cult". Ms. Lambert kept her job and did not face termination from employment. Additionally, Giuliani's public statement that Moors or Moorish American is a cult is recorded in the public media and is an outright racist remark against Moorish Americans, which is a functional equivalent to "Anti Semitism".

91.     Plaintiff and the other Moorish American DOC employees who did not denounced their Moorish Nationality like Ms. Lambert did face the wrath of termination from employment with DOC and were terminated from employment, as was Plaintiff herein.

92.     At all time relevant hereto, as reported in the National media that there were other DOC employees who were not Moorish American who had engaged in the same or substantially similar conduct of submitting tax forms containing allege false tax information claiming more

than their household or 99 or exempt, and were not charged or sent through an administrative OATH proceeding as Plaintiff and the other Moorish American DOC employees.

93.    At all time relevant hereto, from 1991 through 1995 there were 1200 DOC employees who filed 99 or exempt, and that DOC employees continued to file 99 or exempt in 2000 who are white and were not brought up on charges.

94.    In the wake of the Bernard Kerik deceptive tax scandal wherein Kerik was considered for heading the Nations Department of Homeland Security, it was discovered for the first time through news media exposure that there were a number of other individuals, including Kerik himself who made false claims on their taxes, which includes DOC employee CO Jeanette Pinnero, Kerik's mistress who is a white female, Captain John Picciano, kerik's Chief of Staff at the time whose is a white male, CO John Sheridan, white male and other white CO's and High Ranking Correction officials who were subordinate to Kerik who filed false tax forms claiming more than their household or 99 or exempt and were not charged nor were they subjected to an administrative proceeding at OATH while Kerik was DOC commissioner.

95.    That Kerik was subsequently convicted of misdemeanor charges on or about July of 2006 in a plea agreement to avoid a possible felony conviction in connection with the mob during the time he was Correction Commissioner and clearly indicates the corrupt character of this Defendant who along with Caruso and Giuliani targeted Moorish Americans for termination from city employment and that Kerik failed to report his taxes in connection with his Nany and money's he received from the mob, which became the reason he could not qualify for the position of Home Land Security.

96.    At all time relevant hereto, Kerik under the Giuliani administration, knew or should have reasonably known of white CO's and high ranking Correction officials who were engaged in the same or substantially similar acts and were not charged nor discipline as Plaintiff and the other Moorish American DOC employees, while Kerik was DOC commissioner.

97.     At all time relevant hereto, as a custom, policy and practice Defendants actions described herein demonstrated how OATH was easily manipulated, controlled and used as a rubber stamp instrument in which to facilitate the removal from employment Moorish American DOC employees by rendering rubber stamped Giuliani directed decisions to accommodate Kerik's decision to terminate Plaintiff's employment, as with the other Moorish American DOC employees, which followed in line with what Giuliani publicly stated as to what will happen after a disciplinary proceeding was completed, which undoubtedly set in motion the aforementioned fraud that was perpetuated on Plaintiff and the other Moorish American DOC employees.

98.     At all time relevant hereto, as a custom, policy and practice Caruso, in a concerted activity together and individually with Kerik and DiCarlo committed fraud against Plaintiff by concealing the true nature of the charges against Plaintiff, as Defendants has done with the other Moorish American DOC employees mentioned in the Kelly case, Kelly, et. al. v. City of New York, et. al., 04 Civ. 1572 (TPG) and has subjected Plaintiff to an OATH proceeding under false pretense and under fraud, as the true nature of the charges were concealed from Plaintiff and subsequently utilized as a smoke screen to reinstate expunged sick leave charges and at no time was any of the new information or exculpatory evidence produced at the OATH proceedings.

99.     Defendants, and each of them, which include Kerik, Caruso and DiCarlo in a concerted activity and in cooperation together, as a custom, policy and practice conspired to deny Plaintiff, as with the other Moorish American DOC employees, of the right to equal protection of the law and due process of the law by engaging in a fraudulent mock kangaroo style proceeding concealing the true nature of the charges against Plaintiff, and by protecting white DOC employees who were not Moorish American from being subjected to the same OATH proceedings and subsequent termination from employment.

100.    At all time relevant hereto, Defendants, and each of them, in a concerted activity and in cooperation together and/or individually, as a policy, custom and practice, and by concealing the true nature of the charges against Plaintiff, denied to Plaintiff the same rights for

the security of persons and property as enjoyed by white citizens, such as C.O. Jeanette Pinero, CO John Sheridan, Captain John Picciano and other white citizens in DOC who committed the same or substantially similar acts as alleged to Plaintiff and the other Moorish American DOC employees by not subjecting other white DOC employees to charges and specifications containing criminal charges under the guise of misconduct, modified duty assignment, summary suspension, OATH proceedings and termination from employment.

101.    At all time relevant hereto, as a custom, policy and practice OATH was utilized and applied to Plaintiff and the other Moorish American DOC employees in an unconstitutional manner by Giuliani, Kerik and Caruso, all acting in concert together and in cooperation in concealing the true nature of the charges as against Plaintiff and then subjecting Plaintiff, as with the other Moorish American DOC employees, to the OATH proceedings that was influenced by Giuliani with respect to his aforementioned 1997 public statement.

102.    At all time relevant hereto, Giuliani abused his power and office as Mayor of the City and violated Plaintiff's right to due process of law at OATH, as with the other Moorish American DOC employees, based on his public statement, which directed the ALJ's decision to be a mere rubber stamp to accommodate the agencies action to terminate Moorish American DOC employees. This violates Section 1046 of Chapter 45 of the New York City Charter, which provides that "at the hearings, the parties shall be afforded due process of law." which Plaintiff did not receive in light of the new information and exculpatory evidence.

103.    At all time relevant hereto, Plaintiff was neither indicted nor convicted for the allege crime stated in the charges wherein the Defendants intentionally and willfully concealed the true nature of the charges against Plaintiff.

104.    At no time did the State or Federal IRS allege any tax related charges against Plaintiff regarding Plaintiff's submission of forms in December of 1993.

105.    At all time relevant hereto, as a custom, policy and practice Defendant Caruso, DiCarlo and Kerik, and each of them in a concerted activity illegally perverted the legal system

and/or process against Plaintiff, as with the other Moorish American DOC employees, by concealing the true nature of the charges against Plaintiff, and by summary suspending, placing on modified duty assignment in an asbestos contaminated facility, directing OATH to make adverse decisions and ultimately termination of Plaintiff's employment, all the while protecting other DOC employees who are white or those not deemed Moorish Americans from the same fate that befell Plaintiff and the other Moorish American DOC employees as mentioned herein.

106.    At all time relevant hereto, the Defendants, and each of them, in a concerted activity, had an ulterior motive or purpose exercising said perverted use of the legal system motivated by an invidious discriminatory animus against Plaintiff, as a Moor and/or Moorish American and other Moorish American DOC employees as mentioned herein.

107.    At all time relevant hereto, by Defendants concealing the true nature of the charges against Plaintiff, as with the other Moorish American DOC employees, and by Defendants ulterior motive or purpose motivated by an invidious discriminatory animus against Moorish Americans exercising such perverted use of the legal system, Plaintiff suffered damages as a direct and approximate result, which includes termination from employment, as was the case with the other Moorish American DOC employees.

108.    At all time relevant hereto, the Defendants, and each of them, as a custom, policy and practice have an invidious discriminatory animus against Moors and/or Moorish Americans and the Defendants acts were performed intentionally and negligently with reckless disregard and depraved indifference to the rights of the Plaintiff, as with the other Moorish American DOC employees.

109.    At all time relevant hereto, the Defendants knew or should have reasonably known that their concerted acts described above, would foresee ably cause Plaintiff a damage and severe emotional injury and emotional distress, and that Defendants having power to prevent or aid in preventing the commission of same, neglected and refused so to do.

110.    At all time relevant hereto, the Defendants colorable conduct shocks the conscience and was outrageous, indecent, atrocious, odious, uncivilized and intolerable.

111.    At all time relevant hereto, Plaintiff suffered loss of income, loss of enjoyment of life, embarrassment, loss of reputation, humiliation, mental anguish, anxiety, depression, emotional injury, poor health, severe emotional distress as a direct and approximate result of Defendants conduct, described above.

112.    Plaintiff's discovery in a previous case in Shekhem'El-Bey v. City of New York, et. al. 00 Civ. 9260 (JES) had been closed and no evidence permitted on the record due to the application of the Rooker-Fieldman Doctrine by the court back in 2000 baring any evidence to appear on the record in said case.

113.    Based upon the discovery of fraud and the withholding of facts and exculpatory evidence together with new information, and following a Notice of Claim, this initial action was originally filed on August 17, 2005 in case Shekhem'El-Bey v. City of New York, et. al. 05 Civ. 7270 (TPG) and amended August 31, 2005 and then voluntarily withdrawn without prejudice by leave of the Court on February 19, 2006 by letter of request from Plaintiff dated November 21, 2005 reserving the right to refile at a later date, all of which occurred prior to the dismissal of Shekhem'El-Bey v. City of New York, et. al. 00 Civ. 9260 (JES) on March 13, 2006 showing that said case was dismissed almost a month after Plaintiff withdrew the instant action without prejudice to be refilled at a later date.

114.    Plaintiff demands a jury trial on all issues of facts to be tried by a jury.

### FIRST CAUSE OF ACTION

(Fourteenth Amendment - Count 1 of Due Process of Law – 42 U.S.C. § 1983)

115.    Plaintiff repeat and reallege paragraph 1 through 114 above with the same force and effect as if set forth herein.

116.    By discharging Plaintiff without assuring that he had adequate notice and an opportunity to be heard before his summary suspension following his reinstatement from a

medical discharge, subsequent modified duty assignment and Caruso's recommendation for termination, thus willfully concealing the true nature of the charges against Plaintiff, Defendant Kerik violated Plaintiff's right to due process of law before deprivation of a property interest in his employment in violation of the Due Process clause of the 14th Amendment to the United States Constitution and 42 U.S.C. § 1983 to which Plaintiff is entitled to substantial monetary award and other relief.

## SECOND CAUSE OF ACTION

(Fourteenth Amendment - Count 2 of Due Process of Law – 42 U.S.C. § 1983)

117.    Plaintiff repeat and reallege paragraph 1 through 116 above with the same force and effect as if set forth herein.

118.    By intentionally and willfully concealing the true nature of the charges against Plaintiff and by subjecting Plaintiff to a City administrative proceeding known as OATH that was subjected to inappropriate influences arising out of the 1997 Public statement of Giuliani that "these employees most certainly will lose their jobs after a disciplinary proceeding against them has been completed", and Caruso's selective use of OATH, together with the City's financial gain and interest in terminating tenured civil service employees, rendering OATH as nothing more than a rubber stamp for Kerik's action to terminate Shekhem'El-Bey's employment, as with the other Moorish American DOC employees, violates Plaintiff's rights to due process of law pursuant to the 14th Amendment to the United States Constitution and 42 U.S.C. § 1983 to which Plaintiff is entitled to substantial monetary award.

## THIRD CAUSE OF ACTION

(Fourteenth Amendment - Count 3 of Due Process of Law – 42 U.S.C. § 1983)

119.    Plaintiff repeat and reallege paragraph 1 through 118 above with the same force and effect as if set forth herein.

120.    By intentionally and willfully concealing the true nature of the charges against Plaintiff, Defendant Caruso deprived Plaintiff of due process of law, i.e., the right to adequate notice and an opportunity to be heard on the charges in a court of appropriate jurisdiction against Plaintiff before deprivation of a property interest in his employment and before recommending a deprivation of a property interest in violation of the due process clause of the 14th Amendment to the United States Constitution and 42 U.S.C. § 1983  to which Plaintiff is entitled to substantial monetary award and other relief.

## FOURTH CAUSE OF ACTION

(Fourteenth Amendment – Count 4 of Due Process of Law – 42 U.S.C. § 1983)

121.    Plaintiff repeat and reallege paragraph 1 through 120 above with the same force and effect as if set forth herein.

122.    The above described policy, custom and practice of the Defendants that was motivated by an invidious discriminatory animus against Moorish Americans, and by intentionally and willfully concealing the true nature of the charges against Plaintiff, that Plaintiff was denied due process of law because OATH was applied in an unconstitutional manner as against Plaintiff, as were the other former Moorish American DOC employees, where OATH was subjected to inappropriate influences by Giuliani and Caruso in violation of 42 U.S.C. § 1983 to which Plaintiff is entitled to substantial monetary award and other relief.

## FIFTH CAUSE OF ACTION

(First & Fourteenth Amendment Freedom of Association – 42 U.S.C. § 1983)

123.    Plaintiff repeat and reallege paragraph 1 through 122 above with the same force and effect as if set forth herein.

124.    By intentionally and willfully concealing the true nature of the charges against Plaintiff and then summary suspending Plaintiff following Plaintiff's reinstatement from a medical discharge and disallowing Plaintiff the opportunity to begin a fresh start at correction, placing Plaintiff on modified duty

assignment and recommending Plaintiff for termination, Placing Plaintiff's life in danger by placing Plaintiff in an asbestos contaminated facility and by identifying Plaintiff as a "Moorish Nation member that is considered armed" with respect to the NYPD memorandum and treating Plaintiff as a "security concern" for no reason other than the fact that Plaintiff possibly was associated with and share the same national origin, race and nationality as the individual identified in the NYPD memorandum, the Defendants, as a custom, policy and practice, were acting in concert, either directly or indirectly and in cooperation with each other, violated Plaintiff's First Amendment right to freedom of association, as purview through and in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 to which Plaintiff is entitled to substantial monetary award.

## SIXTH CAUSE OF ACTION

### (Fourteenth Amendment Equal Protection Clause - 42 U.S.C. § 1983)

125.    Plaintiff repeat and reallege paragraph 1 through 124 above with the same force and effect as if set forth herein.

126.    By intentionally and willfully concealing the true nature of the charges against Plaintiff and by Kerik, Caruso and DiCarlo pursuing Moorish Americans to subject them to summary suspension, placing them on modified duty assignment and subsequently terminating them from the employ of DOC, as was Plaintiff and not equaling applying the same process to other DOC employees, such as CO Jeanette Pinnero, white female who was Kerik's mistress, CO John Sheridan, white male, Capt. Piccione, white male, etc. who were not Moorish Americans or identified as Moorish Americans and who have committed the same or substantially similar acts, as set forth above, violates the equal protection clause of the 14th Amendment to the United States Constitution and 42 U.S.C. § 1983  to which Plaintiff is entitled to substantial monetary award and other relief.

## SEVENTH CAUSE OF ACTION

### (Discrimination based on national origin and race – 42 U.S.C. § 1981)

127.    Plaintiff repeat and reallege paragraph 1 through 126 above with the same force and effect as if set forth herein.

128.    The above described policy, custom and practice was a motivating factor in the unequal terms and condition of Plaintiff's employment on account of Plaintiff's race, and national origin as a Moor, to include Plaintiff's nationality and/or creed as a Moorish American, as Plaintiff did not enjoy the same rights for the security of person and property (property interest) as enjoyed by white citizens, i.e. Bernard Kerik, Jeanette Pinnero, John Sheridan, John Picciano, etc. and violates Plaintiff's rights under 42 U.S.C. § 1981 to which Plaintiff is entitled to substantial monetary award from the City of New York.

EIGHTH CAUSE OF ACTION

(Conspiracy to deprive rights – 42 U.S.C. § 1985 (3))

129.    Plaintiff repeat and reallege paragraph 1 through 128 above with the same force and effect as if set forth herein.

130.    The above described policy, custom and practice of the Defendants that was motivated by an invidious discriminatory animus against Moorish Americans, and by intentionally and willfully concealing the true nature of the charges against Plaintiff and by Defendants, and each of them acting in cooperation and in concert with each other in a conspiracy, either directly or indirectly, Giuliani, Kerik, Caruso and DiCarlo under color of state law by their actions and/or omissions deprived Plaintiff of the equal protection of the law and due process of law, and thus violated the equal protection and due process clause of the 14th Amendment to the United States Constitution and 42 U.S.C. § 1985 (3)  to which Plaintiff is entitled to substantial monetary award, as specifically set forth in the demand for relief below.

NINTH CAUSE OF ACTION

(Action for Neglect to Prevent – 42 U.S.C. § 1986)

131.    Plaintiff repeat and reallege paragraph 1 through 130 above with the same force and effect as if set forth herein.

132.    By intentionally and willfully concealing the true nature of the charges against Plaintiff, Defendants, and each of them, reasonably having knowledge that the wrongs conspired

to be done, as set forth above with respect to 42 U.S.C. § 1985 (3), are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, when such wrongful acts, as set forth above, has been committed, is in violation of 42 U.S.C. § 1986 to which Plaintiff is entitled to substantial monetary award.

<u>TENTH CAUSE OF ACTION</u>

(New York State Constitution – 42 U.S.C. § 1983)

133.    Plaintiff repeat and reallege paragraph 1 through 132 above with the same force and effect as if set forth herein.

134.    The above described policy, custom and practice was a motivating factor in the unequal terms and conditions of Plaintiff's employment in violation of the corresponding laws under the New York State Constitution and to which Plaintiff is entitled to substantial monetary award.

<u>ELEVENTH CAUSE OF ACTION</u>

(Retaliation)

135.    Plaintiff repeat and reallege paragraph 1 through 134 above with the same force and effect as if set forth herein.

136.    The above described policy, custom and practice of the Defendants, was also the motivating factor in their retaliating against Plaintiff and other Moorish Americans for having filed federal lawsuits in the past against the City and DOC and to which Plaintiff is entitled to substantial monetary award.

<u>TWELFTH CAUSE OF ACTION</u>

(Abuse of Process)

137.    Plaintiff repeat and reallege paragraph 1 through 136 above with the same force and effect as if set forth herein.

138.    By Defendants concealing the true nature of the charges against Plaintiff and the other Moorish American DOC employees, the above described policy, custom and practice of the Defendants, was the motivating factor in their intentional misuse of the legal system by illegally abusing the process to pursue Moorish Americans for summary suspension, modified duty assignment, sham administrative proceeding of the City and ultimately termination from employment, while not imposing the same process to white DOC employees who have engaged in the same or substantially similar conduct and  to which Plaintiff is entitled to substantial monetary award.

THIRTEENTH CAUSE OF ACTION

(Selective Enforcement)

139.    Plaintiff repeat and reallege paragraph 1 through 138 above with the same force and effect as if set forth herein.

140.    By Defendants concealing the true nature of the charges against Plaintiff and the other Moorish American DOC employees, the above described policy, custom and practice of the Defendants, was the motivating factor in their selective enforcement to pursue Moorish Americans for summary suspension, modified duty assignment, sham administrative proceeding of the City and ultimately termination from employment, while shielding white DOC employees who have engaged in the same or substantially similar conduct and  to which Plaintiff is entitled to substantial monetary award.

FOURTEENTH CAUSE OF ACTION

(Selective Prosecution)

141.    Plaintiff repeat and reallege paragraph 1 through 140 above with the same force and effect as if set forth herein.

142.    By Defendants concealing the true nature of the charges against Plaintiff and the other Moorish American DOC employees, the above described policy, custom and practice of

the Defendants, was the motivating factor in their selective prosecution in pursuing Moorish Americans for summary suspension, modified duty assignment, sham administrative proceeding of the City and ultimately termination from employment, while shielding white DOC employees who have engaged in the same or substantially similar conduct and to which Plaintiff is entitled to substantial monetary award.

## FIFTEENTH CAUSE OF ACTION
### (Defamation of Character - Slander)

143.    Plaintiff repeat and reallege paragraph 1 through 142 above with the same force and effect as if set forth herein.

144.    By Defendants Giuliani publicly stating that Moorish Americans is a cult and for Mildred Lambert to have testified at OATH that she dropped her Nationality "like a hot potato because Giuliani call it cult" in order to keep her employment, and various documents, including the aforementioned teletype stating that Plaintiff "…is a Moorish Nation member and considered armed" inferring that Plaintiff specifically and Moorish Americans generally are a part of a criminal element associating Plaintiff with the aforementioned NYPD memo in order to justify Defendants conduct, were done with malice and constitute defamation of character and is slander to which Plaintiff is entitled to substantial monetary award.

## SIXTEENTH CAUSE OF ACTION
### (Defamation of Character - Libel)

145.    Plaintiff repeat and reallege paragraph 1 through 144 above with the same force and effect as if set forth herein.

146.    By Defendants Giuliani publicly stating that Moorish Americans is a cult and for Mildred Lambert to have testified at OATH that she dropped her Nationality "like a hot potato because Giuliani call it cult" in order to keep her employment, and various documents, including the aforementioned teletype stating that Plaintiff "…is a Moorish Nation member and considered

armed" inferring that Plaintiff specifically and Moorish Americans generally are a part of a criminal element associating Plaintiff with the aforementioned NYPD memo in order to justify Defendants conduct, were done with malice and constitute defamation of character and is Libel to which Plaintiff is entitled to substantial monetary award.

SEVENTEENTH CAUSE OF ACTION

(Intentional Infliction of Emotional Distress)

147.    Plaintiff repeat and reallege paragraph 1 through 146 above with the same force and effect as if set forth herein.

148.    By Defendants concealing the true nature of the charges against Plaintiff and other Moorish American DOC employees, the above described policy, custom and practice of the Defendants and each of them in a concerted activity, was the motivating factor in their intentionally inflicting emotional distress upon Plaintiff, wherein Plaintiff did suffer severe emotional distress as a direct result of the Defendants uncivilized and outrageous conduct where Plaintiff's life has been placed in jeopardy with reckless and depraved indifference and  to which Plaintiff is entitled to substantial monetary award.

EIGHTEENTH CAUSE OF ACTION

(Negligent Infliction of Emotional Distress)

149.    Plaintiff repeat and reallege paragraph 1 through 148 above with the same force and effect as if set forth herein.

150.    By Defendants concealing the true nature of the charges against Plaintiff and other Moorish American DOC employees, the above described policy, custom and practice of the Defendants and each of them in a concerted activity, was the motivating factor in their negligently inflicting emotional distress upon Plaintiff, wherein Plaintiff did suffer severe emotional distress as a direct result of the Defendants uncivilized and outrageous conduct where

Plaintiff's life has been placed in jeopardy and in danger with reckless and depraved indifference and to which Plaintiff is entitled to substantial monetary award.

## NINETEENTH CAUSE OF ACTION

### (Fraud)

151.    Plaintiff repeat and reallege paragraph 1 through 150 above with the same force and effect as if set forth herein.

152.    By Defendants intentionally and willfully concealing the true nature of the charges against Plaintiff and by Defendants commencing an action against Plaintiff under false pretense and with malice through misrepresentation of facts and by Defendants not disclosing the true nature of the charges to Plaintiff before deprivation of a property interest constitutes fraud wherein Defendants deprived Plaintiff of due process of law, i.e., the right to adequate notice and an opportunity to be heard on the charges in a court of appropriate jurisdiction before deprivation of a property interest in his employment and before recommending a deprivation of a property interest with respect to the crime clause provision of the Fifth and Sixth Amendment as purview through and in violation of the due process, equal protection and privilege and immunity clause of the 14th Amendment to the United States Constitution and to which Plaintiff is entitled to substantial monetary award.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff, Yashua Amen Shekhem'El-Bey, respectfully demands that this Court grant judgment against Defendants City and/or its Codefendants, individually and/or collectively as deemed appropriate by the Court in favor of Shekhem'El-Bey containing the following relief:

a.      An award of Plaintiff's actual damages in an amount to be determine at trail but not less than Seven Million Dollars ($7,000,000.00) for loss of wages, benefits and promotional

opportunities, including an award of front pay compensating Plaintiff for loss of future salary and benefits by Defendant City;

     b.     Full reinstatement to employment with the New York City Department of Correction as a New York City Correction Officer with the City of New York with Shield # 6103;

     c.     An award of damages in an amount to be determine at trial but not less than Seven Million Dollars ($7,000,000.00) to compensate Plaintiff for mental anguish, humiliation, embarrassment, lost of enjoyment of life, emotional injury, anxiety and stress by Defendant City of New York and/or its codefendants;

     d.     An award of punitive and exemplary damages in an amount to be determined at trial but not less than Forty Five Million Dollars ($45,000,000.00), as against Defendants City and/or its codefendants to insure that such colorable and outrageous acts would not be repeated by any future administration of the City through its agents, members, servants and/or employees;

     e.     For a declaratory judgment that Plaintiff was denied due process of law because OATH was applied in an unconstitutional manner as against Plaintiff, as were the other former Moorish American DOC employees, where OATH was subjected to inappropriate influences by Giuliani and Caruso in violation of 42 U.S.C. § 1983;

     f.     For a declaratory judgment that OATH pursuant to Mayors Executive Order #32 of July 25, 1979 promulgated by former Mayor Edward I. Koch, to be unconstitutional on its face and as applied, as was demonstrated by Rudolph Giuliani as set forth herein;

     g.     For a declaratory judgment that Defendants application of the "crimes exception" clause of Section 75 (4) of the Civil Service Law (CSL) to be unconstitutional on its face and as applied;

h.    For a declaratory judgment that the "crimes exception" clause of Section 75(4) CSL violates the "privilege and immunity" clause of the Fourteenth Amendment to the United States Constitution;

i.    That Plaintiff reserves the right to enter default by the Clerk pursuant to Rule 55 (a)(b)(1) of Federal Rules of Civil Procedure for a sum certain in the base amount of Fifty Nine Million Dollars ($59,000,000.00) for this action in the event Defendant City and/or its codefendants fails to answer this civil complaint pursuant to Rule 7 (a) and 12 (a)(1)(A) of the Federal Rules of Civil Procedure as required by law;

j.    Leave to amend the Complaint pursuant to Rule 15 (a) and (b) of the Federal Rules of Civil Procedure in the event newly discovered information and evidence requires new parties to be joined in as Defendants, and as to such other corrections needed to perfect the pleadings;

k.    An award of reasonable fees and costs of this action pursuant to 42 U.S.C. § 1988;

l.    Such other and further relief as this Court may deem just, proper and appropriate according to law.

Dated: New York, New York
      November 13, 2006

                                                              Yashua Amen Shekhem'El-Bey
                                                              Plaintiff, In Pro Per (Pro Se)
                                                              244 Fifth Avenue, Suite 200
                                                              New York, New York 10001
                                                              (212) 252-2641

VERIFICATION

The foregoing verified civil complaint by the hands of Yashua Amen Shekhem'El-Bey is given subject to the penalties of Perjury pursuant to 28 U.S.C. § 1746 and laws of the United States of America, and hereby affirm, declare and certify that the foregoing verified civil complaint is true and correct to the best of my first hand knowledge, information and belief.

Dated: November 13, 2006
       New York, New York


                                              Yashua Amen Shekhem'El-Bey
                                              Plaintiff, In Pro Per (Pro Se)















# EXHIBIT M

APPEAL, CLOSED, SIMILAR

# U.S. District Court
## United States District Court for the Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:00-cv-09260-JES
### Internal Use Only

Shekhem'El-Bey v. The City of New York, et al
Assigned to: Judge John E. Sprizzo
Demand: $0
Related Case: 1:99-cv-12490-JES
Cause: 42:1983 Civil Rights Act

Date Filed: 12/06/2000
Date Terminated: 03/13/2006
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Yashua Amen Shekhem'El-Bey**                     represented by     **Yashua Amen Shekhem'El-Bey**
                                                                      PRO SE

                                                                      **Yashua Amen Shekhem'El-Bey**
                                                                      c/o Ruben Washington
                                                                      1045 East 219 Street
                                                                      Bronx, NY 10469
                                                                      *LEAD ATTORNEY*

V.

**Defendant**

**The City of New York**                           represented by     **Carolyn Walker-Diallo**
                                                                      NYC Law Department, Office of the
                                                                      Corporation Counsel
                                                                      100 Church Street
                                                                      New York, NY 10007
                                                                      (212)788-0868
                                                                      Fax: (212))788-8877
                                                                      Email: cwalker@law.nyc.gov
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Michael Emanuel DeLarco**
                                                                      Heller Ehrman , LLP (NYC)
                                                                      Times Square Tower
                                                                      7 Times Square
                                                                      New York, NY 10036-6524
                                                                      (212) 832-8300
                                                                      Fax: (212) 763-7600
                                                                      Email:
                                                                      michael.delarco@hellerehrman.com
                                                                      *LEAD ATTORNEY*

**Defendant**

**Rudolph W. Giuliani**
*of the City of New York*

represented by **Carolyn Walker-Diallo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Emanuel DeLarco**
(See above for address)
*LEAD ATTORNEY*

**Defendant**

**Commissioner Bernard Kerik**
*of the New York City Department of Correction (DOC)*

represented by **Carolyn Walker-Diallo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Emanuel DeLarco**
(See above for address)
*LEAD ATTORNEY*

**Defendant**

**Inspector General Michael Caruso**
*DOC*
*TERMINATED: 03/29/2002*

represented by **Carolyn Walker-Diallo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**William Fraser**
*Chief of the Department, DOC*
*TERMINATED: 03/29/2002*

represented by **Carolyn Walker-Diallo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Emanuel DeLarco**
(See above for address)
*TERMINATED: 03/29/2002*
*LEAD ATTORNEY*

**Defendant**

**Carl DiCarlo**
*Assistant Commissioner of Trials and Litigation, DOC*

represented by **Carolyn Walker-Diallo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Emanuel DeLarco**
(See above for address)
*LEAD ATTORNEY*

**Defendant**

**Deputy Commissioner Luis R.**

represented by **Carolyn Walker-Diallo**

**Burgos, Jr.**
*for Equal Employment Opportunity,*
*DOC*

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Emanuel DeLarco**
(See above for address)
*LEAD ATTORNEY*

**Defendant**

**Jack W. Louden**
*Supervising Attorney for DOC*

represented by **Carolyn Walker-Diallo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Emanuel DeLarco**
(See above for address)
*LEAD ATTORNEY*

**Defendant**

**Diedre L. Tompkins**
*Administrative Law Judge (AJL) of the*
*Office of Administrative Trials and*
*Hearings (OATH)*

represented by **Carolyn Walker-Diallo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Emanuel DeLarco**
(See above for address)
*LEAD ATTORNEY*

**Defendant**

**Edward Kurianski**
*Commmissioner of Investigations,City*
*of NY*

**Defendant**

**Rose Luttan Ruben**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/06/2000 | 1 | COMPLAINT filed. Summons issued and Notice pursuant to 28 U.S.C. 636(c). FILING FEE $ 150.00 RECEIPT # 391729. (bm) (Entered: 12/07/2000) |
| 12/06/2000 |   | CASE REFERRED TO Judge John E. Sprizzo. (bm) (Entered: 12/07/2000) |
| 12/19/2000 | 2 | AMENDED VERIFIED COMPLAINT by Yashua Amen Shekhem'El-Bey (Answer due 1/1/01 for Diedre L. Tompkins, for Jack W. Louden, for Luis R. Burgos Jr., for Carl DiCarlo, for William Fraser, for Michael Caruso, for Bernard Kerik, for Rudolph W. Giuliani, for The City of New York ) amending [1-1] complaint ; Summons issued. Jury Trial |